**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

OLD WOOD, LLC,

Plaintiff/Petitioner,

v. No. 1:24-cv-01142-JB-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY,
DAVID RICHARDSON,
JAY MITCHELL,

Defendants/Respondents[1].

**DEFENDANTS/RESPONDENTS' RESPONSE BRIEF**

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David Richardson, the Senior Official Performing the Duties of FEMA Administrator, is automatically substituted for Deanne Criswell.

**TABLE OF CONTENTS**


I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. BACKGROUND .......... 3

A. HPCC Act .......... 3

B. FEMA's Regulations .......... 4

C. FEMA's Policy Guide .......... 6

D. Administrative Procedure Act .......... 7

E. Administrative Dispute Resolution Act .......... 8

F. Old Wood's Complaint .......... 10

III. QUESTIONS PRESENTED .......... 11

IV. STANDARD OF REVIEW .......... 12

V. ARGUMENT .......... 14

A. Old Wood's Challenge to the Appeal Requirement Is Moot .......... 14

B. The Appeal Requirement Is a Lawful Exercise of FEMA's Delegated Authority to Determine How Claims Are Processed and How Arbitration Proceeds If a Claim Is Disputed After FEMA Makes Its Final Decision. .......... 16

1) The HPCC Act's Delegation to FEMA to Create Claim Processing and Arbitration Rules Permits the Agency to Define When a Claim Is Disputed and Thus Ripe for Arbitration. .......... 17

2) Old Wood's Interpretation of the Act Rests on an Overly Broad Reading of Arbitrable "Disputes" That Would Expand the Scope of Arbitration Beyond the HPCC Act's Meaning to Intermediate Disputes. .......... 19

C. The HPCC Act Does Not Require Adoption of Procedures from the ADRA. .......... 22

1) The ADRA does not apply to HPCC Act Arbitrations .......... 22

2) A *de novo* evidentiary hearing would impermissibly broaden the scope of arbitration beyond any "disputed claim" presented to FEMA and unlawfully arrogate FEMA's claim determination authority .......... 29

D. The Record Requirement Is a Valid Exercise of FEMA's Authority to Promulgate Claims Processing and Arbitration Procedures ........ 33

E. The Arbitration SOR is Lawful Both as the Correct Interpretation of the HPCC Act and an Arbitration Rule ........ 36

1) The Arbitration SOR Is Interpretive Guidance That Comports with the Best Reading of the HPCC Act ........ 37

2) If the Court Concludes That the Arbitration SOR Cannot Be Read Into the HPCC Act, the Standard Is Within FEMA's Rulemaking Power and Should Be Remanded for Rulemaking ........ 39

VI. CONCLUSION ........ 40

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Congress tasked FEMA in the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPCC Act" or "Act") with establishing procedures both for the processing of claims and for arbitration. These delegations of authority are broad and require FEMA to create comprehensive procedures establishing how claims are submitted to the Agency, how the Agency makes a final determination on a claim, and how disputes regarding that determination may be arbitrated. In particular, while Congress authorized disputed HPCC Act claims to be settled in arbitration as an alternative to their resolution by judicial review, it offered little direction on how claimants could proceed to arbitration or how that arbitration would be conducted. Instead, Congress instructed FEMA to establish procedures for the HPCC Act's arbitration process. Accordingly, FEMA promulgated a set of arbitration regulations at 44 C.F.R. § 296.42, along with providing guidance on arbitration in a Policy Guide.

In doing so, FEMA followed the structure of the HPCC Act to create a parallel process wherein a claim that is disputed after FEMA's final decision may be resolved either in binding arbitration or by judicial review. The regulations challenged in this action apply the same standards and scope of review to these parallel proceedings to resolve disputed claims. In both arbitration and judicial review, the disputed claim decision issued on administrative appeal is reviewed based on the administrative record of materials presented to FEMA during the claims process. Further, FEMA explained that arbitration is conducted with the same, substantial-evidence standard of review that is used in judicial review. This application of identical standards and procedures for arbitration and judicial review is compatible with the HPCC Act and not arbitrary or capricious. Rather, the challenged regulations and guidance prevent forum shopping and inconsistent outcomes depending on the method by which a claimant resolves their disputed claim.

Old Wood argues that arbitrations should be governed not by FEMA's regulations, but using procedures from the Administrative Dispute Resolution Act ("ADRA")—including a de novo standard of review and the arbitrator's consideration of new evidence.[2] The HPCC Act, however, never mentions—let alone incorporates—the ADRA. To the contrary, Congress expressly directed FEMA to establish procedures for arbitration and stated that arbitrations could only proceed once FEMA had done so. In addition, the wholesale incorporation of the ADRA's arbitration procedures would contradict the ADRA itself, including its requirement that an agency consent to arbitration procedures, that arbitration shall not be used for certain types of matters, and that the arbitration is subject to judicial review. The best reading of the HPCC Act is that it does not incorporate the ADRA's procedures but instead delegates authority to FEMA to establish arbitration procedures.

Old Wood's contention that arbitrations should not be limited to a review of the issues and documents presented to FEMA during the claims process broadens the scope of arbitration beyond the Act's plain language. Instead of conducting arbitration of a "disputed claim" submitted to FEMA, Old Wood's reading would expand arbitration to issues and evidence never presented to or considered by the Agency. Allowing the arbitrator to consider new issues and evidence would contravene Congress' intent that FEMA first determine HPCC Act claims and would result in arbitrations incongruous with the HPCC Act's parallel judicial review procedures, which are conducted on the record presented to FEMA.

---

[2] Old Wood refers to these arbitration procedures as stemming from the Administrative Procedure Act. Pet'r's Br. at 23. In fact, the arbitration procedures contained in title 5, chapter 5, subchapter IV of the U.S. Code are from the Administrative Dispute Resolution Act. Pub. L. 101-552, as amended, 5 U.S.C. §§ 571–584.

Finally, Old Wood's argument that the ADRA's de novo standard of review governs HPCC Act arbitrations is without merit. As mentioned, nothing in the HPCC Act references or incorporates the ADRA. And even if it did, the ADRA itself is silent on the standard of review applied to an agency's findings of fact in arbitrations. More crucially, because the HPCC Act does not incorporate the ADRA or expressly provide a standard of review for arbitrations, the best reading of the Act is that the substantial-evidence standard used in judicial review should also apply in parallel arbitration proceedings. That reading is contained in FEMA's Policy Guide. And if the Court determines that given the Act's silence, this standard of review should have been promulgated by regulation rather than explained in interpretive guidance, the proper relief is to direct FEMA to engage in rulemaking to revise its regulation—not to implement a de novo standard of review contained nowhere in the HPCC Act.

For these reasons, Old Wood fails to establish that the contested arbitration procedures are in excess of authority, contrary to law, or arbitrary and capricious. FEMA respectfully requests that the Court reject Old Wood's challenge to FEMA's rulemaking and guidance and enter judgment in the Agency's favor.

## II. BACKGROUND

### A. HPCC Act

Congress enacted the HPCC Act "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries." P.L. 117-180, § 102(b), 136 Stat. 2114, 2169 (Sept. 30, 2022). The Act instructs FEMA, on behalf of the United States, to "investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages asserted." *Id.* § 104(c)(1). To fill in the details of how such claims shall be administered, Congress directed the Administrator

of FEMA to "promulgate and publish … regulations for the processing and payment of claims under this Act." *Id.* § 104(f)(1).

If a claim is disputed, the Act permits either judicial review of FEMA's "final decision" or to settle the "disputed claim" by arbitration. Concerning judicial review, the HPCC Act states: "Any claimant aggrieved by a final decision of the Administrator under this Act may … bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part." *Id.* § 104(i)(1). Judicial review is conducted on the record made before the Administrator, and the Administrator's decision is upheld if "supported by substantial evidence on the record considered as a whole." *Id.* §§ 104(i)(2), (3).

Alternatively, the Act permits a claimant to settle "a disputed claim under the Act" through arbitration procedures established by FEMA. *Id.* §§ 104(h)(3)(A), (B). "An election by an injured person to settle a claim through arbitration" is both "binding" and "preclude[s] any exercise by the injured person of the right to judicial review of a claim." *Id.* § 104(h)(3)(C). Rather than laying out arbitration procedures in the Act, Congress directed the Administrator to "[n]o later than 45 days after the date of enactment of this Act . . . establish by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration . . . ." *Id.* § 104(h)(3)(A). Only once FEMA has established arbitration procedures, may "an injured person that submits a disputed claim … elect to settle the claim through arbitration." *Id.* § 104(h)(3)(B).

**B. FEMA's Regulations**

FEMA followed Congress' directions both to "promulgate and publish in the Federal Register . . . regulations for the processing and payment of claims under this Act," *id.* § 104(f)(1), and to establish regulation procedures for arbitration, *id.* § 104(h)(3)(A). Those regulations are codified at 44 C.F.R. 296.

In its regulations for processing claims, FEMA established a two-step process where first, an "Authorized Official" with authority delegated from the Claims Office Director issues a determination regarding a claim. 44 C.F.R. 296.5(d); 296.32. Second, if the claimant does not wish to accept the Authorized Official's determination, they may "request that the Director of the Claims Office review the Authorized Official's determination by written request to the Appeals Docket…." 44 C.F.R. 296.41(a). Such a request initiates the administrative appeal process.

During the administrative appeal process both the claimant and FEMA may further investigate and present evidence regarding the claim in an attempt to reach agreement. The claimant can submit "additional documentary evidence supporting the appeal." 44 C.F.R. 296.41(c); *see also id.* § 296.41(d). FEMA may request additional information from the claimant. 44 C.F.R. 296.41(e). FEMA may also schedule a conference with the claimant to better understand the issues on appeal or explore settlement opportunities. 44 C.F.R. 296.41(f). The claimant may request that FEMA appoint a mediator to facilitate the conference. *Id.* FEMA may also convene an informal hearing to" receive oral testimony from witnesses or experts." 44 C.F.R. 296.41(g).

"If the claimant remains dissatisfied after the appeal is decided, the dispute may be resolved through binding arbitration or heard in the United States District Court for the District of New Mexico." 44 C.F.R. 296.5(d). *See also id.* § 296.42(a) ("A claimant who is dissatisfied with the outcome of the Administrative Appeal may elect to submit the dispute to a binding arbitration process."); *id.* § 296.43 ("As an alternative to arbitration, a claimant dissatisfied with the outcome of an Administrative Appeal may seek judicial review of the decision . . . ."). Both arbitration and judicial review are limited to a review of the Administrative Record. *Id.* § 296.42(b) (arbitration conducted on evidence in administrative record); *id.* § 296.43 ("Pursuant to section 104(i) of the Act, the court may only consider evidence in the Administrative Record."). Both FEMA's

regulations and the Act also make clear that if a party elects to challenge an administrative appeal decision via judicial review, "[t]he court will uphold FEMA's decision if it is supported by substantial evidence on the record considered as a whole." 44 C.F.R. § 296.43; *see also* HPCC Act § 104(i)(3).

Section 296.42 lays out arbitration procedures as directed by section 104(h)(3)(A) of the Act. To initiate arbitration, a claimant must submit "a written request to the Arbitration Administrator" "no later than 60 days after the date that appears on the Administrative Appeal decision." *Id.* § 296.42(a). The regulation makes clear in 44 C.F.R. 296.42(b) that claimants may not arbitrate "an issue unless it was raised and decided in the Administrative Appeal" (along with the regulation in § 296.42(a), the "**Appeal Requirement**"). It further provides that "[e]vidence not previously entered into the Administrative Record will not be considered" (the "**Record Requirement**"). *Id.* § 296.42(b). And the regulation provides generally how arbitrations will be conducted, for instance: "the arbitration process will include an arbitration hearing with consideration of the claimant's written request for arbitration, the Administrative Record, and oral testimony" and the "[h]earings will generally be conducted virtually." *Id.* § 296.42(d). These general parameters are supplemented with the note that arbitrations will be conducted "[p]ursuant to guidelines from the Arbitration Administrator, which will be provided directly to claimants who have filed a request for arbitration." *Id.* § 296.42(d).

### C. FEMA's Policy Guide

After the publication of claims-processing and arbitration procedures in the Federal Register, FEMA also published on its website the "Hermit's Peak/Calf Canyon Program and Policy Guide" ("Policy Guide"), which outlines FEMA's policy and provides guidance regarding the

HPCC claims process.[3] FEMA issued the Policy Guide "to articulate the agency's intent and direction when implementing statutory and regulatory authority." Policy Guide, Section 1.4 at 7. The Policy Guide serves to "inform claimants, community members, and Claims Office staff of the policy guidelines applicable to claims filed under the Act." *Id.* at 8.

FEMA provides guidance regarding its intentions for conducting arbitration proceedings under the HPCC Act. Policy Guide at 96-98. The Policy Guide's description of how arbitrations should be conducted closely mirrors that of the regulation. *Compare* Policy Guide at 97 *with* 44 C.F.R. § 296.42. The Policy Guide also makes explicit FEMA's interpretation of the Act and implementing regulations that arbitrators "will review the record for substantial evidence supporting the decision and will uphold the claim decision if it is supported by substantial evidence on the record considered as a whole." *Id.* at 97 (the "**Arbitration SOR**").

### D. Administrative Procedure Act

The United States and its agencies are entitled to sovereign immunity—and federal courts lack jurisdiction over lawsuits against the United States and its agencies—absent an explicit waiver. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Old Wood brings this action under the APA, which contains a limited waiver of this sovereign immunity, permitting judicial review of final agency actions under prescribed circumstances. 5 U.S.C. § 702. An agency action subject to APA review is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

[3] This Policy Guide is available online: https://www.fema.gov/sites/default/files/documents/fema_hpcc-hermits-peak-calf-canyon_program-and-policy-guide.pdf. Unless otherwise noted, citations to the Policy Guide throughout are to the current version, 2.0. With respect to arbitration, version 2.0 is virtually identical to version 1.1 referenced in the Complaint.

5 U.S.C. § 706 identifies available relief for APA claims. Courts may "hold unlawful and set aside agency action, findings, and conclusions" that are:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [concerning formal rulemaking and adjudicatory proceedings] or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706(2).

**E. Administrative Dispute Resolution Act**

Congress passed the Administrative Dispute Resolution Act ("ADRA") in 1990. Pub. L. No. 101-552, 104 Stat. 2736 ("ADRA of 1990"). The ADRA was subsequently amended in 1996. Pub. L. 104-320, 110 Stat. 3870. The ADRA is codified in Title 5, Chapter 5, subchapter IV of the U.S. Code at 5. U.S.C. §§ 571–584.

The ADRA of 1990 included prefatory findings. ADRA of 1990 § 2. One of the main purposes of the law is to promote the use of alternative methods of dispute resolution by federal agencies in their administrative programs. *Id.* To do so, the ADRA directs each agency to adopt policies that address ADR's use. *Id.* § 3(a). It directs agencies to examine dispute resolution in connection with formal and informal adjudications, rulemakings, enforcement actions, issuing and revoking licenses or permits, contract administration, litigation brought by or against the agency, and other agency actions. *Id.* § 3(a)(2). The ADRA does not require that alternative dispute resolution be available, only that agencies have policies addressing its proper use. That is, the alternative means of dispute resolution authorized under the ADRA are "voluntary procedures which supplement rather than limit other available agency dispute resolution techniques." 5 U.S.C. § 572(c).

Arbitration under the ADRA requires the authorization and consent of all parties involved. *Id.* §§ 575(a)(1); 572(a). Such authorization and consent are specific to arbitration under the ADRA, and not to arbitration under another act. *See id.* § 575(c) ("Prior to using binding arbitration *under this subchapter* . . ..""), § 578 ("An arbitrator to whom a dispute is referred *under this subchapter* may . . ..") (emphases added). Authorization for ADRA arbitration requires the head of an agency, in consultation with the Attorney General, and after taking into consideration factors in § 572(b) identifying where any agency shall consider not using a dispute resolution proceeding, to issue guidance on the appropriate use of binding arbitration. Such guidance shall include identifying when an officer or employee of the agency has authority to settle an issue in controversy through binding arbitration. *Id.* § 575(c). A decision by an agency not to use a dispute resolution proceeding is committed to the discretion of the agency and not subject to judicial review. *Id.* § 581(b). Consent may include agreeing to submit only certain issues in controversy to arbitration or that the arbitration award be within a range of possible outcomes. *Id.* § 575(a)(1)(A)–(B). Arbitration requires a written agreement that specifies a maximum award that may be issued by the arbitrator. § 575(a)(2).

An arbitrator under the ADRA is a neutral party chosen by the parties to the arbitration. *Id.*, §§ 577(a)–(b). Once a dispute has been referred to the arbitrator under the ADRA, the arbitrator can regulate the course of the arbitration proceedings, administer oaths, compel the production of evidence and attendance of witnesses in some circumstances, and make awards. *Id.*, §§ 578(1)–(4). During the arbitration proceeding, the parties may present material evidence and cross-examine witnesses. *Id.*, §§ 579(c)(1), (4). The arbitrator must "interpret and apply relevant statutory and regulatory requirements, legal precedents, and policy directives." *Id.*, § 577(c)(5).

The types of issues resolved by arbitration under the ADRA are limited. Only an "issue in controversy," or an issue "material to a decision concerning an administrative program of an agency" which substantially affects the parties involved and with which there is disagreement can be settled by arbitration. *Id.*, §§ 572(a), 571(3). An agency shall consider not using binding arbitration if, among other things, a definitive resolution of the matter is required for precedential value, or the arbitration would not likely reach consistent results among individual decisions. §§ 575(c); 572(b)(1), (3). While an agency's refusal to consent to arbitration is non-reviewable, an arbitration award is subject to judicial review under the terms of 9 U.S.C. § 10. § 581(b). That provision of the Federal Arbitration Act provides with respect to arbitrations under the ADRA that after the issuance of an award, non-parties to the arbitration adversely affected may request that a federal district court vacate the award if the use of arbitration was "clearly inconsistent" with the § 572(b) factors wherein the agency should have considered not using arbitration. 9 U.S.C. § 10(c). Any person aggrieved by the arbitration award may also bring an action for judicial review of the award pursuant to the provisions in 9 U.S.C. §§ 9–13. 5 U.S.C. § 581(a).

**F. Old Wood's Complaint**

Old Wood is a limited liability company that submitted a claim for relief under the HPCC Act. Compl. at 6, ¶ 19, Doc. 1. Old Wood brings a challenge under the Administrative Procedure Act contesting FEMA's regulations and policies concerning arbitration under the HPCC Act. *Id.* at 1–2, ¶¶ 1–2. This challenge consists of three parts. First, Old Wood argues that the Appeal Requirement in 44 C.F.R. 296.42(a)–(b) and Section 10.2 of the Policy Guide requiring claimants to present their dispute in FEMA's administrative appeal process and obtain a decision on appeal before requesting arbitration "is in excess of FEMA's statutory jurisdiction, authority, and limitations." *Id.* at 8, ¶ 25. Second, Old Wood argues that the Record Requirement's restriction of arbitration to issues and evidence presented to FEMA during the claims process, as codified in 44

C.F.R. 296.42(b) and described in Section 10.2 of the Policy Guide is also promulgated in excess of FEMA's authority. *Id.* Finally, Old Wood contends that the Arbitration SOR, directing that arbitrations employ a substantial-evidence standard of review as identified in Section 10.2 of the Policy Guide was not properly published and promulgated and is in excess of FEMA's statutory authority. *Id.* at 8, ¶ 26.

FEMA filed a response to Old Wood's Complaint, explaining that APA challenges like that here should proceed in a process identical to appeals. Doc. 17. FEMA then lodged an Administrative Record for the promulgation of the challenged regulation and the Policy Guide. Doc. 21. Old Wood moved to supplement the Administrative Record with additional FEMA policy documents. Doc. 22. The Record was finalized after the Court granted in part Old Wood's Motion to Supplement. Docs. 24, 26, 33–34. After finalization of the Record, Old Wood filed its Opening Brief, to which FEMA responds in this Response Brief. Doc. 38. Contemporaneously with this Brief, FEMA is filing a motion to lodge a supplemental record with documents concerning the status of Old Wood's administrative appeal and arbitration, which are relevant to the standing and mootness arguments discussed in Section V(A).

## III. QUESTIONS PRESENTED

(1) Is the Appeal Requirement, providing that a claim is disputed and ripe for arbitration when FEMA's Administrator makes a contested "final decision" following an administrative appeal process, arbitrary, capricious, an abuse of discretion, not in accordance with law, or in excess of statutory jurisdiction?

(2) Do the elective arbitration provisions in the ADRA apply to arbitrations under the HPCC Act, including where such provisions are contrary to the arbitration procedures that FEMA promulgated at Congress' direction?

(3) Is the Record Requirement limiting the scope of arbitration to a review of the issues raised and evidence presented to FEMA during the claims process—including the administrative appeal—arbitrary, capricious, an abuse of discretion, not in accordance with law, or in excess of statutory jurisdiction?

(4) Is the Arbitration SOR arbitrary, capricious, an abuse of discretion, not in accordance with law, or in excess of statutory jurisdiction when it mirrors the standard of review for parallel judicial review and the HPCC Act contains no mention of de novo review?

## IV. STANDARD OF REVIEW

Old Wood challenges FEMA's Regulations and Policy Guide under § 706(2)(A) of the APA which states that the court shall "hold unlawful and set aside agency action[s]" found to be "arbitrary, capricious, or otherwise not in accordance with law." Old Wood also invokes APA § 706(2)(C) which permits the court to set aside agency actions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

When interpreting the law, "courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). There is "no deferential standard for courts to employ in answering . . . legal questions." *Id.* at 392. Courts "set aside any action inconsistent with the law as they interpret it." *Id.*

When evaluating both the law and a challenged agency action, however, a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Loper Bright*, 603 U.S. at 394. In that case, there is deference to the agency's discretion exercised within the bounds of the Congressional authorization. "When the best reading of a statute is that it delegates discretionary authority to an agency," the reviewing court fulfills its role "by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the

agency has engaged in reasoned decisionmaking within those boundaries." *Id.* at 395 (alterations adopted) (internal quotation marks and citations omitted). Thus, although a Court must set aside "an agency's action that exceeds its statutory jurisdiction," an agency "with a general grant of rulemaking authority has jurisdiction to promulgate regulations reasonably related to the purposes of its enabling legislation." *Pinney v. NTSB*, 993 F.2d 201, 202 (10th Cir. 1993).

The standard for conducting arbitrary and capricious review has not changed after *Loper Bright*. In the Tenth Circuit, it remains that:

> [a]n agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment."

*WildEarth Guardians v. United States Forest Serv.*, 137 F.4th 1068, 1082 (10th Cir. 2025) (citation omitted). Accordingly, "arbitrary and capricious" challenges against agency rulemaking remain deferential towards the agency. *Loper Bright*, 603 U.S. at 392; *see also FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (judicial review under the arbitrary and capricious standard "is deferential"). Under this standard of review, "a court may not substitute its own policy judgment for that of the agency." *Prometheus Radio Project*, 592 U.S. at 423. Instead, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*; *see also Jarita Mesa Livestock Grazing Ass'n v. United States Forest Serv.*, 301 F. Supp. 3d 1010, 1029 (D.N.M. 2017) (Browning, J.) (agency action is not arbitrary and capricious "if the agency considered relevant factors and articulated a reasoned basis for its conclusions" (citation omitted)). In short, the Court "accord[s] agency action a presumption of validity." *WildEarth Guardians*, 137 F.4th at 1082

(citation omitted). "The challenger bears the burden of persuasion to show that the agency action is arbitrary and capricious." *Id.*

## V. ARGUMENT

### A. Old Wood's Challenge to the Appeal Requirement Is Moot

Old Wood's challenge to the Appeal Requirement is moot and consequently should be dismissed. Old Wood has already completed the administrative appeal process, received a final decision from FEMA that it disputes, and requested arbitration. Old Wood, LLC-SR-0003, 0015-19. Consequently, Old Wood's requested relief of setting aside the Appeal Requirement would have no effect on its ability to submit its disputed claim to arbitration—indeed, the claim already is pending in an arbitration stayed at Old Wood's request. Old Wood, LLC-SR-0001.

A court only has jurisdiction to hear "cases and controversies." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010). Article III of the Constitution also requires that the underlying controversy must not be extinguished, or otherwise moot, before a case is decided. *Id.* ("An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." (citation omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (quoting *Already, LLC v. Nike*, *Inc.*, 568 U.S. 85, 91 (2013)).

Here, Old Wood challenges the Appeal Requirement, which requires that claimants first complete FEMA's administrative appeal process—and thus obtain the Administrator's final decision on their claim—before initiating arbitration. Compl. at 8, ¶ 25. Old Wood argues instead that the Act permits claimants to arbitrate a dispute as soon as they receive a Final Letter of Determination from an Authorized Official even though the Claims Office has not made its final

decision regarding the claim. *See* Pet'r's Br. at 20–22, ECF No. 38. Furthermore, Old Wood contends that the lack of deadlines in FEMA's administrative appeal process unlawfully restricts claimants' ability to arbitrate their claims. Compl. at 1, ¶ 1. As relief, Old Wood asks the Court to set aside FEMA's regulations and policies pertaining to arbitration. *Id.* at 8-9, "Prayer for Relief" ¶ 1.

Old Wood, however, has already completed the administrative appeal process and received a decision on its appeal from the Director of the Claims Office. Old Wood, LLC-SR-0003. Old Wood received a Final Letter of Determination from FEMA on August 15, 2024. Compl. at 7, ¶ 22. It filed a Notice of Appeal on October 21, 2024, after filing the underlying Complaint. *Id.* at 7–8, ¶ 24. FEMA rendered its decision of Old Wood's administrative appeal on July 11, 2025. Old Wood, LLC-SR-0003. Old Wood then submitted a request for arbitration and subsequently obtained a stay of the arbitration request until January 31, 2026 Old Wood, LLC-SR-0001, 0014–19. In short, the challenged Appeal Requirement does not prevent Old Wood from resolving its claim dispute through arbitration. Because setting the challenged Appeal Requirement aside would have no bearing on Old Wood's ability to engage in arbitration, the challenge is moot and should be dismissed. *Smith*, 44 F.4th at 1249 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (citation omitted)).[4]

[4] Additionally, because Old Wood's challenge to the Appeal Requirement would not alter Old Wood's ability to arbitrate its claim, the challenge also falls outside of the waiver of sovereign immunity under the APA. The APA only permits suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action…." 5 U.S.C. §702.

### B. The Appeal Requirement Is a Lawful Exercise of FEMA's Delegated Authority to Determine How Claims Are Processed and How Arbitration Proceeds If a Claim Is Disputed After FEMA Makes Its Final Decision.

The Appeal Requirement is a proper exercise of FEMA's rulemaking authority under two provisions of the HPCC Act that direct the Agency to promulgate rules. First, under the delegation of authority to establish claims processing rules, FEMA defined the Administrator's "final decision" on a claim as the decision made following an administrative appeal. 44 CFR 296.41(h). Until the Administrator has made a final decision on a claim, it is unknown whether there is a "disputed claim" ripe for arbitration or whether the claimant and FEMA will agree upon the valuation of the claim. Therefore, the Appeal Requirement is a proper exercise of FEMA's authority to establish procedures regarding how the Agency's determination on a claim is made—and consequently, whether a "disputed claim" exists.

The Appeal Requirement is also a proper exercise of FEMA's authority to create arbitration procedures. Congress included very few details regarding arbitrations in the HPCC Act but instead delegated to FEMA authority to establish comprehensive arbitration procedures on those subjects where the Act is silent. That includes not only the conduct of arbitration proceedings but also a definition of when a "disputed claim" exists that may be settled by arbitration.

Old Wood's contrary argument that the Act's use of the term "dispute" prohibits FEMA from requiring a claimant to obtain the Agency's final decision before starting arbitration is contrary to the structure of the Act and leads to illogical consequences. Claimants could take disputes to arbitration even if they only concerned preliminary or partial disagreements, or if they might later reach consensus—avoiding a dispute altogether. Further, even if Old Wood's interpretation of the term "dispute" were reasonable, it does not establish that FEMA's contrary interpretation of a "disputed claim" as requiring a dispute after FEMA's full consideration of the claim is unreasonable—and thus in excess of its rulemaking authority. Because the Appeal

Requirement is a valid exercise of FEMA's authority both to establish claims processing and arbitration rules, it should be upheld.

### 1) The HPCC Act's Delegation to FEMA to Create Claim Processing and Arbitration Rules Permits the Agency to Define When a Claim Is Disputed and Thus Ripe for Arbitration.

By directing FEMA to establish rules for the processing and payment of claims, the HPCC Act permits the Agency to establish procedures by which FEMA's Administrator makes a final decision on a claim. These regulations consequently determine when a claim becomes a "disputed claim" subject to arbitration. HPCC Act, § 104(h)(3)(B).

Section 104(f)(1) of the Act requires FEMA to create "regulations for the processing and payment of claims." In fulfilling this requirement, FEMA established procedures by which claimants could submit their notice of loss and supporting documentation before getting an initial determination from a Claims Office employee. 44 C.F.R. 296.5(c)–(d); 296.32(a). If the claimant believes this determination is incorrect, they may initiate an administrative appeal process in which the claimant may submit additional statements and evidence, FEMA may request additional information, and the parties may participate in mediations and hearings in an effort to reach a resolution regarding the claim. 44 C.F.R. 296.41(a), (c)–(g). Only at the conclusion of the administrative appeal process does FEMA make its final decision on a claim. 44 C.F.R. 296.41(h) ("The Director of the Claims Office's decision on the Administrative Appeal will constitute the final decision of the Administrator of FEMA under sections 104(d)(2)(B) and 104(i)(1) of the Act.").

This final decision—and whether it is acceptable to the claimant—determines if there is a disputed claim that requires resolution in judicial review or arbitration. That is, the Appeal Requirement providing that a claimant must complete an administrative appeal before requesting

arbitration is a function of FEMA's lawfully promulgated claims-processing rules. Until the claimant knows whether FEMA will pay a claim, it cannot be determined if the claim is disputed.

The Appeal Requirement is also a valid exercise of FEMA's authority to promulgate arbitration procedures. In the HPCC Act, Congress expressly directed that FEMA establish arbitration procedures—and stated that parties could not request arbitration until FEMA had done so. Section 104(h)(3)(A) of the Act tasks FEMA with "establish[ing] by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration." Only once FEMA has established "arbitration procedures under subparagraph (A)" may "an injured person that submits a disputed claim under this Act … elect to settle the claim through arbitration." HPCC Act, § 104(h)(3)(B). Furthermore, because the HPCC Act contains few directives regarding the procedure of arbitrations, the Act affords wide discretion to FEMA to establish such procedures—including when a claim is "disputed" such that it is ripe for arbitration.

The full context of the HPCC Act's arbitration provision also supports the Appeal Requirement's treatment of a disputed claim as that which exists after FEMA has made its final decision on a claim following administrative appeal. The Act does not broadly permit the arbitration of "disputes" but only a "disputed claim." HPCC Act, § 104(h)(3)(B). And then, the HPCC Act does not provide for arbitration of disputes, or even disputed claims, at any time, but only when arbitration will "settle the claim." *Id.*, § 104(h)(3)(B), (C). *Fischer v. United States*, 603 U.S. 480, 486 (2024) ("[W]e must give effect, if possible, to every clause and word of [the] statute.") (citation omitted)).

The structure of the HPCC Act further supports a reading of arbitration as a remedy for claims that are disputed upon FEMA's final decision because it tracks the parallel option of resolving disputed claims by judicial review. *Id.*, § 104(i)(1) ("Any claimant aggrieved by a final

decision of the Administrator under this Act may … bring a civil action … to modify or set aside the decision, in whole or in part.”). The language describing arbitration under the Act suggests that arbitration is an alternative to judicial review by providing that arbitration is “binding” and “preclude[s] any exercise … of the right to judicial review….” *Id.*, § 104(h)(3)(C). Under the Act’s structure, claimants seeking to resolve a disputed claim may choose either arbitration or judicial review, but not both.

Thus, following the Act’s language and structure, FEMA’s regulations describe arbitration and judicial review as sister dispute-resolution mechanisms available when FEMA and a claimant reach impasse on a claim. *See* 44 C.F.R. 296.41(i) (“The claimant’s concurrence with the decision in the Administrative Appeal will be conclusively presumed unless the claimant initiates arbitration in accordance with § 296.42 or seeks judicial review in accordance with § 296.43.”); 44 C.F.R. 296.43 (“As an alternative to arbitration, a claimant dissatisfied with the outcome of an Administrative Appeal may seek judicial review….”). The HPCC Act’s arbitration provision, read in its entirety and in context with the Act’s other dispute resolution terms, supports FEMA’s Appeal Requirement as the best reading of the Act, let alone a valid exercise of the Agency’s authority to make claim-processing and arbitration rules.

**2) Old Wood’s Interpretation of the Act Rests on an Overly Broad Reading of Arbitrable “Disputes” That Would Expand the Scope of Arbitration Beyond the HPCC Act’s Meaning to Intermediate Disputes.**

Old Wood argues that the plain meaning of the word “dispute” suggests that claimants can enter arbitration when an Authorized Official at the Claims Office has issued a “Final Letter of Determination” and before the claimant has pursued an administrative appeal. Pet’r’s Br. at 20-22. This argument reads too much into the word “dispute” at the expense of other provisions of the Act. As discussed above, a “dispute” taken to arbitration must comprise a “disputed claim” that

can then be "settle[d] . . . through arbitration." HPCC Act, § 104(h)(3)(B); *see supra* pp. 17–19. That the arbitration must serve as a conclusive resolution to a disputed claim is further illustrated by section 104(h)(3)(C), which bars further review after arbitration. Lastly, because FEMA has defined through claim-processing rules that it only makes a final decision on a claim after an administrative appeal, one cannot determine that a claim's request for compensation is disputed until the administrative appeal is complete. *See supra* pp. 17–18.

Looking solely to the meaning of the word "dispute," untethered from these statutory contexts, leads to illogical conclusions. Old Wood reads the word "dispute" to mean a "conflict or controversy; a conflict of claims or rights; an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other" and argues that a claim is properly in dispute when a claimant rejects FEMA's Final Letter of Determination. Pet'r's Br. at 20. This definition proves too much. There is no principled reason, applying Old Wood's definition, to limit a "dispute" to a Final Letter of Determination, which, just like an administrative appeal decision, is a creation of FEMA's claim-processing rules. Rather, there may be many "conflicts or controversies" before or after a Final Letter of Determination is issued. For example, a claimant may receive a partial Letter of Determination containing a determination on a subset of the claimant's requests for relief that the claimant disputes. A claimant could also dispute FEMA's requests for information, whether a site visit is necessary, whether noneconomic damages are available, whether a particular claim has already been submitted elsewhere, property ownership, or the nature and extent of an injury. Old Wood's interpretation of arbitration as turning on the existence of a "dispute" would permit arbitration to be initiated on any intermediary, partial disagreement.

Congress could not have intended for arbitrations to be conducted in such a costly and inefficient manner. *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("When that [plain] meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act." (citation omitted)). The better reading of the Act is that arbitration requires a dispute regarding FEMA's final decision on a claim that can be settled conclusively by the arbitration, in lieu of judicial review.

Old Wood also argues that FEMA's authority to create arbitration procedures does not encompass the Appeal Requirement because it concerns a claim-processing step that comes before the arbitration itself. It argues that the phrase "may be settled by arbitration" in section 104(h)(3)(A) should be interpreted as limiting FEMA's authority to creating only procedures regulating the conduct of the arbitration itself and "not any procedures preliminary to arbitration." Pet'r's Br. at 29–30. Initially, this argument is immaterial because even if the Appeal Requirement is outside the scope of FEMA's arbitration rulemaking authority, defining when and how FEMA makes its decision regarding a claim—and thus creating the possibility of a "disputed claim" for arbitration—is part of FEMA's claim-processing rulemaking authority. *Supra* pp. 17–19.

But the Appeal Requirement is also a valid exercise of FEMA's arbitration rulemaking authority alone. As discussed above, the HPCC Act grants broad rulemaking authority with respect to arbitrations under the Act. *See supra* p. 18. Furthermore, the Act's direction to establish "procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration," § 104(h)(3)(A), encompasses all steps in which the claim is submitted to arbitration, including when a disputed claim is ripe. *See Procedure,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/procedure (last visited Nov. 5, 2025) (defining "procedure" as "a particular way of accomplishing something or of acting" or "a series of steps

followed in a regular definite order."). The Appeal Requirement is properly considered an arbitration "procedure" as it defines the first step in the arbitration process–identifying a whether a dispute regarding a claim is ready to be arbitrated. Therefore, the Appeal Requirement, as a regulation describing when an issue is ripe for arbitration, is both a valid claims-processing and arbitration procedure.

**C. The HPCC Act Does Not Require Adoption of Procedures from the ADRA.**

Old Wood argues that the Record Requirement and Arbitration SOR are contrary to law because they conflict with arbitration procedures contained in the Administrative Dispute Resolution Act that should be read into the HPCC Act. But nothing in the HPCC Act requires the incorporation of the ADRA. To the contrary, the ADRA's provisions conflict with parts of the HPCC Act. And even if the ADRA were incorporated, it does not require the type of "de novo" review requested by Old Wood.

**1) The ADRA does not apply to HPCC Act Arbitrations**

Where the HPCC Act is silent about an arbitration procedure, the Act does not fill in the gap by borrowing procedures from the ADRA. Instead, the HPCC Act requires FEMA to "establish by regulation procedures under which a dispute . . . may be settled by arbitration." HPCC Act § 104(h)(3)(A). In fact, until FEMA has established such procedures, HPCC Act arbitrations may not proceed. *Id.*, § 104(h)(3)(B). Old Wood's argument that the ADRA's arbitration procedures should be read into the HPCC Act, Pet'r's Br. at 26, violates Congress' mandate that FEMA fill the Act's gap of arbitration procedures. Had Congress wanted to use the ADRA, it would have done so. *Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) ("Congress knows exactly how to adopt into federal law the terms of another writing or resolution when it wishes.").

Requiring use of the ADRA's procedures would also violate the ADRA itself, which by its language is voluntary and requires specific consent from all parties. As detailed below, there are

numerous other inconsistencies and incompatibilities between the ADRA and HPCC Act. The best reading of both Acts is that they provide separate, arbitration procedures unrelated to each other.

*a. Congress did not incorporate the ADRA into the HPCC Act but instead directed FEMA to create arbitration procedures*

Old Wood's argument that the ADRA's arbitration procedures apply to HPCC Act arbitrations applies runs counter to the plain language of the HPCC Act requiring FEMA to determine arbitration procedures. Pet'r's Br. at 26 ("Congress likely intended the term "arbitration" in the Hermit's Peak Act to have the same meaning as in the APA."). A first principle of statutory interpretation is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Congress' instruction that "the Administrator shall establish by regulation procedures" for arbitration is plainly read to mean that arbitrations under the HPCC Act be conducted using procedures established by FEMA and not the arbitration procedures of some other unmentioned statute, such as the ADRA. This reading is only highlighted by the fact that injured persons cannot elect arbitration until the "establishment of arbitration procedures under subparagraph (A) . . . ." HPCC Act § 104(h)(3)(B).

In contrast, there is no mention of the ADRA or its arbitration procedures in the HPCC Act. If Congress wanted the HPCC Act to adopt the ADRA's arbitration provisions, it would have done so expressly. *Ysleta del Sur Pueblo*, 596 U.S. at 704. For example, in the Contract Disputes Act, Congress explicitly provided that parties "may use any alternative means of dispute resolution under subchapter IV of chapter 5 of title 5," that is, the ADRA, "for resolving claims." Contract Disputes Act, 41 U.S.C. § 7103. To adopt the arbitration procedures from the ADRA would contravene Congress' decision to have FEMA create arbitration procedures. *Fischer*, 603 U.S. at

486 ("[W]e must give effect, if possible, to every clause and word of the statute." (internal quotations and reference omitted)).

*b. The HPCC Act and ADRA contain two distinct, unrelated sets of provisions regarding agency arbitrations*

The easiest way to reconcile the conflicts between the HPCC Act and the ADRA is to determine that these are two separate laws with two separate mechanisms for agency arbitrations and which do not limit each other. Much like judicial review under the HPCC Act is distinct from judicial review under the APA, arbitration under the HPCC Act is distinct from arbitration under the ADRA. *See* May 6, 2025, Hr'g Tr., *Gallegos v. FEMA*, No. 1:24-cv-170-JB-JFR, at 10:1-13 (Browning, J.) (noting that HPCC Act judicial review is distinct from APA review). The HPCC Act provides for arbitration "under this Act" and "under this paragraph," referring to the HPCC Act and § 104(h)(3) respectively. HPCC Act, § 104(h)(3)(A), (C). This means the HPCC Act provides for arbitration under the HPCC Act, and not under another statute such as the ADRA. Similarly, the ADRA authorizes alternative means of dispute resolution "under this subchapter," 5 U.S.C. § 572(c), authorizes binding arbitration "under this subchapter," 5 U.S.C. § 575(c), and provides that consent of an agency to use a dispute resolution "under this subchapter" is committed to the discretion of the agency. 5 U.S.C. § 581(b). ADRA only authorizes arbitration as under the ADRA, not pursuant to another statute.

Contrary to Old Wood's contention, "arbitration" provided by a statute does not carry with it any implicit set of "default" arbitration procedures from the ADRA or the Uniform Arbitration Act. Pet'r's Br. at 25–26. Indeed, there is no default idea of what arbitration is and what arbitration procedures are the norm. Arbitration "may be a very different exercise in different contexts and cases because there are no universally applicable rules of practice, procedure, or evidence governing the conducting of arbitration." Mem. Op. from Walter Dellinger, Ass't Att'y Gen.,

*Constitutional Limitations on Federal Government Participation in Binding Arbitration,* to the Assoc. Att'y Gen., at 209 (Sept. 7, 1995), https://www.justice.gov/file/147086/dl. Arbitration can be provided in a variety of regulatory schemes using different arbitration procedures, or as provided by private contract. *See, e.g.*, ADRA, 5 U.S.C. §§ 571 et seq; HPCC Act § 104(h)(3); Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121, 5189a(d), Randolph-Sheppard Act, 20 U.S.C. § 107d-1 and d-2; Civil Service Reform Act, 5 U.S.C. § 7121; and Contract Disputes Act, 41 U.S.C. § 7103(h)(1). The different arbitration procedures in the ADRA and FEMA's regulations under the HPCC Act do not invalidate each other, but reflect Congress' choices in two different enabling acts.

*c. Requiring use of the ADRA's arbitration procedures would contravene the ADRA's voluntary nature*

Old Wood's argument that the HPCC Act requires the adoption of the ADRA's arbitration procedures is not only contrary to the HPCC Act, but also the ADRA itself. The ADRA's arbitration procedures are voluntary, require the consent of all parties, and commit consent to agency discretion. 5 U.S.C. §§ 572(a), 572(c), 575(a)(1), & 581(b). Further, the ADRA discourages the use of binding arbitration if any of the six discrete factors listed in section 572(b) exist. Indeed, the use of arbitration in situations "clearly inconsistent" with section 572(b) is grounds for an interested party to ask the court to vacate an arbitration award. 5 U.S.C. § 581(b); 9 U.S.C. § 10(b). Thus, the HPCC Act cannot require FEMA's automatic consent to the ADRA's binding arbitration procedures without also violating the ADRA.

First, the ADRA's alternative means of dispute resolution are "voluntary procedures which supplement rather than limit other available agency dispute resolution techniques." 5 U.S.C. § 572(c). Arbitration under the ADRA is meant as an optional complement to, not a mandatory replacement of, other dispute resolution systems, including FEMA's HPCC Act arbitration

regulations. *See College Boulevard Nat'l Bank v. Credit Sys.*, No. 92-2051-EEO, 1994 U.S. Dist. LEXIS 7319, at *3 (D. Kan. May 18, 1994) ("We do not know of any case holding that the [agency] is *only* authorized to arbitrate as provided in 5 U.S.C. §§ 571, 572, and 580….") (emphasis in original). Old Wood's argument that the ADRA's arbitration procedures are mandatory and displace FEMA's arbitration regulations, Pet. Br. at 26-27, is contrary to this law that the ADRA is a voluntary, non-exclusive arbitration mechanism.

Second, FEMA must consent to using the ADRA's arbitration procedures. 5 U.S.C. §§ 572(a), 572(c), & 575(a)(1). And FEMA's discretion to withhold consent is provided by law. *Id.* § 581(b) ("A decision by an agency to use or not use a dispute resolution proceeding under this subchapter shall be committed to the discretion of the agency . . .."). Old Wood argues that "[t]he Hermit's Peak Act consents for FEMA to arbitrate disputed claims, and a claimant consents to arbitration by electing same." Pet'r's Br. at 24. Even assuming that the HPCC Act operates as a general requirement that FEMA participate in arbitration, the Act does not serve as consent for FEMA to arbitrate under the provisions of another statute, such as the ADRA, that is unmentioned in the HPCC Act. Rather, any consent provided through the HPCC Act is limited to the Act's terms, which include arbitration under procedures established by FEMA. HPCC Act, § 104(h)(3)(B).

Moreover, § 581(b) of the ADRA commits to agency discretion the decision <u>not</u> to use arbitration and § 572(b) advances six factors for agencies to consider when withholding consent. Under Old Wood's reading of the HPCC Act as incorporating ADRA procedures, FEMA would be required to enter into ADRA arbitration upon a claimant's election of remedy, without consideration of any of the 5 U.S.C. § 572(b) factors, and without any discretion to withhold consent. Such a reading is not only contrary to the HPCC Act's plain language, but the ADRA itself.

d. *The HPCC Act and ADRA do not share a common structure, purpose, history, and relationship to other statutes that require them to be interpreted in parallel*

Old Wood argues that "the language of the text and Act's structure, purpose, history, and relationship to other statutes compel the conclusion Congress likely intended the term 'arbitration' in the Hermit's Peak Act to have the same meaning as in the APA." Pet'r's Br. at 26. A review of the two laws shows this is incorrect.

First, the relationship between the HPCC Act and ADRA/APA[5] is not parallel. *Contra* Pet'r's Br. at 25. Although the HPCC Act contains a similar standard of review to the substantial-evidence standard used in 5 U.S.C. § 706(2)(E), the HPCC Act does not otherwise contain provisions that parallel the judicial review provisions of the APA. *Compare* 5 U.S.C. § 706 *with* HPCC Act § 104(i). Similarly, while the ADRA contains detailed arbitration procedures that an agency may elect to employ on a case-by-case basis, the HPCC Act makes arbitration generally available but under procedures developed by the Agency. *Compare* 5 U.S.C. §§ 571 through 584 *with* HPCC Act, § 104(h)(3)(A).

Second, the structure and purpose of the HPCC Act and ADRA/APA are not the same. Old Wood represents that the purpose and function of arbitration in both laws is "to provide an alternative method of dispute resolution apart from judicial review." Pet'r's Br. at 23. This is true for the HPCC Act, where a claimant may elect between arbitration and judicial review. HPCC Act § 104(h)(3)(C). However, a person with a claim under § 706 of the APA cannot compel the agency to submit to binding arbitration. Nor are ADRA arbitration and APA judicial review related to each

---

[5] The arbitration and judicial review provisions that Old Wood references as in the "APA," Pet'r's Br. at 25, are themselves parts of two different laws–the ADRA and the APA. The APA's judicial review provisions in 5 U.S.C. §§ 701–706 are distinct from the ADRA's judicial review provision, which concerns judicial review of an arbitration award under the ADRA. 5 U.S.C. § 581(a)–(b).

other—the scope of arbitrable issues under the ADRA is different from those issues that are subject to judicial review under 5 U.S.C. § 706.[6] Furthermore, while electing arbitration under the HPCC Act precludes judicial review, HPCC Act § 104(h)(3)(C)(ii), arbitration under the ADRA is subject to additional judicial review, 5 U.S.C. § 581.

The two laws' differing availability of judicial review reflect different conceptions about the character and purpose of arbitration, including its relationship to agencies' administrative procedures. In the HPCC Act, arbitration is conducted after FEMA completes its administrative review of a claim and there is a dispute between the Agency and the claimant ripe for review by either an arbitrator or the District Court. *See supra* pp. 17–19. The ADRA, on the other hand, encourages alternative dispute resolution as a substitute for a wide range of agency actions, not just the judicial review of an agency's final administrative action. ADRA of 1990 § 3(2) (listing various types of procedures in connection with which agencies shall "examine alternative means of resolving disputes," including adjudications, rulemakings, enforcement actions, licensing, and contracts); 5 U.S.C. § 572(a) (stating broadly that "An agency may use a dispute resolution proceeding for the resolution of an issue in controversy that relates to an administrative program, if the parties agree to such proceeding."). The ADRA also is not mandatory but permissive. It created an "explicit authorization" for agencies to engage in dispute resolution to "eliminate ambiguity of agency authority under existing law." Pub. L. 101-552, 104 Stat. 2736, § 2(6). Historical context explains this permission: at the time of the ADRA, it was unclear if executive

[6] Unlike APA review, ADRA arbitration also is not limited to final agency actions. *Compare* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.") *with* 5 U.S.C. § 572(a) (permitting consent to arbitration "before or after an issue in controversy has arisen"). Further, the ADRA allows arbitration over money damages, although an arbitration agreement shall specify the maximum award. 5 U.S.C. § 572(a)(2).

agencies were constitutionally allowed to consent to binding arbitration.[7] Two decades later, the HPCC Act statutorily mandated that FEMA participate in binding arbitration, but only under the arbitration procedures that FEMA puts forth. HPCC Act § 104(h)(3).

Third, Old Wood argues that the "APA does not contemplate arbitration as a form of appellate review of a prior administrative decision." Pet'r's Br. at 24. The HPCC Act, however, *does* contemplate this. The HPCC Act provides arbitration as alternative to judicial review to settle a disputed claim when FEMA and the claimant have reached an impasse. The judicial review under the HPCC Act, to which arbitration offers a streamlined alternative, is a form of appellate review of FEMA's prior administrative decision. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("A district court . . . must sometimes act as an appellate court. Reviews of agency action in the district courts must be processed *as appeals*."). In sum, the HPCC Act and ADA/ADRA contain numerous differences in structure, purpose, and history that counsel against a parallel reading of the two laws.

**2) A *de novo* evidentiary hearing would impermissibly broaden the scope of arbitration beyond any "disputed claim" presented to FEMA and unlawfully arrogate FEMA's claim determination authority**

Even if the ADRA were incorporated into the HPCC Act or had bearing on the Act's interpretation, it does not allow arbitration to be conducted as a *de novo* proceeding extending beyond the scope of the "disputed claim" submitted to FEMA. Through the HPCC Act, Congress appropriated federal funds to compensate victims of the Hermit's Peak Fire and authorized only FEMA to investigate and determine claims before paying out funds. Old Wood's argument that an

---

[7] *See Administrative Dispute Resolution Act of 1989: Hearing Before the Subcomm. on Oversight of Gov't Management of the Senate Comm. on Governmental Affairs*, 101st Cong. 86 (1989) (statement of Assistant Attorney General William P. Barr) (testifying that the Appointments Clause would prohibit the government from entering into binding arbitration unless arbitrators were appointed by one of the methods described in that Clause, which they typically are not.)).

arbitrator may consider *de novo* evidence not previously presented to FEMA would allow an arbitrator, separate from FEMA, to investigate and settle a claim in the first instance. This would create an arbitration proceeding which violates the HPCC Act's grant of sole claims-adjusting authority to FEMA, as well as run contrary to the purpose of arbitration serving as a more efficient alternative to judicial review.

Congress authorized only FEMA to adjudicate claims under the HPCC Act. Section 104(c)(1) requires that "the Administrator [of FEMA] shall, *on behalf of the United States*, investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages asserted." (emphasis added). Section 104(a)(1) conditions the provision of compensation to "the Administrator making the determinations required." Section 104(d)(1)(B) lists the four determinations the Administrator is required to make, including "whether the claimant is an injured person," whether the injury resulted from the Fire, whether the claimant is "otherwise eligible to receive any amount," and "whether sufficient funds are available and, if so, the amount, if any, to be allowed and paid…."

Old Wood argues that the ADRA's arbitration procedures should apply, and that such procedures permit the admission and consideration of evidence outside of the administrative record. Pet'r's Br. at 24, 26-27. To begin, the ADRA's procedures should not be understood as permitting extra-record evidence when resolving a dispute regarding a claim, as such evidence is not "material to the controversy" of whether FEMA correctly determined the claim submitted to it. 5 U.S.C. § 579(c)(1). Further, using the ADRA would not necessarily provide the results that Old Wood seeks as the ADRA still requires FEMA to issue guidance on the appropriate use of binding arbitration and would commit to FEMA's discretion the ability to withhold consent to any arbitration. *Id.* §§ 575(c), 581(b).

Also, the ADRA is silent on the standard of review to be applied in arbitrations. Although Old Wood argues that the ADRA includes a de novo standard of review because it permits an arbitrator to "exercise[] independent judgment to make a binding decision resolving the dispute," the ADRA does not inform the arbitrator of the standard they should apply when reviewing an agency's factual determinations. A substantial-evidence standard of review provides guidance on how to assess an agency's *factual* determinations, not resolve questions of law. *See Andalex Res., Inc. v. Mine Safety & Health Admin.*, 792 F.3d 1252, 1257 (10th Cir. 2015) ("To satisfy the substantial evidence standard, an agency need only rely on such relevant *evidence* as a reasonable mind might accept as adequate to support a conclusion." (citation omitted) (emphasis added)). Thus, while the ADRA allows an arbitrator to "interpret and apply relevant statutory and regulatory requirements, legal precedents, and policy directives,"[8] 5 U.S.C. § 579(c)(5), and "receive oral or documentary evidence, *id.*, 579(c)(4), it does not resolve how much deference an arbitrator should give to the agency's factual determinations. Nor does an arbitrator's ability to independently interpret relevant authorities suggest a *de novo* standard of review. The HPCC Act's judicial review provisions likewise envision a court independently interpreting relevant authorities and policies while analyzing the agency's factual findings under a substantial-evidence standard of review. § 104(i)(3). Consequently, even if the ADRA did govern arbitrations under the HPCC Act, it would not require de novo review of factual determinations or the consideration of evidence outside FEMA's administrative record.

Not only is the use of extra-record evidence during arbitration unsupported by the HPCC Act and ADRA, it would violate the Act's reservation of authority to FEMA to make claim

[8] Indeed, the ADRA's instruction that arbitrators shall "apply … policy directives" suggests that arbitrators are bound by agency guidance documents and not conducting an entirely de novo review.

determinations. Under the HPCC Act, the arbitrator's decision is not a substitute for the decision of FEMA's Administrator but a dispute resolution mechanism when FEMA's Administrator and the claimant cannot agree on a claim. Unlike in some other kinds of statutory arbitration, arbitration under the HPCC Act is not the final step of administrative procedure whereby the arbitrator's decision becomes the final, judicially-reviewable agency decision. *See infra* §V(E)(1) (discussing contrast with other statutory arbitrations). Instead, HPCC Act arbitration occurs once FEMA's determination is disputed and replaces a judicial review that is limited to a review of claim materials submitted to the Agency. HPCC Act §§ 104(h)(3), 104(i)(2), (3). This is significant because if an individual who does not possess the authority of FEMA's Administrator can receive additional evidence not before FEMA and make determinations *de novo*, then an unauthorized entity is making claim determinations and investigatory findings in dispersing federal monies. Allowing arbitrators to consider evidence not previously reviewed by FEMA would improperly give arbitrators the ability to make initial claim determinations, contravening Congress' delegation of authority to FEMA to determine claims.

The best reading of the HPCC Act is that the arbitrator settles disputed claims by reviewing any disputes remaining after completion of FEMA's administrative process and, as arbitration replaces judicial review, decides if FEMA's determinations were supported by substantial evidence. Old Wood's interpretation allowing the arbitrator to admit additional evidence and review the claim *de novo* would create a parallel claims review process by an unauthorized entity. It would also frustrate the directive of that FEMA investigate claims if claimants could withhold evidence when submitting claims to FEMA and only introduce that evidence later to an arbitrator. *See United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 717 (1963) ("This sound and clearly expressed purpose would be frustrated if either side were free to withhold evidence at the

administrative level and then to introduce it in a judicial proceeding."). Furthermore, as arbitrations are "an alternative to judicial review," Pet'r's Br. at 19, allowing arbitrators to consider extra-record evidence would be incongruous with judicial review proceedings where a court's review is limited to the administrative record. HPCC Act § 104(i)(2); *see Carlo Bianchi & Co.*, 373 U.S. at 715 ("[I]n cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held."). Therefore, not only does the HPCC Act not incorporate the ADRA, reading the ADRA to permit de novo arbitrations under the HPCC Act would contradict the Act's express delegation of authority to FEMA to investigate and determine claims.

Lastly, a de novo evidentiary arbitration hearing would run contrary to the purpose of arbitration as more expeditious than judicial review. A purpose of the HPCC Act is to provide expeditious consideration and settlement of injuries from the Hermit's Peak Fire. HPCC Act § 102(b)(2). In permitting claimants to elect either arbitration or judicial review, the HPCC Act provides arbitration as a quicker way to resolve disputed claims without the formal procedures of litigating in federal court. However, a *de novo* evidentiary arbitration would invite additional discovery and fact-finding on additional issues which would be more complex than proceeding to substantial review on an administrative record under § 104(i) judicial review.

**D. The Record Requirement Is a Valid Exercise of FEMA's Authority to Promulgate Claims Processing and Arbitration Procedures**

The HPCC Act directs FEMA to create rules both for the processing and payment of claims and the settlement of disputed claims by arbitration. HPCC Act, §§ 104(f)(1), (h)(3)(A). The Record Requirement is an evidentiary presentment rule, requiring that evidence must have been presented first to FEMA in order to be part of a disputed claim reviewed in arbitration. It is a

procedural step both under section 104(f)(1)'s authority to determine how and when claims are submitted to FEMA and section 104(h)(3)'s authority to create procedures governing arbitrations.

First, the Record Requirement, that "[a]rbitration will be conducted on the evidence in the Administrative Record" and that "[e]vidence not previously entered into the Administrative Record will not be considered," 42 CFR 296.42(b), is a necessary outgrowth of FEMA's claim-processing regulations promulgated under section 104(f)(1). In 42 CFR 296.30(a), FEMA provided that "a claimant may submit for the Administrative Record a statement explaining why the claimant believes that the injuries and damages are compensable and any documentary evidence supporting the claim." FEMA also permitted claimants to supplement the Administrative Record during administrative appeals. 42 CFR 296.41(c). By defining how and when claimants may submit documentation in support of their claim, FEMA determined the scope of that claim for subsequent review in arbitration. Permitting claimants to submit new evidence in arbitration would nullify FEMA's lawfully-established rules for how evidence in support of a claim is submitted.

The Record Requirement is also a valid exercise of FEMA's authority to create arbitration rules. § 104(h)(3) specifically delegates broad authority to FEMA to promulgate regulations regarding arbitration procedures. Black's Law Dictionary defines procedure as "[a] specific method or course of action." (12th ed. 2024). Procedural rules include rules "for the orderly transaction of [the Court's] business," in effect, claims-processing rules. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (citation omitted). Procedural rules can "prescrib[e] how litigation shall be conducted." Restatement 2d of Conflict of Law, § 122. Procedure has also been defined as "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010). Thus, the HPCC Act's reference to

"procedures under which a dispute . . . may be settled by arbitration" includes both rules regarding the conduct of arbitrations and the orderly steps for bringing disputes to arbitration. FEMA's Administrative Record Requirement falls within both categories of rules: it is a step for bringing a dispute to arbitration (evidence must be presented prior to initiating arbitration) and a rule for conducting the arbitration (the arbitrator may only hear evidence that was already before FEMA).

Old Wood argues that FEMA's arbitration requirements impermissibly rewrite the HPCC Act by imposing an administrative appeal requirement that is not contained in statute. Pet'r's Br. at 15–16. 44 CFR 296.41's administrative appeal procedures, however, are an exercise of FEMA's authority to create "regulations for the processing and payment of claims." HPCC Act, § 104(f)(1). And given that Congress expressly delegated the authority to FEMA to create both claim-processing and arbitration rules, FEMA's regulation only needs to reflect "reasoned decisionmaking within those boundaries." *Loper Bright*, 603 U.S. at 395; *see also Pinney*, 993 F.2d at 202 (An agency "with a general grant of rulemaking authority has jurisdiction to promulgate regulations reasonably related to the purposes of its enabling legislation.").

Requiring that evidence be submitted prior to initiating arbitration, including during FEMA's appeals process, is a reasonable exercise of FEMA's delegated rulemaking authority. FEMA engaged in reasoned decisionmaking in determining that evidence may be submitted with a Proof of Loss or in administrative appeal, but not in arbitration. *See* 88 Fed. Reg. 59765 (Aug. 29, 2023) (explaining that claimants can supplement the record during administrative appeal, but "if the claimant continues to be dissatisfied with the determination, the claimant can pursue arbitration pursuant to Section 104(h)(3) of the act or elect to seek record review of the decision."). It is reasonable that all evidence be submitted to FEMA so that the Agency may determine claims, and so that claimants do not withhold evidence to bring for the first time before an arbitrator.

Further, this timing and presentment requirement comports with § 104(c)(1), which authorizes only FEMA to investigate claims, *see supra* §V(C)(2), and with the scope of judicial review under § 104(i).

### E. The Arbitration SOR is Lawful Both as the Correct Interpretation of the HPCC Act and an Arbitration Rule

The HPCC Act does not explicitly provide for a standard of review for arbitrators to apply. Given this silence, Old Wood argues that the ADRA's procedures should be applied to HPCC Act arbitrations. The better interpretation of the HPCC Act, as adopted in FEMA's Policy Guide, is that because the Act does not list a standard of review for arbitration, the same standard of review should be used as in parallel judicial review proceedings. This interpretation tracks other statutorily-provided arbitrations where, when the standard of review is silent, courts have applied the standard of review employed in the process that arbitration replaces. Employing a consistent standard of review for arbitration ensures that a claimant is treated similarly whether they proceed through judicial review or arbitration. The Arbitration SOR follows this analysis, determining that because HPCC Act arbitration is best understood as a quicker version of judicial review, it should also be conducted as a substantial-evidence review of FEMA's administrative decision.

Alternatively, if the Arbitration SOR is not implicit in the HPCC Act itself, it is within FEMA's delegated authority to determine arbitration procedures. That is, if the HPCC Act cannot be read as containing a standard of review for arbitrations at all, the standard must instead be filled in by the arbitration rulemaking that the Act directs. And any procedural defect in issuing the Arbitration SOR by guidance document rather than rulemaking was harmless error or is remedied by directing FEMA to promulgate the standard as a regulation.

**1) The Arbitration SOR Is Interpretive Guidance That Comports with the Best Reading of the HPCC Act**

The Arbitration SOR described in FEMA's Policy Guide contains the best interpretation of the HPCC Act's standard of review for arbitrations—that it mirrors the standard of review for parallel judicial review proceedings. In other contexts, courts have grappled with laws that establish arbitration but are silent about aspects of its operation, including the standard of review. In those cases, courts have looked to the role of arbitration within the structure of the statutory scheme, the kind of proceeding for which arbitration substitutes, and to legislative history for help establishing standards for arbitration when the enabling act is silent. They do not borrow the ADRA's procedures through a sub silentio incorporation.

For example, under the Civil Service Reform Act, arbitration serves as an alternative to review by the Merit Systems Protection Board of agency adverse decisions. Analyzing the language of the Civil Service Reform Act and legislative history, the Supreme Court determined that "Congress clearly intended that an arbitrator would apply the same substantive rules as the [MSPB] does in reviewing an agency disciplinary decision." *Cornelius v. Nutt*, 472 U.S. 648, 660 (1985). "Thus, *Cornelius* requires that arbitrators 'adhere to the board's interpretation of . . . substantive rules,' such as 'the standard of review for substantial evidence and the harmful error rule.'" *Buffkin v. Dep't of Defense*, 957 F.3d 1327, 1330 (Fed. Cir. 2020) (quotations omitted).

In contrast, arbitrations under the Randolph-Sheppard Act and Stafford Act represent a final agency action, and are reviewed under that lens. In *Wisconsin v. U.S. Department of Education*, the court determined that Randolph-Sheppard Act arbitration, as an agency evidentiary hearing, is governed by the APA's preponderance-of-evidence burden of proof requirement for agency hearings. 980 F.3d 558, 567 (7th Cir. 2020) (citing 20 U.S.C. § 107d-2 and 5 U.S.C. § 556(d)). The arbitration decision was then reviewed as final agency action under APA § 706. *Id.* at 567. A

similar analysis applies to some Stafford Act arbitrations where the arbitration substitutes as the Agency's final decision, rather than as a review of the Agency's decision. *See Metro. Gov't of Nashville v. FEMA*, 2024 U.S. Dist. LEXIS 56260, *58 (M.D. Tenn. March 28, 2024) (quoting CBCA 6513-FEMA, 19-1 BCA ¶ 37,436 (quoting 84 Fed. Reg. 7861, 7862)) ("As explained in the preamble to our arbitration rulemaking, because an arbitration decision replaces final action by FEMA and a panel is not a reviewing court, the arbitrators must find facts and interpret the law independently *on behalf of* the Executive Branch.'") (emphasis added)).

Unlike in the Randolph-Sheppard Act or Stafford Act, arbitration under the HPCC Act does not become FEMA's final decision. The arbitrator is not acting on behalf of the Agency. Instead, the character of arbitration in the HPCC Act is like in the Civil Service Reform Act—a review proceeding wherein arbitration replaces another avenue for reviewing the agency's decision. Accordingly, under the HPCC Act, the standard of review mirror that as is used in judicial review—the proceeding that arbitration replaces.

Legislative history also supports that arbitration and judicial review under the HPCC Act are designed as parallel provisions that both review final claim awards. While the legislative history of the HPCC Act is sparse regarding the purposes and intentions of arbitration, legislators drafting the same provision in the Cerro Grande Fire Assistance Act, Pub. L. 106-246, 114 Stat. 583 (2000), a statute nearly identical to the HPCC Act[9], commented:

> The conferees recognize that disputes may arise over claims submitted under this Act. The Act preserves the rights of individuals to request *judicial review of their final claims awards* in the Federal District Court for the District of New Mexico. The Act also allows aggrieved claimants *in lieu of* Federal court to elect binding arbitration *of their claims award* by a neutral third party under a process to be determined by FEMA.

[9] *Dolan v. Fed. Emergency Mgmt. Agency*, 760 F. Supp. 3d 1200, 1210 (D.N.M. 2024) (Browning, J.) ("The Hermit's Peak Act's language is nearly identical to the 2001 Cerro Grande Fire Assistance Act . . . .").

H.R. CONF. REP. 106-710, 176, 2000 U.S.C.C.A.N. 435, 495 (June 29, 2000) (emphasis added).

Accordingly, HPCC Act arbitration, as an alternative to judicial review, is best interpreted as employing the substantive rules of judicial review, including the substantial-evidence standard of review. *See Cornelius*, 472 U.S. at 660; *Buffkin*, 957 F.3d at 1330. FEMA's Arbitration SOR comports with this best reading of the HPCC Act, in which arbitration serves as a substitute for a review of an agency decision, and proceeds under the same, substantial evidence standard of review as the parallel judicial review.

**2) If the Court Concludes That the Arbitration SOR Cannot Be Read Into the HPCC Act, the Standard Is Within FEMA's Rulemaking Power and Should Be Remanded for Rulemaking**

Old Wood argues that FEMA erred by not publishing the Arbitration SOR through notice-and-comment rulemaking. Pet'r's Br. at 31–32. As discussed in the previous section, however, the Arbitration SOR is an interpretation of the HPCC Act. As a result, it is not required to be published under formal rulemaking procedures. 5 U.S.C. § 553(b)(A); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (interpretative rules are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."). FEMA's Arbitration SOR comports with this best reading of the HPCC Act, in which arbitration serves as a substitute for a review of an agency decision, and proceeds under the same, substantial evidence standard of review as the parallel judicial review.

If, nonetheless, the Court concludes that it cannot infer a standard of review to apply to HPCC Act arbitrations, the best alternative is not to borrow procedures from the ADRA, *see supra* § V(C), but to conclude that FEMA may provide a standard of review to fill the statutory vacancy. The HPCC Act's silence regarding the standard of review for arbitrations—again, if not implied from the judicial review provision—suggests that Congress intended FEMA to establish a standard

of review as part of its broad delegation of authority to create arbitration procedures. HPCC Act, § 104(h)(3)(A).

Further, if the Court concludes that such a rule should have been published by notice-and-comment rulemaking, rather than as an interpretive rule in a Policy Guide, *see* Pet'r's Br. at 31–32, the proper remedy is to remand to FEMA to correct its error by promulgating the standard in regulation. *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). Old Wood's requested relief of applying the ADRA's arbitration standard of review is beyond the scope of relief permitted under the APA.

## VI. CONCLUSION

FEMA's arbitration procedures, as codified in its regulations and outlined in its Policy Guide, represent the lawful implementation of Congress' delegation of power to the agency under the HPCC Act. These procedures, which require claimants to complete an administrative appeal and obtain the Agency's final decision before seeking arbitration, conduct review based on the Administrative Record for the claim submitted to FEMA, and conduct that review under a substantial evidence standard of review, mirror the Act's judicial review provisions, properly positioning arbitration as a parallel option to judicial review. The challenged procedures are therefore in accordance with law, not arbitrary and capricious, and Old Wood's rulemaking challenge should be rejected. FEMA respectfully requests that the Court uphold the challenged HPCC Act arbitration procedures as lawful. Alternatively, if the Court finds that the Arbitration

Standard of Review is should have been promulgated by regulation, FEMA requests that the Court remand the issue so that it may promulgate a revised arbitration rule.

Respectfully submitted,

RYAN ELLISON
Acting United States Attorney

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
CARRIE Y. YANG
RAFAEL F. GO
Assistant United States Attorneys
201 Third Street NW, Suite 900
Albuquerque, New Mexico 87102
(505) 224-1467; Fax (505) 346-7205
Nicholas.Sydow@usdoj.gov
Carrie.Yang@usdoj.gov
Rafael.Go@usdoj.gov

***Attorneys for Respondent Federal Emergency Management Agency***

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY, that according to the word count function in Microsoft Word for Microsoft 365 MSO Version 2502, there are 12,433 words in the body of this brief, within the 13,000 type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 12, 2025, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney