**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

OLD WOOD, LLC,

Plaintiff/Petitioner,

v. No. 1:24-cv-01142-JB-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY,
DAVID RICHARDSON,
JAY MITCHELL,

Defendants/Respondents.

**DEFENDANTS/RESPONDENTS' SURREPLY BRIEF**

## TABLE OF CONTENTS

I. Introduction. 1

II. Old Wood's New Criticism of FEMA's Administrative Appeal Process Does Not Support its APA Challenges. 2

III. Deference to Agency Determinations is Proper in Arbitrary-and-Capricious Review and Where Congress Has Delegated Authority. 4

IV. Old Wood Does Not Refute That the Completion of Its Administrative Appeal Makes Its Challenge to the Appeal Requirement Moot. 5

V. Even If Not Moot, the Appeal Requirement Is a Valid Exercise of FEMA's Delegated Rulemaking Authority. 9

VI. Arbitration is a Varied Procedure That Can Encompass the Record Requirement. 13

VII. The Arbitration SOR Is the Best Reading of the Act But Also Would Be Valid as an Arbitration Rule. 18

## I. Introduction.

Old Wood attempts to shore up its challenges to FEMA's arbitration regulations—both by backing away from its more totalizing assertions that other arbitration procedures must be read into the Rule and by asserting new allegations of delay and burden in FEMA's administrative appeal process. These efforts do not succeed. Old Wood fails to refute that its challenge to the Appeal Requirement is moot given that Old Wood has already completed its administrative appeal. Nor does Old Wood establish that the challenged rules are not valid exercises of FEMA's authority to establish claims-processing and arbitration procedures.

Old Wood begins its Reply by making a raft of complaints about the administrative appeal process, calling it cumbersome and a "black hole." These arguments are improper, new allegations in a reply, and immaterial. The status of the processing of administrative appeals is not only beyond the scope of the Record but also irrelevant to Old Wood's legal challenge to arbitration rules. And because Old Wood has obtained a final decision following its administrative appeal, its challenge to this exhaustion requirement is moot. Old Wood does not establish how it is or will be harmed by the Appeal Requirement.

Old Wood's substantive challenges to the Appeal Requirement, Record Requirement, and Arbitration SOR also fail on the merits. The Appeal Requirement—providing that a claim is disputed and subject to arbitration when FEMA makes an administrative appeal decision—is a valid exercise of the Agency's claim-processing and arbitration rulemaking authority. Old Wood's alternative suggestion that a claim is disputed when a claimant disagrees with a "final" Letter of Determination ("LOD") is just as dependent as FEMA's rulemaking authority as the Appeal Requirement, as an LOD is a similar creature of rulemaking. Old Wood's proposed alternative is also inferior to the Appeal Requirement because it changes the arbitration process so that it no

longer serves as a parallel alternative to judicial review and submits claims to arbitration before it is known whether FEMA and the claimant have a dispute requiring resolution.

The Record Requirement is also a valid exercise of FEMA's rulemaking authority—both as a rule about how and when claimants may present support for their claims and as a rule regarding the evidence that may be considered in arbitration. Old Wood's argument that arbitrators should be permitted to consider new evidence would improperly arrogate FEMA's authority to fix and determine a claim in the first instance. It also would impermissibly expand the scope of arbitration beyond a settling of the disputed claim submitted to FEMA. Although Old Wood tries to minimize the amount of new evidence that its definition of "arbitration" would allow, it is incompatible with the scope of arbitration under the HPCC Act, let alone grounds for finding FEMA's procedures arbitrary or contrary to law.

Finally, the Arbitration SOR is the best interpretation of the standard that an arbitrator should apply when reviewing FEMA's determinations from the claims process. The challenged, substantial-evidence standard is the same standard used in the alternative to arbitration, judicial review. And if the Court determines that an arbitration standard of review should be published, rather than provided as an interpretive rule, the existing Arbitration SOR should be left in place in the interim.

## II. Old Wood's New Criticism of FEMA's Administrative Appeal Process Does Not Support its APA Challenges.

Old Wood begins its Reply by raising objections to delays in and the cumbersome nature of the administrative appeal process. Old Wood LLC's Reply on the Merits ("Reply"), Doc. 74, at 1–6. At the outset, these are new arguments—including that the administrative appeal process took too long and was thus invalid—that were not contained in Old Wood's Opening Brief. *See* Old Wood

LLC's Op. Br. ("Op. Br."), Doc. 38, at 18–22, 27–30.[1] These new arguments should be disregarded. *Oseguera-Garcia v. Holder*, 485 Fed. Appx. 948, 951 (10th Cir. 2012) ("[I]ssues and arguments raised for the first time in a reply brief are generally deemed waived in this circuit . . .." (citation omitted)); *Friends of the Floridas v. United States BLM*, 746 F. Supp. 3d 1039, 1177 n. 58 (D.N.M. 2024) (Browning, J.) (not addressing new argument in reply brief in APA challenge under *Olenhouse*).[2]

Although there is no record documenting the handling of administrative appeals in this action, FEMA also disputes Old Wood's factual contentions that the appeal process does not help expeditiously resolve claims, including by narrowing and resolving issues. While Old Wood describes the appeal process as a "black hole," Reply at 5–6, the very administrative record that Old Wood seeks to introduce illustrates the utility of the appellate process. For example, the requests for information that Old Wood criticizes, Reply at 3, were attempts to gather information needed to process Old Wood's claim for business income losses, including requests for documentation of Old Wood's sourcing of firewood, changes in warehousing costs, and lost customers. Not. Lodging Docs. Support Conditional Cross-Mot. Supp. Record, Doc. 73 (OSWR 7–13). These documents reveal that there was outstanding information needed to accurately resolve Old Wood's claim and that the appeal process can serve as a vehicle for gathering necessary information when documentation submitted with a proof of loss is insufficient. Old Wood's suggested alternative of presenting such information to the arbitrator in the first instance as part of

[1] A challenge to the compatibility of the administrative appeal process with the Act's deadline to settle and determine a claim is currently pending and better presented in *Arrellin v. FEMA*, 1:24-cv-979-JB-JFR.

[2] Old Wood's Reply is also approximately 8,470 words, or almost 2,000 words longer than the length permitted for reply briefs in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

a de novo, evidentiary review is at least as cumbersome while precluding informal resolution of the claim.

Old Wood's criticism of partial LODs as a "bureaucratic trap" is also inapt. Reply at 2 n.2. Partial payments, *see* 44 C.F.R. 296.33, permit the resolution of and faster compensation on certain claim line-items. Old Wood itself received and accepted a partial LOD paying $216,300.32 in smoke and ash damages. Op. Br. at 6. Under Old Wood's requested relief of being able to take a "final" LOD to arbitration, it still would need to await the resolution of all line items before seeking arbitration. Alternatively, if claimants could challenge partial LODs in arbitration, it would result in an inefficient series of piecemeal arbitrations. Instead, by seeking to resolve claims or parts of claims through partial payments and administrative appeals, 44 CFR 296 streamlines the disputes that require arbitration or judicial review to resolve.

The operation of the Claims Office's administrative appeal process (either generally or in Old Wood's specific case) is also immaterial to Old Wood's APA challenge. It is not grounds for showing either that the challenged Rule is contrary to the HPCC Act or is arbitrary and capricious. Old Wood has completed its administrative appeal, is in arbitration, and is challenging the rules for that arbitration. As Old Wood has twice acknowledged: "This case presents pure issues of statutory interpretation. There are no factual determinations requiring review." Op. Br. at 15; *see also* Reply at 6 (similar).

## III. Deference to Agency Determinations is Proper in Arbitrary-and-Capricious Review and Where Congress Has Delegated Authority.

In its Reply, Old Wood suggests that the entirety of the Court's review of the Rule consists of a de novo, statutory interpretation. *See* Reply at 6–10. This overlooks that both where Congress has delegated to an agency rulemaking authority and when the Court is conducting arbitrary-and-capricious review, the Court's review is more deferential.

First, the Court's review of delegated rulemaking authority is a review for reasonableness. Old Wood argues that "[t]here is no exception in *Loper Bright* for judicial deference to agency interpretation of statutory delegations of authority." Reply at 7. Although there is no deference when interpreting the statutory language defining the scope of a delegation, once an agency is within the scope of its delegated authority the Agency's rulemaking is reviewed for reasonableness. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (the reviewing court fulfills its role "by . . . fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." (citations omitted)).

Further, when a court determines whether an agency has engaged in "reasoned decisionmaking," its review is deferential. *Id.* at 392 ("Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential."). This deference does not only apply in the review of agency factfinding, as Old Wood suggests, Reply at 10, but also when a court conducts arbitrary-and-capricious review. *Loper Bright*, 603 U.S. at 392 (citing 5 U.S.C. § 706(A)); Defs.'/Resps.' Resp. Br. ("Resp. Br."), Doc. 68, at 13–14.

**IV. Old Wood Does Not Refute That the Completion of Its Administrative Appeal Makes Its Challenge to the Appeal Requirement Moot.**

The mootness grounds for Old Wood's challenge to the Appeal Requirement are simple: because Old Wood has completed its administrative appeal and is in arbitration, it is not harmed by a requirement that a claimant complete the appeal before seeking arbitration.

To begin, in assessing mootness, a court must consider whether each claim and request for relief is moot. *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) ("We take a claim-by-claim approach to mootness and must decide whether a case is moot as to each form of relief sought." (citations omitted)). Thus, Old Wood cannot avoid the mootness of its challenge to the Appeal

Requirement's exhaustion provisions by asserting continuing injuries from other parts of the Rule. *Contra* Reply at 13 (arguing case is not moot as long as Old Wood can obtain some relief).

In its Opening Brief, Old Wood described its injury, for standing purposes, as being "affected and aggrieved by these final agency actions, which prevented it from proceeding directly to *de novo* arbitration of its disputed claim." Op. Br. at 14. Now that Old Wood is in arbitration, however, it is no longer being affected or aggrieved by the requirements to reach arbitration, but only by the Record Requirement and Arbitration SOR—the procedures that will be used in arbitration. Although Old Wood repeatedly asserts past injuries that it allegedly suffered from the Appeal Requirement, they do not refute mootness. *See* Reply at 11 ("The appeal requirement violated Old Wood's procedural right … to receive a judicially reviewable decision within 180 days of its filing of a Notice of Loss."), 12 ("[T]he appeal requirement violated Old Wood's procedural right under §104(h)(3)(B) to elect to settle its claim through arbitration once the claim became disputed upon the issuance of a final letter of determination back in August 2024."), and 14 ("[C]ompliance by FEMA with the provisions of the Act to expeditiously settle claims through arbitration when the claim first became disputed would have better protected Old Wood's concrete interests.").

Next, Old Wood argues that the Court should disregard FEMA's mootness argument because it was raised too late. *See* Reply at 11. Yet of course, mootness necessarily concerns mid-litigation developments. And it may be raised at any time. *Smith*, 44 F.4th at 1247. Nor, here, was mootness raised "[a]t this last minute in the proceedings . . .." Reply at 11. FEMA noted that the issuance of its administrative appeal decision rendered the Appeal Requirement moot in FEMA's first brief on the merits. Old Wood, on the other hand, omitted the decision from the procedural history in its Opening Brief despite the decision being issued 20 days before. Op. Br. at 8–10

(otherwise summarizing appeal activity) (filed July 31, 2025); Old Wood, LLC-SR-0003 (decision issued July 11, 2025).

Old Wood also argues that it has suffered a procedural injury and thus should face a more lenient standing inquiry. Reply at 11–12, 13–14. This argument does not excuse Old Wood from the basic requirement that its claims must still prevent a present or future injury. That is, if an individual seeks to enforce procedural rights "the procedures in question" must be "designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 (1992). Therefore, while a plaintiff can have standing where correcting a procedural injury may cause the defendant to change a decision causing a present injury, the existence of a procedural injury does not eliminate mootness considerations. *See Massachusetts v. EPA*, 549 U.S. 497, 517–18 (2007) (even with special solicitude afforded States, there must be "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant"). And in the context of an APA claim, 5 U.S.C. § 702 expressly requires that a person be "suffering legal wrong" or "adversely affected or aggrieved" to bring an action. Resp. Br. at 15 n.4. Here, excusing Old Wood from needing to exhaust its administrative appeal before initiating arbitration would not avoid any harm or alter the handling of its claim.

Old Wood tries to argue that it will suffer a future injury as a result of the Appeal Requirement because arbitration will be based on the record and decision from the administrative appeal. *See* Reply at 12, 15. These vague assertions of harm at most allege an injury from the Record Requirement or Arbitration SOR, not the Appeal Requirement. It is not the Appeal Requirement but other provisions that define the materials considered by the arbitrator. *See* 44 CFR 296.42(b) ("Arbitration will be conducted on the evidence in the Administrative Record.

Evidence not previously entered into the Administrative Record will not be considered."). Old Wood's objections that it faces "biased limitations on arbitral review," Reply at 14, concern its efforts to introduce new evidence, contrary to the Record Requirement, or have its evidence reviewed under a de novo standard of review, contrary to the Arbitration SOR. Likewise, its objection that "[i]f let stand, the appeal decision, which is a bureaucratic hit piece, will harm Old Wood in arbitration, because it is deeply flawed and confines arbitral review to its four corners," asserts harm from the Record Requirement's limitation on extra-record evidence, not the Appeal Requirement. Reply at 15.

The authority that Old Wood relies upon to argue that being subject to the challenged arbitration rules avoids mootness is inapt. In *Texas Medical Association v. HHS*, cited in Reply at 12, the Fifth Circuit held that being subject to unlawful arbitration procedures can establish standing. 110 F.4th 762, 773 (2024). That ruling does not address mootness, including the situation here where Old Wood has already completed the challenged procedure. The Ninth Circuit's opinion in *Forest Guardians v. Johanns*, cited in Reply at 15, also is inapplicable. There, the court determined that a declaratory judgment action was not moot because a favorable judgment would continue to benefit the plaintiff in the future. 450 F.3d 455, 462–63 (2006). Furthermore, *Forest Guardians* was distinguishing Tenth Circuit authority more closely applicable here, in which the court distinguished delay-based injury that was moot after the agency action occurred from substantive injury stemming from the action itself. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 729 (1997) ("[I]f SUWA still suffers some alleged injury as a result of the Schedule's implementation, that injury must flow from the content of the Schedule, not from the BLM's delay in completing consultation with the FWS."); *see also Rio Grande Silvery Minnow v. Bureau of*

*Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (distinguishing *Johanns* given "[t]he absence of an on-going ESA violation").

Lastly, Old Wood argues that the "voluntary cessation" doctrine means that FEMA faces a higher burden in showing mootness. Reply at 13–14, 15. FEMA, however, is not "attempting to manipulate the Court's jurisdiction." Reply at 15. FEMA issued a decision on Old Wood's administrative appeal after Old Wood refused to provide requested information such that FEMA could not substantiate the requested damages. *See* Old Wood LLC's Resp. FEMA's Mot. Supp. Record, Doc. 72, at 12. It also is ironic that Old Wood criticizes FEMA for resolving its appeal while at the same time bemoaning the length of time it took for the decision to be issued. Reply at 4–5. Most importantly, however, the "voluntary cessation" doctrine does not apply here because there is no showing or argument that FEMA might—or could—reimpose the Appeal Requirement on Old Wood in the future. Old Wood's appeal is complete and its claim is awaiting arbitration. *See Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (noting that concern in *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), was "that a party's change in position may be temporary and thus abandoned once the litigation ends").

Despite all of these arguments the basic mootness inquiry is easy to resolve. Old Wood has completed its administrative appeal and is in arbitration. Its challenge to the Appeal Requirement asking to be able to arbitrate its claim without going through an administrative appeal is moot.

## V. Even If Not Moot, the Appeal Requirement Is a Valid Exercise of FEMA's Delegated Rulemaking Authority.

If the Court considers the merits of Old Wood's challenge to the Appeal Requirement, the rule should be upheld as a valid exercise of FEMA's rulemaking authority. Old Wood argues that the Appeal Requirement exceeds the bounds of both FEMA's authority to promulgate claims-processing rules and arbitration rules and that, instead, the Court is compelled to adopt its

interpretation of the HPCC Act as permitting "final" LODs to be taken to arbitration. *See* Reply at 17–21. These arguments misconstrue the scope of FEMA's rulemaking authority, of which the Appeal Requirement is a reasonable exercise. And even if the Court were to consider the statutory requirements for arbitration without any agency deference, the Appeal Requirement is still the best interpretation of the Act because it ensures a "disputed claim" exists and parallels judicial review.

FEMA's decision in the Appeal Requirement to define a disputed claim subject to arbitration as one that is disputed at the end of its administrative claims process was a valid exercise of rulemaking authority. Old Wood argues that the Appeal Requirement is unreasonable because it "attempts to define 'disputed' by reference to 'final decision' . . .." Reply at 17. As explained in FEMA's Response Brief, however, until FEMA has made a final decision one cannot determine that you have a "disputed claim"—i.e., that the claimant and FEMA will disagree on the claim's compensability or valuation. Resp. Br. at 17–18. This is a logic-based argument, not an argument that "final decision" and "dispute" or "disputed claim" should be interpreted identically. Reply at 17. Similarly, Old Wood's argument that the term "final decision" in 44 CFR 296.41(h) is only applicable to judicial review, Reply at 17, misconstrues FEMA's argument. FEMA does not argue that arbitration requires a "final decision" under 44 CFR 296.41(h), but that the administrative appeal decision—which is also the final decision for judicial review—is part of the regulatory structure defining when a claim is ready for arbitration or judicial review. This procedure is contained in 44 CFR 296.41(i), which says that a claimant can contest "the decision in the Administrative Appeal" in arbitration, and 44 CFR 296.42(a), which provides that "[a] claimant who is dissatisfied with the outcome of the Administrative Appeal may elect to submit the dispute to a binding arbitration process."

This regulatory framework best follows the language and structure of the HPCC Act. It ensures that arbitration concern a "disputed claim," § 104(h)(3)(B), and that arbitration be able to "settle the claim," § 104(h)(3)(C). Resp. Br. at 18. Further, by splitting the administrative claims process into an initial LOD issued by an Authorized Official, and a later administrative appeal decision issued by the Director of Claims Office, the Agency is using its claims-processing authority to resolve the easiest claims at the outset while gathering more information where needed to resolve more complex disputes. Old Wood argues that the channeling of claims to arbitration at an earlier stage is more expeditious and thus that the Appeal Requirement is contrary to a purpose of the Act. Reply at 18–19. But it was a reasonable decision for FEMA to assess that channeling more claims to arbitration would not be more expeditious when many such claims could be resolved in administrative appeal. Moreover, the form of arbitration Old Wood contends is required would defeat the purpose of expeditiously resolving claims by introducing new evidence, witnesses, and de novo review. *See* Resp. Br. at 33.

Next, while Old Wood asserts that the Appeal Requirement cannot be understood as a claims-processing regulation because it does not result in the payment of claims, Reply at 18, this rests on a misreading of the Act. Section 104(f)(1) directs FEMA to promulgate "regulations for the processing and payment of claims under this Act." This permits regulations that concern either processing or payment; it does not suggest a required causal relationship between the processing directed by a regulation and the ultimate payment of a claim. Even if it did, the challenged administrative appeal process is part of processing a claim so that it may be paid at the end of the process. *See* 44 CFR 296.41(c), (e), (g), (h).

Perhaps most importantly, the framework of arbitrating decisions at the end of the administrative claims process posits arbitration as an alternative to judicial review, in keeping with

Congressional intent. Old Wood contends that arbitration is offered on a "different track" because its statutory provision lacks a reference to a "final decision." Reply at 19. But arbitration serves the same structural role as judicial review in the Act, establishing a final resolution of a claim that precludes further review. Resp. Br. at 18–19. In addition, legislative history for the very similar Cerro Grande Act reveals that Congress intended arbitration and judicial review to be parallel proceedings. Resp. Br. at 38–39.

Old Wood posits, as an alternative, that a "final" LOD is the disputed claim that can be brought to arbitration. Reply at 19. This interpretation, just like the Appeal Requirement, is a creature of regulation and not compelled by the Act. Neither an LOD nor an administrative appeal are provided in statute; both procedures were created as an exercise of FEMA's regulatory authority. Indeed, the concept of a "final" LOD is not contained in the Rule at all. And the LOD, unlike the decision after appeal, is not the definitive valuation of a claim by FEMA's administrator that can serve as the basis for a crystallized dispute. If both regulatory options for determining when a claim is ready for arbitrations fall within the scope of FEMA's delegated rulemaking authority, the Agency's choice is entitled to deference so long as it is reasonable. *Loper Bright*, 603 U.S. at 592.

Old Wood defends its interpretation of the Act as requiring arbitration after a "final" LOD as not permitting the arbitration of intermediate disputes. Reply at 21–23. In so doing, Old Wood acknowledges that the subject of an arbitration must be a "disputed claim," not any "dispute." Reply at 22. FEMA agrees. This acknowledgment, however, undermines Old Wood's reliance on the broad definition of "dispute" in the Opening Brief to suggest that a claim can be disputed before FEMA makes its final decision regarding that claim. *See* Op. Br. at 20–22. The HPCC Act's requirement that a "disputed claim" exist before a claimant can request arbitration bolsters FEMA's

regulatory requirement that the Agency and the claimant have made their complete presentations of evidence and the Agency provided its final decision before concluding that a dispute on the claim exists that requires resolution.

Alternatively, the Appeal Requirement is a valid exercise of FEMA's authority to make arbitration rules. Old Wood reasserts its somewhat tautological argument that a procedure cannot be an arbitration procedure if it precedes arbitration. Reply at 20. This argument does not engage with the Response Brief's contention that identifying when a claim is ready for arbitration is the first step in arbitration—and thus an "arbitration procedure." Resp. Br. at 21–22; *cf.* Fed. R. App. P. 4 (defining when an appeal may be taken). In fact, without resolving when a claim may be brought to arbitration, it is impossible to initiate an arbitration at all. Thus, the Appeal Requirement is not only an arbitration procedure, but a *necessary* arbitration procedure.[3]

Because the Appeal Requirement is a claims-processing procedure and an arbitration procedure, it is within FEMA's delegated authority and was a reasonable exercise of such authority. But even if the Requirement fell outside of both delegations of authority, it should be upheld as aligning with the best interpretation of the HPCC Act's language and structure, including by providing parallel options for arbitration and judicial review.

## VI. Arbitration is a Varied Procedure That Can Encompass the Record Requirement.

The Record Requirement is also a valid exercise of FEMA's rulemaking authority. It ensures that arbitration is limited to the "disputed claim"—the claim presented to FEMA and FEMA's challenged decision regarding that claim. Old Wood's efforts to argue that FEMA not only

[3] Old Wood argues that the Appeal Requirement is a "radical or fundamental change to a statutory scheme" and thus should not be permitted by ambiguous language in the Act. Reply at 20–21. This argument is belied by the facts that Congress provided an open-ended grant of authority for FEMA to make arbitration procedures, Resp. Br. at 18, and Congress' intent that arbitration serve as a parallel option to judicial review. Resp. Br. at 38–39. Making arbitration available at the same time as judicial review was well within Congress' contemplated delegation.

should, but must, permit arbitrators to consider evidence never presented to FEMA with the claim do not succeed.

As an initial argument, Old Wood posits that if the Appeal Requirement is set aside, it would "nullify" the Record Requirement and Arbitration SOR. Reply at 24. This is incorrect. Old Wood's challenges to the three provisions are separate inquiries. Even if an administrative appeal does not need to be exhausted before arbitrating a claim, the Court must determine whether arbitration can be limited to the administrative record and the standard of review that the arbitrator shall apply when conducting their review.

Next, Old Wood argues that the Record Requirement and Arbitration SOR exceed FEMA's rulemaking authority. Reply at 25–26. Old Wood does not rebut that the Record Requirement serves as a claim-processing rule by directing when and how a claimant may present evidence in support of their claim. Resp. Br. at 34. Nor does Old Wood rebut that the Record Requirement serves as a procedural rule for conducting arbitrations by providing that the arbitrator may only hear evidence that was already presented to FEMA in the claims process. Resp. Br. at 35. Instead, Old Wood argues that the Record Requirement and Arbitration SOR exceed FEMA's regulatory authority because Sections 104(f)(1) and (h)(3) do not mention "reviews" or "administrative appeals." Reply at 25.

Yet because the Act requires that arbitration settle a "disputed claim," it necessarily follows that arbitration entails the review of the claim that was submitted to FEMA and the Agency's decision regarding that claim. Resp. Br. at 30, 32–33. The claim and its decision—the "disputed claim" brought to arbitration—is documented in the Administrative Record, including records from the administrative appeal. Thus, the Record Requirement is a procedure for identifying the materials relevant to the arbitrator's decision of the disputed claim. Review of this record is the

"procedure" or "specific method" by which an arbitrator conducts their proceedings. *See* Reply at 25.

Petitioners' reliance on *Texas Medical Association v. HHS* to suggest that these regulations exceeded FEMA's authority is inapt. There, the Fifth Circuit was considering a narrower statutory provision that the Court determined did not permit an agency "to fill the gaps in the arbitration process itself with procedural and evidentiary guidelines" where those "standards are fully determined by the text of the Act itself." 110 F.4th at 775 (citation omitted). Here, by contrast, the HPCC Act does not contain an express standard of review for arbitration or define the scope of permissible evidence but directs FEMA to "establish by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration." HPCC Act, § 104(h)(3)(A).

Not only does Old Wood challenge FEMA's authority to issue the Record Requirement and Arbitration SOR, Old Wood argues that new evidence in arbitration and de novo review are required by the Act's reference to "arbitration." In its Reply, Old Wood backs off its earlier argument that the HPCC Act must track the Alternative Dispute Resolution Act's (ADRA) arbitration procedures, *see* Op. Br. at 25, and acknowledges that the HPCC Act does not incorporate all of the ADRA. Reply at 24. Now, Old Wood contends that selected provisions of the ADRA should be read into the HPCC Act's reference to "arbitration." Reply at 27–29. The term "arbitration" cannot bear so much.

Initially, the ADRA cannot be relied upon as a statute defining the term "arbitration," Reply at 27, because the ADRA does not define "arbitration" at all. What Old Wood actually requests that the Court do is to define "arbitration" as selectively encompassing various arbitration procedures from the ADRA. *Hackwell v. United States*, 491 F.3d 1229, 1235 (10th Cir. 2007),

relied upon by Old Wood for this argument, does not support such silent incorporation; it suggests only that courts may look to identical words used in different statutes to help determine their meaning. And the provisions Old Wood asks the Court to adopt in 5 U.S.C. §§ 579 and 580 contain arbitration procedures, not a definition of "arbitration." *See also* Resp. Br. at 24–29 (observing that many of these procedures would be contrary to the HPCC Act).

When looking to the plain definition of "arbitration" instead, the term describes a wide range of procedures and formats that encompass the Record Requirement and Arbitration SOR. *See* Resp. Br. at 24–25. Indeed, the definition of "arbitration" from Black's Law Dictionary used by Old Wood is similarly broad and would include the challenged provisions. Op. Br. at 22 (quoting definition of "arbitration" as "a method of dispute resolution involving one or more neutral third parties who are usually agreed by the disputing parties and whose decision is binding"). So too is the Tenth Circuit's common-law definition of arbitration. *See Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan, Inc.*, 390 F.3d 684, 689–90 (10th Cir. 2004) ("Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute.").

Old Wood argues that the Record Requirement and Arbitration SOR are not compatible with arbitration because other federal statutes do not "limit the presentation of evidence to an appeal record or impose a substantial evidence arbitral standard of review of a prior administrative decision." Reply at 27–28. Yet Old Wood does not refute FEMA's authority from its Response Brief that where arbitration replaces judicial review it can be conducted as a substantial-evidence review of the record. Resp. Br. at 37; *see also Devine v. Pastore*, 732 F.2d 213, 216 (D.C. Cir. 1984) (setting aside arbitrator's decision when the same standard of review as in parallel judicial review was not applied). Nor, given the broad definition of arbitration, is the presentation of new

evidence, witnesses, or cross-examination necessarily required. *See AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985) ("An adversary proceeding, submission of evidence, witnesses and cross-examination are not essential elements of arbitration.").

In defense of its definition of arbitration as requiring the presentation of new evidence, Old Wood argues that setting aside the Record Requirement will not result in a flood of new evidence at arbitration. Reply at 29–32. Yet Old Wood's definition of arbitration does not offer any principled limitation on what a claimant can hold back from the administrative claims process and then present at arbitration. Reply at 31 (suggesting that new evidence be permitted in unspecified "limited circumstances"). Its contention that claimants are unlikely to withhold evidence (notwithstanding Old Wood's own refusal to respond to a request for information) is speculative, wishful thinking—particularly if the claimant can obtain de novo review of any new evidence.

Old Wood argues that allowing new evidence would be "commensurate with the compensatory purposes of the Act." Reply at 31. But Old Wood offers no explanation, other than its flawed, partial incorporation of the ADRA through the definition of "arbitration," why new evidence is *required* by the Act. To the contrary, permitting new evidence would contravene FEMA's authority to determine claims and impermissibly expand the arbitrator's scope of review beyond a disputed claim. Resp. Br. at 31-33. While Old Wood disputes that allowing arbitrators to assess new evidence would be an unauthorized determination, Reply at 32, it would let the arbitrator make an initial claim determination before FEMA has had a chance to assess the evidentiary support for that claim. Old Wood does not explain how FEMA can fix and determine damages for a claim if new evidence regarding those damages (e.g., evidence of a post-claim flood) was never given to the Agency. The arbitrator's authority is limited to resolving a disputed claim—not to making a claim determination in the first instance. Finally, even if Old Wood could establish

that its arbitration procedures would be preferable to FEMA's, because FEMA's procedures are not contrary to the Act, they are not invalid unless Old Wood can establish that FEMA failed to engage in "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 592.[4]

**VII. The Arbitration SOR Is the Best Reading of the Act But Also Would Be Valid as an Arbitration Rule.**

Finally, Old Wood argues that the Arbitration SOR was not properly published and that the substantial-evidence standard for judicial review should not be used in arbitration. As an interpretative rule, however, the Arbitration SOR did not need to be published. And the substantial-evidence standard from judicial review is the best standard for arbitration, as opposed to a de novo standard that cannot be implied from the definition of "arbitration."

Old Wood first argues that the Arbitration SOR is not an interpretive rule because it "constitute[s] a change from existing law, policy, or practice." Reply at 33–34. Yet Old Wood does not identify any prior law, policy, or practice that the Arbitration SOR changed, including that the standard of review for arbitrations differed before FEMA published the Policy Guide. Old Wood's argument that the Arbitration SOR is not an interpretative rule because it does not interpret specific language, Reply at 34, is also unavailing. The Arbitration SOR interprets 44 CFR 296.42(b)'s requirement that arbitration be conducted as a review of the administrative record. It also relies on a suite of provisions—§104(h)(3) as establishing arbitration as a substitute for judicial review; § 104(i)(3)'s substantial-evidence standard of review; and 44 CFR 296.41(i) establishing judicial review and arbitration as sister procedures—to apply the same standard of review to arbitration and judicial review.

---

[4] FEMA's administrative claims process also is reasonable in that it provides other avenues for presenting new evidence including in administrative appeals, 44 CFR 296.41(c), by supplementing claims, 44 CFR 296.34, and by reopening claims. 44 CFR 296.35.

Old Wood seeks to distinguish arbitration from judicial review by suggesting that arbitration "settles" a claim in the sense of "reach[ing] an agreement or decision about" the claim unlike a court's review of the claim. Reply at 35. This argument relies on a definition of "settle" as to mediate or negotiate, rather than the better contextual definition of to "fix or resolve conclusively"—the same conclusive resolution that judicial review provides. In fact, Old Wood used this latter definition of "settle" in its Opening Brief. Op. Br. at 26. Arbitration is a procedure, not for trying to reach agreement on a disputed claim, but for resolving it conclusively. This matches the use of "settle" throughout the HPCC Act. Act, §§ 102(b)(2) ("to provide for the expeditious consideration and settlement of claims"); 104(c)(3)(B)(i) (providing "interest before settlement or payment of a claim"); 104(d)(2)(A) (providing partial payments "before the final settlement of a claim"). If "settling" a claim in arbitration meant an agreement that could or could not happen, it would contradict the Act's description of arbitration as binding. HPCC Act, § 104(h)(3)(C).

Because arbitration is best viewed as a substitute for judicial review, the standard of review from this process should be used in arbitration. Resp. Br. at 37–38. Old Wood does not refute this authority but points to *Wisconsin v. United States Department of Education*, 980 F.3d 558, 567 (7th Cir. 2020), Reply at 36, a case where the court held that arbitration was governed by a preponderance-of-the-evidence burden of proof but had no standard of review for arbitration. As pointed out in the Response Brief, this case supports FEMA's interpretation because the procedure arbitration replaced was a proceeding to determine an agency's final action—warranting the burden of proof. Resp. Br. at 37.

The Cerro Grande Act also does not help Old Wood. As discussed previously, Congress viewed arbitration and judicial review as parallel proceedings under the Cerro Grande Act. Resp.

Br. at 38–39. The Cerro Grande Policy Guidelines quoted by Old Wood, Reply at 36, do not identify any particular standard of review for arbitration. Nonetheless, these Guidelines do make clear that "[t]he evidence at the hearing will be restricted to the Administrative Record, which contains all of the evidence already presented in the prior process." *Dolan v. FEMA*, 1:23-cv-908, USA (Dolan)-0007518.

If the Court concludes that the Arbitration SOR required publication, it should not be vacated on remand. Old Wood's argument that vacatur is mandatory is contrary to its own cited authority. *N. New Mexico Stockman's Ass'n v. United States Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1030 (D.N.M. 2020) (Browning, J.) (cited in Reply at 37) (holding that vacatur is discretionary, equitable relief). "The decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (citations omitted). Here, because the Arbitration SOR is the preferable standard for arbitration and vacatur would result in inconsistent claim resolution, the Arbitration SOR should not be vacated with any remand.

* * *

Therefore, FEMA respectfully requests that the Court rule in its favor and reject Old Wood's APA challenges to the arbitration rules in 44 C.F.R. 296.42. Alternatively, if the Court finds that the Arbitration SOR should have been promulgated by regulation, FEMA requests that the Court remand the issue without vacatur so that it may promulgate a revised arbitration rule.

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

RYAN ELLISON
Acting United States Attorney

/s/ Nicholas M. Sydow
NICHOLAS M. SYDOW
CARRIE Y. YANG
RAFAEL F. GO
Assistant United States Attorneys
201 Third Street NW, Suite 900
Albuquerque, New Mexico 87102
(505) 224-1460; Fax (505) 346-7205
Nicholas.Sydow@usdoj.gov
Carrie.Yang@usdoj.gov
Rafael.Go@usdoj.gov

***Attorneys for Respondents***

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY, that according to the word count function in Microsoft Word for Microsoft 365 MSO Version 2502, there are 6,489 words in the body of this brief, within the 6,500 type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 15, 2025, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney