IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLD WOOD, LLC

      Plaintiff,

vs.                                    No. CIV 24-1142 JB/JFR

FEDERAL EMERGENCY MANAGEMENT AGENCY, DEANNE CRISWELL, and JAY MITCHELL,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Plaintiff Old Wood LLC's Opening Brief, filed July 31, 2025 (Doc. 38)("Opening Brief"); and (ii) the Defendants' Motion to Lodge a Supplement to the Administrative Record, filed November 12, 2025 (Doc. 67)("Motion to Supplement"). The Court holds a hearing on December 18, 2025. See Clerk's Minutes at 1, filed on December 18, 2025 (Doc. 78). The primary issues are: (i) whether the Court must set aside, under 5 U.S.C. §§ 706(2)(A)(C), as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, Defendant Federal Emergency Management Agency's ("FEMA") regulations and policies relating to arbitration under the Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104, 136 Stat. 2114, 2168 (2022)("Hermit's Peak Act") that (a) require a claimant to exhaust an administrative appeal before proceeding to arbitration on a disputed claim, (b) restrict arbitration to a review of the record of and issues raised and decided on administrative appeal, and (c) limit arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal; (ii) whether Plaintiff Old Wood's challenge to FEMA's requirement that a claimant exhaust an administrative appeal before proceeding to arbitration on a disputed claim is moot, because Old Wood already has exhausted its administrative appeal and may proceed to

arbitration; and (iii) whether the Court should grant FEMA leave to lodge supplemental documents to the Administrative Record despite the fact that the deadline for FEMA to lodge any additional documents to the Administrative Record -- April 14, 2025 -- has passed, because these additional documents relate to justiciability.  The Court concludes that: (i) the Court does set aside under 5 U.S.C. §§ 706(2)(A)(C) regulations and policies relating to arbitration under the Hermit's Peak Act that: (a) restrict arbitration to a review of the record of and issues raised and decided on administrative appeal, and (b) limit arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal; (ii) the Court denies as moot Old Wood's challenge to FEMA's requirement that a claimant exhaust an administrative appeal before proceeding to arbitration on a disputed claim, because Old Wood already has exhausted its administrative appeal and may proceed to arbitration; and (iii) the Court grants FEMA leave to lodge supplemental documents to the court record for the sole purpose of establishing justiciability, because these additional documents relate to justiciability.  In the interest of completeness, the Court also allows Old Wood to supplement the court record with the remainder of the Appeals Record documents for the sole purpose of establishing justiciability.

## FACTUAL BACKGROUND

First, the Court describes the Hermit's Peak/Calf Canyon Fire and the creation of the Hermit's Peak Act.  Second, the Court discusses the Judicial Review provision of the Hermit's Peak Act, HPA § 104(i).  Third, the Court quotes the relevant Hermit's Peak Act section, the Arbitration provision, HPA § 104(h)(3).  Then, the Court quotes the relevant portions of FEMA's Rules and Regulations and Policy Guide.  Finally, the Court describes the Plaintiff.

### 1.    Overview of the Hermit's Peak/Calf Canyon Fire and the Hermit's Peak Act.

The Hermit's Peak/Calf Canyon Fire began in northeastern New Mexico on April, 2022,

when the United States Forest Service ("Forest Service") initiated a prescribed burn in the Santa Fe National Forest in San Miguel County that quickly spread beyond federal land and turned into a wildfire.  See Dolan v. FEMA, 760 F. Supp. 3d 1200, 1208-09 (D.N.M. 2024)(Browning, J.)( citing Hermit's Peak Act § 102(a) Findings and Purposes, 136 Stat. 2144, 2168 ("Hermit's Peak Act § 102(a)")).  A second wildfire also began nearby on April 19, 2022, when a dormant pile burn[1] from the prior winter reemerged.  See Dolan v. FEMA, 760 F. Supp. 3d at 1209 (citing Hermit's Peak Act § 102(a)).  The two wildfires merged and scorched 340,000 acres of land in northeastern New Mexico, destroying over 900 structures and forcing over 15,000 households to evacuate.  See Dolan v. FEMA, 760 F. Supp. 3d at 1208 (citing Hermit's Peak Act § 102(a)).  In September, 2022, Congress establishes a dedicated relief fund to compensate Hermit's Peak/Calf Canyon Fire victims by enacting the Hermit's Peak Act, § 102(b), 136 Stat. at 2169 ("§ 102(b)").  The Hermit's Peak Act provides funding to compensate persons whom the fire injures, and establishes within FEMA an Office of Hermit's Peak/Calf Canyon Fire Claims, which Congress vests with the authority to "receive, process, and pay claims in accordance with this Act." § 104(a)(2)(A), (B).  The Hermit's Peak Act requires FEMA's Administrator to publish in the Federal Register interim final regulations for the processing and payment of claims within forty-five days of the date of enactment of the Hermit Peak's Act.  See §§ 103(1)(A), 104(f)(1).

> **2.    The Judicial Review Provision, § 104(i).**

Section 104 of the Hermit's Peak Act is entitled "Compensation for Victims of Hermit's Peak/Calf Canyon Fire."  This section provides for the establishment of a Claims Office, which is

---

[1]A pile burn "is a type of prescribed fire where firefighters pile and burn forest debris to reduce an area's wildfire risk."    Pile Burning, United States Forest Service, https://www.fs.usda.gov/detail/arp/landmanagement/resourcemanagement/?cid=fsm91_058291 (last accessed Dec. 6, 2024).

responsible for receiving, processing, and paying claims in accordance with the Hermit's Peak Act.  See § 104(a)(2).  Section 104 requires claimants to submit claims to the Claims Office and investigation of the claims by the Administrator of the Claims Office, who is required to determine and fix the amount of compensation within 180 days of the date a claim is first submitted.  See § 104(b), (c), (d)(1)(A)(i); Gallegos et al. v. Federal Emergency Management Agency, 2025 WL 961665, at * 33 (D.N.M. 2025)(Browning, J.).  If a claimant is dissatisfied with FEMA's determination of the amount of a claim, section 104 permits a claimant to seek judicial review within sixty days.  See § 104(i).

The complete text of § 104(i) states:

(i)     Judicial Review. --

(1)     IN GENERAL. -- Any claimant aggrieved by a final decision of the Administrator under this Act may, not later than 60 days after the date on which the decision is issued, bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part.

(2)     RECORD. -- The court shall hear a civil action under paragraph (1) on the record made before the Administrator.

(3)     STANDARD. -- The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole.

HPA § 104(i).  The Court hereinafter refers to HPA § 104(i) as the "Judicial Review Provision."

**3.     The Arbitration Provision, § 104(h)(3).**

As an alternative to judicial review, a claimant may elect to proceed to binding arbitration to "settle the claim through arbitration," which precludes a claimant from seeking judicial review. § 104(h)(3)(B), (C).

The complete text of § 104(h)(3) states:

(3) ARBITRATION. --

    (A)    IN GENERAL. -- Not later than 45 days after the date of enactment of this Act, the Administration shall establish by regulation procedures under which a dispute regarding a claim submitted under the Act may be settled by arbitration.

    (B)    ARBITRATION AS REMEDY. -- On establishment of arbitration procedures under subparagraph (A), an injured person that submits a disputed claim under this Act may elect to settle the claim through arbitration.

    (C)    BINDING EFFECT. -- An election by an injured person to settle a claim through arbitration under this paragraph shall --

    (i)    be binding; and
    (ii)    preclude any exercise by the injured person of the right to judicial review of a claim described in subsection (i).

HPA § 104(h)(3).  The Court hereinafter refers to HPA § 104(h)(3) as the "Arbitration provision."

**4.**    <u>**FEMA Regulations and Policies Regarding the Arbitration Procedures Under the Hermit's Peak Act.**</u>

On November 14, 2022, FEMA publishes Interim Final Rules and Regulations in the Federal Register.  <u>See</u> 87 Fed. Reg. No. 218 p. 68085 <u>et seq</u>.  After interested parties lodge comments about the interim regulations, FEMA publishes Final Rules and Regulations for the processing of claims for compensation under the Hermit's Peak Act on August 29, 2023.  <u>See</u> 44 C.F.R. § 296.1-296.43; 88 Fed. Reg. No. 166 p. 59777 <u>et seq</u>.

Section 296.42 of FEMA's Final Rules and Regulations establishes arbitration procedures. <u>See</u> 44 C.F.R. § 296.42.  To initiate arbitration, a claimant must submit "a written request to the Arbitration Administrator . . . . no later than 60 days after the date that appears on the Administrative Appeal decision."  44 C.F.R. § 296.42(a).  Along with subsection (a), subsection (b) states that claimants may not arbitrate "an issue unless it was raised and decided in the Administrative

Appeal." 44 C.F.R. § 296.42(b). It further provides that arbitration "will be conducted on the evidence in the Administrative Record" and that "evidence not previously entered into the Administrative Record will not be considered." 44 C.F.R. § 296.42(b).

After the publication of the claims-processing and arbitration procedures in the Federal Register, FEMA also publishes on its website the Hermit's Peak/Calf Canyon Program and Policy Guide, which outlines FEMA's policy and provides guidance regarding the claims process under the Hermit's Peak Act. Hermit's Peak/Calf Canyon Claims Program and Policy Guide, Version 2.0, Effective August 8, 2025, FEMA, https://www.fema.gov/sites/default/files/documents/ fema_hpcc-hermits-peak-calf-canyon_program-and-policy-guide.pdf. ("Policy Guide"). FEMA issues the Policy Guide "to articulate the agency's intent and direction when implementing statutory and regulatory authority." Policy Guide, § 1.4 at 7. The Policy Guide's description of how to conduct arbitrations closely mirrors that of the Rules and Regulations, and it reiterates the requirements in 44 C.F.R. § 296.42(a) and (b) that a claimant must exhaust an administrative appeal before requesting arbitration. See Policy Guide, § 12.2, at 97. In addition, however, the Policy Guide imposes a substantial evidence standard of review on arbitration, limiting arbitration to a search for substantial evidence supporting FEMA's decision. See Policy Guide, § 12.2, at 97 ("The arbitrators will review the record for substantial evidence supporting the decision and will uphold the claim decision if it is supported by substantial evidence on the record considered as a whole.").

**5.    Old Wood.**

Old Wood is a family-owned-and-operated New Mexico limited liability company. See Opening Brief at 10. The company's manager is its founder, David J. Old, who works with his son Shiloh and daughter Mika. See Opening Brief at 10. D. Old starts the company as a sawmill and lumber business, and in the late 1990s, D.Old expands the business to include fine wood flooring,

which Old Wood sells internationally.  See Opening Brief at 10.  Old Wood operates a 10,000 square foot factory in Las Vegas, New Mexico, making wood flooring.  See Opening Brief at 10. Old Wood later expands into the packaged firewood business, and sells packaged firewood to chain stores nationwide.  See Opening Brief at 10.  The company builds a 28,000 square foot facility on the outskirts of Las Vegas to package the firewood and ship it to customers.  See Opening Brief at 10.  Old Wood employs twenty-eight full-time employees before the Hermit's Peak Fire, but must decrease this number after the fire.  See Opening Brief at 10.  The Hermit's Peak Fire destroys Old Wood's supply of firewood and wood flooring, which is located at a large private ranch within the fire's burn scar.  See Opening Brief at 11.  Old Wood is unable to replace its local wood supply, and what wood it can get comes from afar, which imposes increased transportation costs and decreases profits.  See Opening Brief at 11.  Old Wood alleges that the fire causes "Old Wood LLC to suffer a substantial loss of net business income, past and future."  Opening Brief at 11.

## PROCEDURAL BACKGROUND

The Court discusses the briefing on both motions in chronological order.  The Court first discusses Old Wood's Opening Brief and FEMA's Response to Old Wood's Opening Brief.  Next, the Court summarizes FEMA's Motion to Supplement and Old Wood's Response to the Motion to Supplement.  Then, the Court discusses the Old Wood's Reply to the Opening Brief before discussing FEMA's Surreply to the Opening Brief.  Finally, the Court summarizes FEMA's Reply to the Motion to Supplement.

1.      **Old Wood's Opening Brief.**

Old Wood's Opening Brief challenges the arbitration process that FEMA establishes for claims that claimants bring under the Hermit's Peak Act.  See Opening Brief at 2-3.  Old Wood argues that the Court must set aside under the APA, 5 U.S.C. § 706(2)(A), as arbitrary and

capricious, an abuse of discretion, or otherwise not in accordance with law, specific FEMA regulations and policies controlling arbitration under the Hermit's Peak Act: (i) requiring a claimant to exhaust an administrative appeal before proceeding to arbitration on a disputed claim; (ii) restricting arbitration to a review of the issues raised and decided on administrative appeal, relying only on the record from the administrative appeal; and (iii) limiting arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal.  See Opening Brief at 2-3.  Old Wood contends that the arbitration provision of the Hermit's Peak Act allows a claimant to elect to bypass administrative appeal and submit a claim to de novo arbitration once FEMA disputes its claim in a final letter of determination.  See Opening Brief at 15.  Old Wood concludes, therefore, that FEMA impermissibly rewrites the Hermit's Peak Act to insert administrative appeal into the arbitration process.  See Opening Brief at 16.  Old Wood argues additionally that the limitation of arbitration to a substantial evidence standard of review is invalid because the Policy Guide, a guidance document, and not a regulation, establishes the standard of review.  See Opening Brief at 31. Old Wood maintains that this procedure is therefore invalid, because the Hermit's Peak Act requires FEMA to establish arbitration procedures by regulation.   See Opening Brief at 31.

### 2.    FEMA's Response to the Opening Brief.

In response to Old Wood's Opening Brief, FEMA argues that Congress tasks FEMA under the Hermit's Peak Act with establishing procedures for both the processing of claims and for arbitration, and that these delegations of authority are broad, offering little direction on how claimants can proceed to arbitration or how that arbitration is to be conducted.   See Defendants/Respondents' Response Brief at 1, filed November 12, 2025 (Doc. 68)("Response"). FEMA contends that it follows the structure of the Hermit's Peak Act by creating "a parallel process wherein a claim that is disputed after FEMA's final decision may be resolved either in binding

- 8 -

arbitration or by judicial review," and that the challenged arbitration procedures apply equally to judicial review.  Response at 1.  FEMA further argues that the application of identical standards and procedures for arbitration and judicial review is compatible with the Hermit's Peak Act, preventing forum shopping and inconsistent outcomes, and therefore is not arbitrary or capricious such that the Court should invalidate the procedures under the APA.  See Response at 1. Additionally, FEMA argues that Old Wood's challenge to the requirement that a claimant must exhaust an administrative appeal before beginning the arbitration process is moot, because Old Wood has completed the administrative appeal process.  See Response at 14.  FEMA contends that, in fact, Old Wood's claim is pending arbitration, which is stayed at Old Wood's request.  See Response at 14.

### 3.      FEMA's Motion to Supplement.

On the same day that FEMA files its Response, FEMA also files its Motion to Supplement. FEMA moves to lodge a supplement to the Administrative Record regarding Old Wood's claims for compensation under the Hermit's Peak Act; specifically, FEMA wants to add documents that demonstrate the current status of Old Wood's administrative appeal and arbitration.  See Motion to Supplement at 1-2.  FEMA asserts that the documents are not "properly part of the Administrative Record for [Old Wood's] challenge to FEMA's rulemaking and Policy Guide," but instead relate to Old Wood's standing to bring its challenge to FEMA's arbitration procedures under the Hermit's Peak Act.  Motion to Supplement at 1.  The deadline for FEMA to lodge any additional documents to the Administrative Record is April 14, 2025.  See Motion to Supplement at 4.  FEMA argues, however, that the Court should permit FEMA to supplement the record, because the documents it seeks to add relate to standing, and the Tenth Circuit allows standing supplementation at any time during the briefing stage.  See Motion to Supplement at 7-8.

**4.     Old Wood's Response to the Motion to Supplement/Conditional Cross Motion to Supplement.**

In response to the Motion to Supplement, Old Wood contends, first, that the motion is untimely, and that FEMA's delay in filing the motion prejudices Old Wood, because Old Wood is "unable to address the appeal decision in its Opening Brief," and because "it is unclear what its counsel can and cannot argue in Reply as the Administrative Record is not settled." Old Wood LLC's Response to FEMA's Motion to Supplement Record/Conditional Cross Motion to Supplement Administrative Record at 1, 4-5, filed December 9, 2025 (Doc. 72)("Response to Motion to Supplement"). Second, Old Wood argues that the Motion to Supplement is procedurally defective, because the Motion to Supplement seeks to supplement the record with selected documents rather than the whole of the Appeal Section's records, and that these selected documents present an "incomplete and biased view of the proceedings." Response to Motion to Supplement at 1. In the event that the Court grants FEMA's motion, Old Wood moves to supplement the record with the entire Appeal Section's Old Wood files. See Response to Motion to Supplement at 2.

**5.     Old Wood's Reply for the Opening Brief.**

In reply to the Response to the Opening Brief, Old Wood reiterates its statutory interpretation arguments and contends that the Court does not owe any deference to FEMA's interpretation of the Hermit's Peak Act. See Old Wood LLC's Reply on the Merits at 6, filed December 9, 2025 (Doc. 74)("Reply"). Old Wood also contends that its challenge to FEMA's appeal requirement is not moot. See Reply at 11. First, Old Wood references FEMA's Motion to Supplement, discussed above, and states that, if the Court denies the Motion to Supplement, then there is no factual basis in the Administrative Record to support the mootness argument. See Reply at 11. Old Wood maintains that, even if the Court grants FEMA's Motion to Supplement, its

challenge is not moot, because Old Wood suffers procedural injuries and continues to suffer injuries stemming from the denial of Old Wood's procedural right under Hermit's Peak Act § 104(d)(1)(A)(i) "to receive a judicially reviewable decision within 180 days of its filing of a Notice of Loss." See Reply at 11. Old Wood also argues that it is likely to suffer future procedural and financial injury from the appeal requirement, because it is "the cornerstone of the challenged arbitration rules, which depend on the existence of an appeal record and decision and heavily bias the arbitral process in FEMA's favor," making it likely that an arbitral award will be less than it would be in the absence of such restrictions. Reply at 11. Old Wood contends that the fact that it suffers a procedural injury results in a higher burden on FEMA to establish mootness, because a litigant can assert a violation of procedural rights "without meeting all the normal standards for redressability and immediacy." Reply at 11. Old Wood also alludes to a voluntary cessation argument, stating that FEMA bears a particularly heavy burden of establishing mootness given that "the basis for mootness is FEMA's own voluntary conduct of forging ahead with an appeal decision in the face of the pendency of this action . . . ." Reply at 13.

6.       **FEMA's Surreply for the Opening Brief.**

In surreply to the Opening Brief, FEMA argues that Old Wood does not refute that its challenge to the appeal requirement is moot, and reiterates its arguments that the challenged rules are valid exercises of FEMA's authority to establish claims-processing and arbitration procedures. See Defendants/Respondents' Surreply Brief at 1, filed December 15, 2025 (Doc. 76)("Surreply"). FEMA also responds to Old Wood's voluntary cessation argument, stating that the voluntary cessation argument does not apply, because there is no showing that "FEMA might -- or could -- reimpose the appeal requirement on Old Wood in the future." Surreply at 9. FEMA argues that FEMA cannot renew the Appeal Requirement on Old Wood in the future, because Old Wood's

appeal is complete, and its claim is awaiting arbitration.  See Surreply at 9.

###### 7.      **FEMA's Reply for the Motion to Supplement.**

In reply to the Response to the Motion to Supplement, FEMA reiterates that, although the supplemental documents are not properly part of the Administrative Record for Old Wood's challenge to FEMA's rulemaking, FEMA submits this evidence to the Court under an exception for documents related to standing.  See Respondents' Reply in Support of Motion to Lodge a Supplement to the Administrative Record and Response to Petitioner's Conditional Cross-Motion to Supplement Administrative Record at 1, filed December 23, 2025 (Doc. 80)("Reply to Motion to Supplement").  FEMA clarifies that it "submits a supplement to the Administrative Record, with that supplement being outside of the Administrative Record and only offered for the limited purpose of evaluating standing."  Reply to Motion to Supplement at 1-2 (emphasis in original).  FEMA also argues that the Tenth Circuit does not limit the parties' ability to submit evidence relating to mootness to before the Administrative Record closes or before the briefing's commencement in the District Court.  See Reply to Motion to Supplement at 2.  FEMA states that FEMA does not prejudice Old Wood simply by filing the Motion to Supplement after Old Wood files its Opening Brief, "because the documents are not offered as part of the underlying Administrative Record for evaluating FEMA's rulemaking, but rather for the limited purpose of assessing whether Petitioner has standing."  Reply to Motion to Supplement at 2.  Finally, FEMA contends that Old Wood's conditional Cross-Motion to Supplement the record with the entire Appeals Record does not fit within the Tenth Circuit's exception that allows parties to submit documents outside of the Administrative Record for the purpose of evaluating standing and, therefore, the Cross-Motion to Supplement should be "rejected as an attempt to expand the current Administrative Record and as improper use of non-Administrative Record documents for arguing its case."  Reply to Motion to

Supplement at 2-3.  FEMA states, however, that it does not oppose admitting Old Wood's lodged

documents filed in the Notice of Lodging of Documents in Support of Conditional Cross-Motion

to Supplement the Record, filed December 9, 2025 (Doc. 73), "for the sole and limited purpose of

helping the Court determine whether [Old Wood] has standing or whether the case is moot."  Reply

to Motion to Supplement at 3.

**LAW REGARDING MOTIONS TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

"Judicial review of agency action is normally restricted to the administrative record."

Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy, 485 F.3d 1091, 1096

(10th Cir. 2007).  "'The complete administrative record consists of all documents and materials

directly or indirectly considered by the agency.'"  Rocky Mountain Peace & Just. Ctr. v. United

States Fish & Wildlife Serv., 40 F.4th 1133, 1160 (10th Cir. 2022)(quoting Bar MK Ranches v.

Yuetter, 994 F.2d 735, 739 (10th Cir. 1993)).  "'[T]he designation of the Administrative Record,

like any established administrative procedure, is entitled to a presumption of administrative

regularity.'"  Rocky Mountain Peace & Just. Ctr., 40 F.4th at 1160 (quoting Bar MK Ranches, 994

F.2d at 740).  Courts therefore must "'assume the agency properly designated the Administrative

Record absent clear evidence to the contrary.'"  Rocky Mountain Peace & Just. Ctr., 40 F.4th at

1160 (quoting Bar MK Ranches, 994 F.2d at 740).  "In 'extremely limited' circumstances, a court

may supplement the administrative record or consider extra-record evidence."  Rocky Mountain

Peace & Just. Ctr., 40 F.4th at 1160 (quoting Am. Mining Cong. v. Thomas, 772 F.2d 617, 626

(10th Cir. 1985)).  Referred to as the American Mining Congress exceptions, a court may

supplement the administrative record when: (i) "'the record is deficient because the agency ignored

relevant factors it should have considered;'" (ii) "'the agency considered factors that were left out

of the formal record;'" or (iii) "'evidence coming into existence after the agency acted demonstrates

that the actions were right or wrong.'"  Rocky Mountain Peace & Just. Ctr., 40 F.4th at 1160

(quoting Am. Mining Cong., 772 F.2d at 626).

The United States Court of Appeals for the Tenth Circuit also allows parties to supplement

the administrative record with materials necessary to address the issue of standing.  See U.S.

Magnesium, LLC v. U.S. E.P.A., 690 F.3d 1157, 1164-65 (10th Cir. 2012)("U.S. Magnesium").  In

U.S. Magnesium, the Tenth Circuit explains that:

> Generally, parties petitioning for review of agency decisions may only rely on
> evidence in the administrative record, but, as we have recognized, '[b]ecause Article
> III's standing requirement does not apply to agency proceedings, [the petitioner] had
> no reason to include facts sufficient to establish standing as part of the administrative
> record.'

U.S. Magnesium, 690 F.3d at 1164 (quoting Quest Commc'ns Int'l v. FCC 886, 892 (10th Cir.

2001)).  Thus, in instances where the case originates in a court or agency not subject to Article III's

requirements, the parties should "'take pains to supplement the record in any manner necessary to

enable [the Court] to address with as much precision as possible any question of standing that may

be raised.'"  U.S. Magnesium, 690 F.3d at 1165 (quoting Pennell v. City of San Jose, 485 U.S. 1, 8

(1988)).  Accordingly, in U.S. Magnesium, the Tenth Circuit determines that it is appropriate to

consider supplemental documents to the administrative record for the purpose of establishing

standing, but limits the use of these documents only for this purpose.  See U.S. Magnesium, 690

F.3d at 1165 ("[W]e accept the Bird Declaration for the sole purpose of determining whether U.S.

Magnesium has standing to bring this challenge.").

Several other Courts of Appeals apply this same standard.  In Northwest Environmental

Defense Center v. Bonneville Power Admin., 117 F.3d 1520 (9th Cir. 1997), the United States

Court of Appeals for the Ninth Circuit concludes that:

> Because Article III's standing requirement does not apply to agency proceedings,

petitioners had no reason to include facts sufficient to establish standing as part of the administrative record. We therefore consider the affidavits not in order to supplement the administrative record on the merits, but rather to determine whether petitioners can satisfy a prerequisite to this court's jurisdiction.

Northwest Environmental Defense Center v. Bonneville Power Admin., 117 F.3d at 1527-28. Similarly, in Prometheus Radio Project v. FCC, 939 F.3d 567 (3d Cir. 2019), rev'd on other grounds, 592 U.S. 414 (2021), the United States Court of Appeals for the Third Circuit states: "It is well established that petitioners challenging agency action may supplement the administrative record for the purpose of establishing Article III standing, even though judicial review of agency action is usually limited to the administrative record." 939 F.3d at 578.

## LAW REGARDING MOOTNESS

Article III, Section 2 of the Constitution of the United States limits the federal courts' jurisdiction to actual cases and controversies. See U.S. CONST. art. III § 2. "Federal courts are without authority to decide questions that cannot affect the rights of litigants in the case before them." Ford v. Sully, 773 F. Supp. 1457, 1464 (D. Kan. 1991)(O'Connor, C.J.)(citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997).

The Tenth Circuit recognizes a distinction between mootness and standing in Lucero v. Bureau of Collection Recovery, Inc:

> Like Article III standing, mootness is oft-cited as a constitutional limitation on federal court jurisdiction. E.g., Building & Constr. Dep't v. Rockwell Int'l Corp., 7 F.3d 1487, 1491 (10th Cir. 1993)("Constitutional mootness doctrine is grounded in the Article III requirement that federal courts only decide actual, ongoing cases or controversies."); see Matthew I. Hall, The Partially Prudential Doctrine of Mootness, 77 GEO. WASH. L. REV. 562, 571 (2009)(citing footnote 3 in Liner v. Jafco, Inc., 375 U.S. 301, 306 (1964), as the first occasion in which the Supreme Court expressly derived its lack of jurisdiction to review moot cases from Article

- 15 -

III).  But although issues of mootness often bear resemblance to issues of standing, their conceptual boundaries are not coterminous.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189-92 (2000).

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1242-43 (10th Cir. 2011).  Nevertheless, the doctrines are closely related.  As the Supreme Court explains, "[a]t all stages of litigation, a plaintiff must maintain a personal interest in the dispute," and "[t]he doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings."  Uzuegbunam v. Preczewski, 592 U.S. 279, 282 (2021)(Thomas, J.).  See Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 YALE L.J. 1363, 1384 (1973)("Mootness is . . . the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

Accordingly, if a case is moot, or becomes moot during any stage of the case, the court does not have jurisdiction to hear the case.  A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)(citing Powell v. McCormack, 395 U.S. 486, 496 (1969)).  The burden of establishing mootness is a heavy one.  See Cnty. of Los Angeles v. Davis, 440 U.S. at 631.  Courts are permitted to take into account the relative likelihood of the events which a party asserts keep the dispute from becoming moot.  See Golden v. Zwickler, 394 U.S. 103, 109 (1969).  A case can become moot based on intervening events, such as settling the case, see U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 25 (1994), or becoming a resident of the State whose residency laws one is challenging, see Sosna v. Iowa, 419 U.S. 393, 399 (1975).

The Supreme Court historically recognizes two "exceptions" to the general rule against consideration of moot cases.  Voter Reference Found., LLC v. Torrez, No. CIV 22-0222 JB/KK,

2024 WL 4008163, at * 24 (D.N.M. Aug. 30, 2024)(Browning, J.).  First, "a case or controversy is not moot if the dispute is 'capable of repetition, yet evading review.'" N.M. Health Connections v. United States HHS, 956  F.3d 1138, 1159 (10th Cir. 2019)(quoting Brown v. Buhman, 822 F.3d 1151, 1166 (10th Cir. 2016)).  "This exception 'applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" N.M. Health Connections v. United States HHS, 956 F.3d at 1159 (quoting Brown v. Buhman, 822 F.3d at 1166). "Second, 'voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.'" N.M. Health Connections v. United States HHS, 956  F.3d at 1159 (quoting Brown v. Buhman, 822 F.3d at 1166).  The Tenth Circuit explains that "[t]his exception is designed to counteract gamesmanship, such as 'a defendant ceasing illegal action long enough to render a lawsuit moot' before 'resuming the illegal conduct.'" N.M. Health Connections v. United States HHS, 956  F.3d at 1159 (quoting Ind v. Colo. Dep't of Corr., 801 F.3d 1209, 1214 (10th Cir. 2015)). This exception does not apply, however, if it is "'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" N.M. Health Connections v. United States HHS, 956 F.3d at 1159 (quoting Brown v. Buhman, 822 F.3d at 1166).  "Government 'self-correction . . . provides a secure foundation for mootness so long as it seems genuine.'" N.M. Health Connections v. United States HHS, 956 F.3d at 1159 (quoting 13C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FED. PRAC. & PROC. JURIS. § 3533.7 (3rd ed. 2008)).

## LAW REGARDING THE APA'S JUDICIAL REVIEW PROVISIONS

The Court reviews agency action under the APA, 5 U.S.C. §§ 701-706.  The APA describes the exclusive mechanism -- unless another statute provides an alternative or supplemental

mechanism -- by which the federal district courts may review the actions of federal administrative agencies. See Webster v. Doe, 486 U.S. 592, 607 (1988)(Scalia, J., dissenting). "The [APA] makes final agency action for which there is no adequate remedy in a court subject to judicial review." Utahns for Better Transp. v. United States Dep't of Transp., 305 F.3d 1152, 1164 (10th Cir. 2002). Because the Hermit's Peak Act does not provide a private right of action, courts review final agency action under the APA.

1.    **The APA Does Not Impart Subject-Matter Jurisdiction, but It Waives Sovereign Immunity.**

The APA does not, through § 702, create an independent basis of subject-matter jurisdiction. See Eagle-Picher Indus., Inc. v. United States, 901 F.2d 1530, 1531 (10th Cir. 1990). The APA allows for judicial review of final agency action only if there is also an independent basis for subject-matter jurisdiction. See Colo. Dep't of Soc. Servs. v. Dep't of Health & Human Servs., 558 F. Supp. 337, 339 (D. Colo. 1983)(Matsch, J.). Notably, before a court may review a party's grievance, the party must demonstrate that statutes do not preclude judicial review and that the law does not commit the action to agency discretion. See Heckler v. Chaney, 470 U.S. 821, 828 (1985). Section 702 waives sovereign immunity, and makes clear that suits under the APA are for equitable relief only and not for damages. See 5 U.S.C. § 702.

Through 5 U.S.C. § 702, Congress provides "a general waiver of the government's sovereign immunity from injunctive relief." United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 n.8 (10th Cir.1996). "This waiver is not limited to suits under the Administrative Procedure Act." Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005).

> Whether plaintiffs' claims arise under the APA or common law is also immaterial with respect to the sovereign immunity analysis. Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions in a court of the United States seeking relief other than money damages and stating a claim that an agency

> or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.

Gilmore v. Weatherford, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012)(internal citations and quotation marks omitted). See Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006)(holding that "the APA's waiver of sovereign immunity applies to any suit whether under the APA or not"); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996)(holding the same).

### 2.    Cases Arising From Agency Actions as Appeals.

Pursuant to Olenhouse v. Commodity Credit Corp., 42 F.3d 1560 (10th Cir. 1994), "[r]eviews of agency action in the district courts [under the APA] must be processed as appeals.  In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." 42 F.3d at 1580.  See Wyoming v. United States Dep't of Interior, 587 F.3d 1245, 1251 n.2 (10th Cir. 2009) (quoting Olenhouse v. Commodity Credit Corp., 42 F.3d at 1580). District courts may not entertain motions for summary judgment or any other procedural devices that shift the appellant's substantial burden -- arbitrary-or-capricious review for questions of fact -- onto the agency.  See Olenhouse v. Commodity Credit Corp., 42 F.3d at 1579-80.

### 3.    "Substantial Evidence" Review.

Under the APA, a reviewing court must accept an agency's factual determinations in informal proceedings unless they are "arbitrary [or] capricious" and, in appeals from formal proceedings, unless they are "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E). Although these standards appear different, the modern view is that they are the same, and that a decision is arbitrary and capricious if substantial evidence does not support it.  See Pennaco Energy, Inc. v. U.S. Dep't of Interior, 377 F.3d 1147, 1156 (10th Cir. 2004)("Thus, agency action, whether it is classified as 'formal' or 'informal,' will be set aside as arbitrary unless it is supported by

'substantial evidence' in the administrative record."); <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Govs. of the Fed. Reserve Sys.</u>, 745 F.2d 677, 683-84 (D.C. Cir. 1984).  In reviewing a decision under the arbitrary-or-capricious standard, the court reviews the entire administrative record -- or at least those portions of the record that the parties provide -- but it may not consider materials outside of the administrative record.[2]  <u>See</u> 5 U.S.C. § 706.  Section 706(2)(F) of the APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  5 U.S.C. § 706(2)(F).

> In cases where Congress has provided for judicial review without setting forth the standards to be used or procedures to be followed in conducting that review, the Supreme Court has advised such review shall be confined to the administrative record and, in most cases, no de novo proceedings may be had.

<u>Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision</u>, 934 F.2d 1127, 1137 (10th Cir.1991).  <u>See</u> Fed. R. App. P. 16 ("The record on review or enforcement of an agency order consists of . . . the order involved; . . . any findings or report on which it is based; and . . . the pleadings, evidence, and other parts of the proceedings before the agency." (emphasis added)).  The court does not pass judgment on the wisdom or merits of the agency's decision.  <u>See</u> <u>Colo. Envtl. Coal. v. Dombeck</u>, 185 F.3d 1162, 1172 (10th Cir. 1999). To fulfill its function under the arbitrary-or-capricious standard of review, however, a reviewing court engages in a "thorough, probing, in-depth review" of the administrative record.  <u>Wyoming v. United States</u>, 279 F.3d 1214, 1238 (10th Cir. 2002)(citation omitted). The Tenth Circuit explains the relevant standard of review:

> In determining whether the agency acted in an arbitrary and capricious manner, we must ensure that the agency decision was based on a consideration of the relevant

---

[2] Section 706(2)(F) of the APA provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."  5 U.S.C. § 706(2)(F).

factors and examine whether there has been a clear error of judgment. We consider an agency decision arbitrary and capricious if the agency . . . relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Colo. Envtl. Coal. v. Dombeck, 185 F.3d at 1167 (omission in original)(citations omitted)(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983))(internal quotation marks omitted). The standard of review requires the district court "to engage in a substantive review of the record to determine if the agency considered relevant factors and articulated a reasoned basis for its conclusions." Olenhouse v. Commodity Credit Corp., 42 F.3d at 1580. While the court may not invent a reasoned basis for the agency's action that the agency did not give, the court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)(citations omitted). The agency must articulate the same rationale for its findings and conclusions on appeal upon which it relies in its internal proceedings. See Sec. Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 94 (1943).

**4.      Review of Legal Issues in APA Cases.**

In promulgating and enforcing regulations, agencies must interpret the content of the Constitution, statutes, and their own previously enacted regulations. Courts used to afford "considerable deference to agencies' interpretations of their own organic statutes -- the statutes Congress has tasked an agency with enforcing, from which it derives its authority to act" under a deference known as Chevron deference, named after the first case adopting the approach, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). New Mexico v. McAleenan, 450 F. Supp. 3d 1130, 1168 (D.N.M. 2020)(Browning, J.). Chevron deference

involves a two-step process, first asking whether the statutory provision in question is clear and then, if the statutory provision is ambiguous, asking whether the agency's interpretation of the unclear statute is a reasonable one. See New Mexico v. McAleenan, 450 F. Supp. 3d at 1168. The Supreme Court overrules Chevron deference, however, in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)("Loper Bright"). In lieu of Chevron's presumption, the Supreme Court observes that "[t]he better presumption is . . . that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch." Loper Bright, 603 U.S. at 403. What takes the place of Chevron deference is: ordinary judicial interpretation of statutes, with courts free to review and reject statutory interpretations that federal agencies offer. See Loper Bright, 603 U.S. at 403.

## ANALYSIS

The Court first addresses the Motion to Supplement and determines that FEMA may supplement the court record with records pertaining to mootness for the exclusive purpose of determining justiciability. In the interest of completeness, the Court also allows Old Wood to supplement the court record with the entirety of the Appeals Section's records, also for the limited purpose of determining justiciability. Next, the Court discusses whether FEMA's completion of Old Wood's administrative appeal moots Old Wood's challenge to FEMA's regulation requiring a claimant to exhaust an administrative appeal before proceeding to arbitration on a disputed claim ("Appeal Requirement"), and the Court determines that it does. Finally, the Court considers whether the Court should set aside as arbitrary and capricious, and abuse of discretion, or otherwise not in accordance with law under the APA the remaining FEMA regulations and policies which Old Wood challenges: (i) regulations that restrict arbitration to a review of the record of the administrative appeal and to issues that the parties raise in the administrative appeal and FEMA

decides on administrative appeal ("Record Requirement"), and (ii) limiting arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal ("Standard of Review Requirement"). The Court concludes that both of the above-described rules are not in accordance with law under the APA, and, accordingly, the Court sets aside these regulations and policies.

I.    **THE COURT ALLOWS BOTH OLD WOOD AND FEMA TO SUPPLEMENT THE COURT RECORD FOR THE EXCLUSIVE PURPOSE OF DETERMINING JUSTICIABILITY.**

"When a court evaluates whether an agency has complied with the APA, its review 'is generally based on the full administrative record that was before all decision makers.'" Rocky Mountain Peace & Justice Ctr., 40 F.4th at 1160 (quoting Bar MK Ranches, 994 F.2d at 739). Documents that post-date the challenged agency action are generally not part of the administrative record, as "[t]he complete administrative record consists of all documents and materials directly or indirectly considered by the agency." Rocky Mountain Peace & Justice Ctr., 40 F.4th at 1160 (quoting Bar MK Ranches, 994 F.2d at 739). There are limited circumstances where the Court may supplement the administrative record or consider extra-record evidence: "(1) the record is deficient because the agency ignored relevant factors it should have considered, (2) the agency considered factors that were left out of the formal record, and (3) evidence coming into existence after the agency acted demonstrates that the actions were right or wrong." Rocky Mountain Peace & Justice Ctr., 40 F.4th at 1160 (internal citation and quotations omitted).

For an Article III court to properly hear a case, there must be a live case or controversy. See Hydro Res., Inc. v. United States EPA, 608 F.3d 1131, 1144 (10th Cir. 2020)("Under Article III, federal courts have jurisdiction only to decide 'Cases' and 'Controversies.'"). A requirement for an Article III court, a live case or controversy, is not, however, a requirement for APA proceedings.

See US Magnesium, 690 F.3d at 1164.  As a result, parties have "no reason to include facts sufficient to establish standing as a part of the administrative record."  US Magnesium, 690 F.3d at 1164.  Accordingly, to ensure that a court has jurisdiction in APA actions where standing may not be apparent from the administrative record, the Tenth Circuit states that parties should "'take pains to supplement the record in any manner necessary to enable [the court] to address with as much precision as possible any question of standing that may be raised.'"  US Magnesium, 690 F.3d at 1165 (quoting Pennell v. City of San Jose, 485 U.S. at 8).

FEMA argues that the Court should be allow FEMA to lodge specific documents which "show the status of Petitioner's administrative appeal of HPCC Act claims and subsequent request for arbitration of FEMA's administrative appeal decision," because these documents relate to mootness.  Motion to Supplement at 6.  Specifically, FEMA argues that evidence whether Old Wood has "completed the administrative appeal for its claim is relevant to its claimed injury that FEMA's regulation requiring the exhaustion of an administrative appeal before seeking arbitration has 'unlawfully restricted the right of a claimant to settle his or her disputed claim.'"  Motion to Supplement at 7 (quoting Complaint ¶ 1, at 1, filed November 7, 2024 (Doc. 1)).  FEMA asserts that a good reason for the omission of these documents from the Administrative Record is that the status of Old Wood's claims change after the deadline for submitting an Administrative Record passes.  See Motion to Supplement at 8.  Finally, FEMA clarifies that it does not seek to have the Court admit these documents for the purpose of evaluating FEMA's challenged regulations and policies, but instead for the sole purpose of evaluating justiciability.  See Reply to Motion to Supplement at 9.  The Court agrees with FEMA's argument, and allows FEMA to supplement the

court record with these additional documents.[3]

The Tenth Circuit has made clear that, for APA challenges in federal court, the plaintiff may provide the court with documents necessary to establish standing after the administrative record has been finalized.  In US Magnesium, the Tenth Circuit accepts a declaration as evidence of standing after the administrative record is finalized for "the sole purpose of determining whether U.S. Magnesium has standing to bring this challenge."  690 F.3d at 1165.  See Nw. Env't Def. Ctr. v. Bonneville Power Admin., 117 F.3d at 1528 ("Because standing was not at issue in earlier proceedings, . . . petitioners in this case were entitled to establish standing anytime during the briefing phase.  We consider the affidavits solely to determine whether petitioners have standing to bring this action.").  The Court considers US Magnesium to be on point with FEMA's request to present evidence to the Court for the sole purpose of demonstrating justiciability, and accordingly the Court allows FEMA to supplement the court record with the documents relevant to its mootness argument, for the sole purpose of determining the justiciability of Old Wood's claims.[4]

---

[3]  FEMA's Motion to Supplement asks the Court to allow FEMA to supplement the Administrative Record.  See Motion to Supplement at 1.  FEMA makes clear, however, that FEMA is not asking the Court to supplement the Administrative Record with these documents for the purpose of evaluating Old Wood's substantive challenge to FEMA's arbitration regulations and policies, but instead that the documents are only to be used to establish the justiciability of Old Wood's challenge to the Appeal Requirement.  See Reply to Motion to Supplement at 9-10. Because FEMA does not seek to have the Court use the supplemental documents for the substantive APA review, however, the Court determines that it will not supplement the Administrative Record with these documents.  Rocky Mountain Peace & Just. Ctr., 40 F.4th at 1160 (quoting Bar MK Ranches, 994 F.2d at 739)(explaining that a court's APA review is generally limited to "'the full administrative record that was before all decision makers.'"). Instead, the Court will supplement the court record with these supplemental documents, and consider them as extra-record evidence.  See Rocky Mountain Peace & Just. Ctr., 40 F.4th at 1160 (quoting Am. Min. Cong. v. Thomas, 772 F.2d at 626)("In 'extremely limited' circumstances, a court may supplement the administrative record or consider extra-record evidence.").

[4] Mootness, the doctrine for which FEMA seeks to admit these documents, is not a Constitutional standing requirement; the Tenth Circuit addresses standing in US Magnesium.  See

Old Wood argues that the motion is procedurally defective, because establishing justiciability is not one of the limited circumstances when a court may supplement the administrative record or consider extra-record evidence.  See Response to Motion to Supplement at 6 (citing Rocky Mountain Peace & Justice Ctr., 40 F.4th at 1160).  Further, Old Wood maintains that neither the Ninth Circuit nor the Tenth Circuit actually supplement the administrative record when they consider extra-record evidence for establishing standing.  See Response to Motion to Supplement at 6-7 (citing U.S. Magnesium, 690 F.3d at 1165; Nw. Env't Def. Ctr., 117 F.3d at 1527-28).  While Old Wood is correct that neither the Ninth Circuit nor the Tenth Circuit technically supplement the record, the Court does not agree that a motion to supplement is an incorrect vehicle to present this evidence; it does not appear as if there is a required method that parties must follow when it comes to evidence relating to justiciability.  The Supreme Court in Pennell states that parties litigating under circumstances in which the case originates in a court not subject to Article III of the Constitution "take pains to supplement the record in any manner necessary to enable us to address with as much precision as possible any question of standing that may be raised."  485 U.S. at 8 (emphasis added).  The Tenth Circuit, having addressed this issue twice, does not establish any

_____

Protocols, LLC v. Leavitt, 549 F.3d 1294, 1298 (10th Cir. 2008).  Mootness is, however, a jurisdictional doctrine similarly based on Article III of the Constitution, which goes to the court's power to hear the case.  See McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996)("Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.").  Similar to standing, parties and the court may raise mootness at any stage of the proceedings.  See Kennedy v. Lubar, 273 F.3d 1293, 1301-02 (10th Cir. 2001).  The Article III "live case or controversy" requirement does not extend to proceedings not in federal court.  See US Magnesium, 690 F.3d at 1164.  As a result, parties do not always provide evidence relating to a live case or controversy in proceedings outside of a federal court, necessitating the court to consider evidence outside of the established record; this justification applies equally to mootness as it does to standing.  Accordingly, the Court concludes that the Court should extend the Tenth Circuit's approach to considering evidence outside of the Administrative Record for standing purposes to evidence relating to mootness.

procedure which a party must follow when seeking to present additional evidence to the court for standing purposes. See U.S. Magnesium, 690 F.3d at 1165 (accepting a declaration attached to a reply brief); Qwest Commc'ns Int'l, Inc. v. F.C.C., 240 F.3d 886, 893 (10th Cir. 2001)(discussing a party's failure to provide evidence to establish standing and stating: "Qwest certainly could have obtained leave to adduce evidence regarding standing had it made such a request"). Accordingly, the Court determines that the Motion to Supplement is an appropriate vehicle to present these documents to the Court, and the Court considers these documents only for justiciability purposes.

Old Wood also maintains that the motion is procedurally defective, because it does not present the whole of the Appeals Section's records, but instead only selected documents. See Response to Motion to Supplement at 7. Old Wood maintains that the selection which FEMA presents is biased and prejudices Old Wood, and therefore submits a conditional cross-motion to supplement the Administrative Record with the entirety of the Appeals Section's records, "which will balance the picture and further support Old Wood's argument the appeal requirement violates the Act." Response to Motion to Supplement at 7-8. The Court does not agree that FEMA's selection of documents prejudices Old Wood, because the Court cabins the supplementation to justiciability purposes only. In the interest of completeness, however, the Court allows Old Wood to supplement the court record with the remaining documents from the Appeals Section's records, although the Court similarly considers these documents only for justiciability purposes. See Reply to Motion to Supplement at 19 ("FEMA does not object to the lodgment of Petitioner's proposed documents for the sole purpose of helping the Court to better evaluate questions of standing and mootness.").

Finally, Old Wood argues that FEMA's motion is untimely, and this untimeliness prejudices Old Wood, because "(1) it was unable to address the appeal decision in its Opening Brief, and (2)

it is unclear what its counsel can and cannot argue in Reply as the Administrative Record is not settled." Response to Motion to Supplement at 4-5. The supplementation of the court record with these documents does not prejudice Old Wood, because the Court cabins their use to justiciability; the Court will evaluate Old Wood's substantive arguments regarding FEMA's challenged rules and regulations only on the Administrative Record as the United States lodged by the required deadline. Accordingly, the Court does not determine that there is prejudice to Old Wood sufficient to prevent the Court from allowing FEMA to supplement the court record for the sole purpose of evaluating mootness and justiciability. Both Old Wood and FEMA may supplement the court record with documents that the Court will be evaluate solely for standing and mootness purposes.

## II.    FEMA'S COMPLETION OF OLD WOOD'S ADMINISTRATIVE APPEAL MOOTS OLD WOOD'S CHALLENGE TO FEMA'S APPEAL REQUIREMENT.

Article III of the Constitution places a Constitutional limitation on the federal courts' jurisdiction to hear and determine "cases and controversies," and thus provides the mootness doctrine. U.S. Const. art. III, § 2, cl. 1. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." McClendon v. City of Albuquerque, 100 F.3d at 867. Moreover, "[t]his requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." McClendon v. City of Albuquerque, 100 F.3d at 867. "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010)(citation and quotation marks omitted). A case becomes moot "when a plaintiff no longer

suffers 'actual injury that can be redressed by a favorable judicial decision.'" Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2012)(quoting Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983)).  The court does not dismiss a case as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an alleged illegal practice but is free to resume it at any time . . . ."  Riley v. INS, 310 F.3d 1253, 1257 (10th Cir. 2022)(quoting Chong v. Dist. Dir., INS, 264 F.3d 378, 384 (3d Cir. 2001)).

FEMA argues that Old Wood's challenge to the Appeal Requirement, which requires that claimants first complete FEMA's administrative appeal process before initiating arbitration, is moot, because Old Wood already has completed FEMA's administrative appeal process and received a decision on its appeal from the Director of the Claims Office.  See Response at 14-15.  FEMA argues, accordingly, "[b]ecause setting the challenged Appeal Requirement aside would have no bearing on Old Wood's ability to engage in arbitration, the challenge is moot and should be dismissed."  Response at 15.

In response, Old Wood offers several arguments in support of its contention that its Appeal Requirement is not moot.  First, Old Wood argues that it suffers procedural injuries, which continue to have "real world consequences," both because the Appeal Requirement "violated Old Wood's procedural right under § 104(d)(1)(A)(i) to receive a judicially reviewable decision within 180 days of its filing of a Notice of Loss," and because the Appeal Requirement "violated the Act's command in § 102(b)(2) that Old Wood's claim for compensation be expeditiously considered and settled."  Reply at 11-12.  Old Wood also argues that it likely is to suffer future procedural and financial injury, "because the appeal requirement is the cornerstone of the challenged arbitration rules, which depend on the existence of an appeal record and decision and heavily bias the arbitral process in

FEMA's favor." Reply at 12. Old Wood argues that the burden to establish mootness is particularly high when a case involves agency violation of procedural rights, and that an "order setting aside the appeal requirement will provide effective relief by governing FEMA's conduct relating to arbitration and prohibiting it from continuing to violate the law." Reply at 14-15. Finally, Old Wood appears to make a voluntary cessation argument, arguing that "the basis for mootness is FEMA's own voluntary conduct of forging ahead with an appeal decision in the face of the pendency of this action . . . ." Reply at 13.

FEMA has completed the administrative appeals process for Old Wood. See Administrative Appeal Decision at 1 (dated July 11 2025) (Old Wood, LLC SR-0003). As a result, there is nothing preventing Old Wood from proceeding to arbitration, other than Old Wood's own request to stay arbitration pending this APA review. See Stay Extension at 1 (Old Wood, LLC SR-0001)("In response to [Old Wood's] request, [FEMA] informs [Old Wood] that the stay extension has been granted . . . ."); Email from Old Wood to FEMA Re: Stay Request at 1 (dated May 21, 2025) (Old Wood, LLC SR-0014)("Request is made by Old Wood LLC to stay further processing of Old Wood's administrative appeal until the District Court issues a final ruling on its case seeking to invalidate the appeal process, among other things."). The Court concludes, therefore, that Old Wood's challenge to the Appeal Requirement is moot unless Old Wood can demonstrate a present injury -- the Appeal Requirement barring access to the arbitration process is no longer a present injury -- or a doctrine such as capable of repetition yet evading review or voluntary cessation prevent a finding of mootness. Old Wood asserts that it faces a future injury because of the Appeal Requirement, because FEMA limits arbitration to the record and decision from the administrative appeal, which heavily biases the arbitral process in FEMA's favor. See Reply at 12. The Court disagrees, however, that the future injury which Old Wood suffers stems from the Appeal

Requirement, which requires only that Old Wood complete FEMA's administrative appeal process before entering into arbitration. Instead, the injury which Old Wood alleges stems from the other challenged FEMA regulations/policies -- the Record Requirement, which restricts arbitration to a review of the record of and issues raised and decided on administrative appeal, and the Standard of Review Requirement, which limits arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal. The injury stemming from these other challenged requirements does not translate into a future injury for the Appeal Requirement, however, because the Appeal Requirement requires only that the appeal occur before arbitration begins. The contours of the arbitration process are defined by other regulations and policies which Old Wood is not prevented, because of mootness, from challenging. Accordingly, the future harms which Old Wood alleges from the arbitration process are not attributable to the Appeal Requirement, and do not save Old Wood's challenge to the Appeal Requirement from being mooted.

Old Wood also argues that it has suffered a procedural injury and thus faces a more lenient standing inquiry. See Reply at 12-14. This argument does not excuse Old Wood, however, from the basic requirement that its claims must still relate to a present or future injury. In both Lujan v. Defenders of Wildlife and Massachusetts v. E.P.A., which Old Wood cites in support of its position, the Supreme Court still requires that there still be some meaningful relief that the court can provide. See Massachusetts v. E.P.A., 549 U.S. 497, 518 (2007)("When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."). See Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 n.7 (explaining that procedural injuries have a lowered requirement for redressability and immediacy, but tying this statement to an example of a potential future injury, thus demonstrating that there must still be some possibility, even if remote, of present

or future harm for procedural injury: "Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years").

The Court has "no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it." S. Utah Wilderness All. v. Smith, 110 F.3d 724, 727 (10th Cir. 1997)("Southern Utah Wilderness Alliance")(citing Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)).  FEMA has completed Old Wood's administrative appeal, and, accordingly, any ruling from the Court on the legality of FEMA's Appeal Requirement will not provide any meaningful relief for Old Wood.  Because this case does not involve a continuing violation or practice, any ruling that the Court makes on this issue constitutes an impermissible advisory opinion.  See Southern Utah Wilderness Alliance, 110 F.3d at 730.  Accordingly, the changed circumstances of this particular case -- FEMA's completion of the administrative appeal -- no longer present an opportunity for meaningful relief.  The cases that Old Wood cites do not counsel the opposite conclusion.  See  Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs., 110 F.4th 762, 772-73 (5th Cir. 2024)(concluding that Plaintiffs subject to unlawful arbitration procedures do have a procedural injury sufficient to establish standing, but failing to address mootness, including a situation such as here, where Old Wood has already completed the challenged procedure); Forest Guardians v. Johanns, 450 F.3d 455, 462-63 (9th Cir. 2006)(concluding that a declaratory judgment action regarding agency action is not moot, because the case "does involve a continuing practice," and would, accordingly, "'resolve a dispute with present and future consequences'")(quoting Nw. Env't Def. Ctr. v. Gordon, 849 F.2d 1241,

1245 (9th Cir. 1988)).

Finally, Old Wood makes a voluntary cessation argument.  See Reply at 13 ("FEMA bears the burden of establishing mootness, which is particularly heavy where, as here, the basis for mootness is FEMA's own voluntary conduct of forging ahead with an appeal decision in the face of the pendency of this action . . . .").  Voluntary cessation is an exception to a claim of mootness, which exists to "'counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct.'"  Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1115 (10th Cir. 2010)(quoting Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 892 (10th Cir. 2008)).   "Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d at 1115 (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).  The Court determines that FEMA's action in completing the administrative appeal during the pendency of this lawsuit does not satisfy the voluntary cessation exception to mootness.  Old Wood's appeal is complete; there is no possibility that FEMA restarts the alleged illegal activity, because Old Wood has already entered into the arbitration process, and arbitration has been stayed only at Old Wood's request.  See Stay Extension at 1 (Old Wood, LLC SR-0001)("In response to [Old Wood's] request, [FEMA] informs [Old Wood] that the stay extension has been granted, and your case will not be referred for an arbitration hearing until the term expires on January 31, 2026");  Email from Old Wood to FEMA Re: Stay Request at 1 (dated May 21, 2025) (Old Wood, LLC SR-0014)("Request is made by Old Wood LLC to stay further processing of Old Wood's administrative appeal until the District Court issues

a final ruling on its case seeking to invalidate the appeal process, among other things."). Accordingly, there is no reasonable expectation that the alleged violation will recur, and the completion of the appeal eradicates the alleged violation's effects; Old Wood may proceed to arbitration. The voluntary cessation exception, therefore, does not apply.  In the absence of the application of this exception, and because the Court cannot give meaningful relief to Old Wood with regards to the Appeal Requirement, the Court denies as moot Old Wood's challenge to FEMA's Appeal Requirement.

**III.    THE COURT INVALIDATES FEMA'S RECORD REQUIREMENT AND STANDARD OF REVIEW REQUIREMENT AS ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH <u>LAW</u>.**

Old Wood challenges FEMA's Record Requirement and Standard of Review Requirement under § 706(2)(A) of the APA, which states that the court shall "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  See Opening Brief at 17.  Old Wood also invokes APA § 706(2)(C), which permits the court to set aside agency actions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  See Opening Brief at 17.

When reviewing final agency action under the APA, the reviewing court must "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.  The essential function of judicial review under the APA is a determination of (i) whether the agency acted within the scope of its authority; (ii) whether the agency complied with prescribed procedures; and (iii) whether the action is otherwise arbitrary, capricious, or an abuse of discretion.  See <u>Olenhouse v. Commodity</u>

Credit Corporation, 42 F.3d at 1574.  The APA requires the Court to exercise its independent judgment in deciding whether an agency acts within its statutory authority.  See Loper Bright Enterprises v. Raimundo, 603 U.S. 369, 412 (2024)("Loper Bright").  In some cases involving agencies, however, a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion."  Loper Bright, 603 U.S. at 394.  One example of an agency that Congress authorizes to exercise a degree of discretion is an agency that Congress empowers to "'fill up the details'" of a statutory scheme.  Loper Bright, 603 U.S. at  395 (quoting Wayman v. Southard, 10 Wheat. 1, 43 (1825)).  "When the best reading of a statute is that it delegates discretionary authority to an agency," the reviewing court fulfills its role "by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decision-making within those boundaries."  Loper Bright, 603 U.S. at 395.

Section 104 of the Hermit's Peak Act is entitled "Compensation for Victims of Hermit's Peak/Calf Canyon Fire."  HPA § 104.  This section provides for the establishment of a Claims Office, which is responsible for receiving, processing, and paying claims in accordance with the Act.  See HPA § 104(a)(2).  Section 104 requires the claimants' submission of claims to the Claims Office and investigation of the claims by the Administrator of the Claims Office, who must determine and fix the amount of compensation.  See HPA § 104(b), (c), (d)(1)(A)(i).  If a claimant is dissatisfied with FEMA's determination of the amount of a claim, § 104 permits a claimant to seek either judicial review, or, as an alternative, elect to proceed to binding arbitration.  See HPA § 104(i), (h)(3).  The complete text of HPA § 104(h)(3) states:

(3)    ARBITRATION. --

(A)    IN GENERAL. -- Not later than 45 days after the date of enactment of this Act, the Administrator shall establish by regulation procedures under which a dispute regarding a claim submitted under

the Act may be settled by arbitration.

    (B)    ARBITRATION AS REMEDY. -- On establishment of arbitration procedures under subparagraph (A), an injured person that submits a disputed claim under this Act may elect to settle the claim through arbitration.

    (C)    BINDING EFFECT. -- An election by an injured person to settle a claim through arbitration under this paragraph shall --

        (i)    be binding; and

        (ii)    preclude any exercise by the injured person of the right to judicial review of a claim described in subsection (i).

§ 104(h)(3).

The Court begins by looking at the statute's plain language to determine whether FEMA's rules are a proper exercise of FEMA's authority to establish arbitration procedures. With the Hermit's Peak Act, Congress authorizes FEMA to establish "regulation procedures under which a dispute regarding a claim submitted under the Act may be settled by arbitration." § 104(h)(3)(A). FEMA does not, however, have discretion to entirely redefine the meaning of arbitration with these procedures. Black's Law Dictionary defines arbitration as a "dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute." Arbitration, BLACK'S LAW DICTIONARY (12th ed. 2024). Arbitration is not typically a procedure for limited appellate review of an administrative decision, but instead is an informal, alternative process to judicial proceedings. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 685 (2010)("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."). FEMA's regulations attempt to turn arbitration into an appellate review

court proceeding of an administrative process, and deny parties the ability to side-step FEMA's time-consuming appellate administrative process with an independent review of FEMA's disputed claim offers to reach a resolution of a claimant's claims.

Looking at the statute's structure, the Court determines that the arbitration which the Hermit Peak's Act contemplates is an alternative method of dispute resolution in which a neutral arbitrator uses his or her independent judgment to make a binding decision valuing a disputed claim following presentation of evidence, examination of witnesses, and argument, without any limitation to the four corners of an administrative appeal.   The Hermit's Peak Act sets out two mutually exclusive methods for a party to seek review of FEMA's compensation award: judicial review and arbitration. See HPA § 104(h)(3)(C)("An election by an injured person to settle a claim through arbitration under this paragraph shall . . . preclude any exercise by the injured person of the right to judicial review of a claim described by subsection (i)."); id. § 104(i).  Unlike the arbitration provision, the judicial review provision states explicitly that the judicial review proceeding is limited to "the record made before the Administrator" and that the standard of review for the proceeding is that "the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole."  HPA § 104(i).  FEMA, therefore, in establishing the procedures for arbitration under the Hermit's Peak Act, intentionally mirrors the procedures that Congress establishes for the judicial review proceedings.  See 44 C.F.R. § 296.42(b) (establishing the Record Requirement that "[e]vidence not previously entered into the Administrative Record will not be considered");  Policy Guide, Section 10.2, at 85 (establishing the Standard of Review Requirement, stating that "[t]he arbitrators will review the record for substantial evidence supporting the decision and will uphold the claim decision if it is supported by substantial evidence on the record considered as a whole").  FEMA even acknowledges that it purposefully applies

"identical standards and procedures for arbitration and judicial review," because these procedures "prevent forum shopping and inconsistent outcomes depending on the method by which a claimant resolves their disputed claim."  Response at 1.  FEMA's desire for consistency is inconsistent with Congress' express allowance of forum shopping and Congress' tolerance for inconsistent outcomes that different arbitrators may produce.  FEMA's desire for order cannot override Congress' mandate of arbitration.

Further, FEMA's promulgated arbitration procedures render superfluous the arbitration provision.  See Feliciano v. Dep't of Transportation, 605 U.S. 38, 65 (2025)(Thomas, J. dissenting)("Because we interpret statutes, where possible, to avoid superfluity, we strive to avoid interpretations that 'would in practical effect render [statutory language] entirely superfluous in all but the most unusual circumstances.'")(quoting TRW Inc. v. Andrews, 534 U.S. 19, 29 (2001)).  A claimant loses all benefits of choosing an arbitration proceeding if the claimant must comply with a proceeding that mirrors the judicial review proceeding.  While FEMA's arbitration regulations may prevent forum shopping, these regulations eliminate the claimant's choice between judicial review and arbitration.  FEMA, through these regulations, establishes essentially two judicial review proceedings, with a judge determining claims in one proceeding, and an arbitrator determining claims in another.  That choice is no choice at all.

The Court concludes that Congress does not write two mutually exclusive options for dispute resolution of claims under the Hermit's Peak Act if it intends to allow FEMA to promulgate regulations which erase the distinctions between judicial review and arbitration.  FEMA argues that the Hermit's Peak Act establishes two parallel review proceedings and that arbitration is similarly intended to be merely a review of FEMA's final claim determinations, equivalent to judicial review:

HPCC Act arbitration occurs once FEMA's determination is disputed and

> replaces a judicial review that is limited to a review of claim materials submitted to the Agency . . . . The best reading of the HPCC Act is that the arbitrator settles disputed claims by reviewing any disputes remaining after completion of FEMA's administrative process and, as arbitration replaces judicial review, decides if FEMA's determinations were supported by substantial evidence.

Response at 32. FEMA reads an assumption into the statute, however; nothing in the arbitration provision of the Hermit's Peak Act indicates that arbitration is a reviewing function of FEMA's actions. The judicial review provision of the Hermit's Peak Act, § 104(i), is titled "Judicial Review," and states that a claimant may "bring a civil action . . . to modify or set aside the decision [by the Administrator]," which makes clear that the court conducting the judicial review proceeding will be acting in a reviewing capacity. HPA § 104(i). By contrast, the arbitration provision of the Hermit's Peak Act states that "an injured person that submits a disputed claim under this Act may elect to settle the claim through arbitration." HPA § 104(h)(3). To "settle" a claim means, in ordinary terms, to reach a final resolution on a claim, not to review a finalized claim. See Settle, BLACK'S LAW DICTIONARY (12th ed. 2023)("To end or resolve (an argument or disagreement, etc.); to bring to a conclusion (what has been disputed or uncertain) <they settled their dispute>"). To resolve a dispute usually requires that the arbitrator be able to review all the claims and the evidence in the case, and reach an independent conclusion, instead of receiving a limited record and searching for evidence supporting a decision that someone else makes outside of arbitration, as FEMA insists arbitration here works. Settling a claim, therefore, is contrary to review of an already finalized claim, wherein it is reasonable to require that the court look only to the evidence and result reached in the prior proceeding, because the court is not reaching an independent judgment. Further, that Congress explicitly restricts judicial review to the Administrative Record and describes the standard of review to a search for substantial evidence supporting the Administrator's decision makes clear that Congress knows how to write these requirements, but chooses not to include them in the

arbitration provision.  The requirements for judicial review in the Hermit's Peak Act further support the conclusion that Congress intends arbitration to mean de novo arbitration and not to track the judicial review requirements.

In support of the Record Requirement, FEMA argues that allowing the use of extra-record evidence during arbitration, in contravention of the Record Requirement, "violates the Act's reservation of authority to FEMA to make claim determinations."  Response at 31-32.  FEMA maintains that the use of extra-record evidence during arbitration is a problem, because, "if an individual who does not possess the authority of FEMA's Administrator can receive additional evidence not before FEMA and make determinations de novo, then an unauthorized entity is making claim determinations and investigatory findings in dispersing federal monies."  Response at 32. FEMA also asserts that the "arbitrator's authority is limited to resolving a disputed claim -- not to making a claim determination in the first instance" and that to allow the arbitrator to consider extra-record evidence is to "let the arbitrator make an initial claim determination before FEMA has had a chance to assess the evidentiary support for that claim."  Surreply at 17.

The Court does not agree that Congress did not mean for arbitrators to act like arbitrators. FEMA's arguments center around the assumption that arbitration is another review mechanism; when reviewing FEMA's claim determinations, such as a court does under judicial review, it is logical to confine that review to the agency's record below.  Arbitration, however, is different. Once a claimant disputes a claim determination by FEMA and elects arbitration under the Hermit's Peak Act, the arbitrator is free to make a finding on the claim independent from FEMA's initial determination; nothing in the Hermit's Peak Act cabins arbitration to "review."  In jettisoning this idea of "review" from arbitration, it is reasonable to allow the arbitrator to consider evidence outside of the Administrative Record, because the arbitrator is acting independently from FEMA's

determination process.

Finally, the Court disagrees with FEMA's assertion that only FEMA is entitled to make a claim determination and "investigatory findings in dispersing federal monies."  Response at 32. The Hermit's Peak Act authorizes the arbitrator to "settle a claim," HPA § 104(h)(3), which necessarily requires a final determination on a claim and the award of federal monies.  Accordingly, the Court determines that nothing in the Hermit's Peak Act indicates that de novo arbitration, including allowing the consideration of extra-record evidence, is contradictory to the Hermit's Peak Act's purpose.  The case that FEMA cites does not require the opposite conclusion.  FEMA cites United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963)("Carlo Bianchi"), in support of the contention that Congress confines arbitration to the administrative record.  See Response at 32, 33. FEMA quotes a portion of the opinion: "'[I]n cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held.'"  Response at 33 (quoting Carlo Bianchi, 373 U.S. at 715).  FEMA omits, however, the portion of the quotation which makes clear that the Supreme Court is talking in reference to judicial review when it makes this statement; indeed, the Supreme Court does not mention arbitration in the opinion.  The full quote reads:

> With respect to the language used, we note that the statute is designated as an Act 'To permit review' and that the reviewing function is one ordinarily limited to consideration of the decision of the agency or court below and of the evidence on which it was based.  Indeed, in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held. Tagg Bros. & Moorhead v. United States, 280 U.S. 420 (1930); National Broadcasting Co. v. United States, 319 U.S. 190 (1943).  And of course, as shown by the Tagg Bros. and NBC cases themselves, the function of reviewing an administrative decision can be and frequently is performed by a court of original jurisdiction as well as by an

appellate tribunal.

Carlo Bianchi, 373 U.S. at 714-715. The Court agrees that it must confine its judicial review to the record of the agency or court below, and in fact the Hermit's Peak Act puts this limitation into the statute. See HPA § 104(i). Stating that the Court must limit judicial review to the administrative record, however, does not lead to the conclusion that an arbitrator must also limit arbitration to review, especially, because, as the Court determines above, arbitration is not normally a reviewing process.

In support of the Standard of Review Requirement, FEMA argues that the arbitration provision, "as an alternative to judicial review, is best interpreted as employing the substantive rules of judicial review, including the substantial evidence standard of review." Response at 39. The Court disagrees with FEMA's allegedly "best" interpretation. As explained above, that arbitration is an alternative to judicial review counsels the conclusion that Congress does not intend arbitration to mirror the judicial review procedures in the Hermit's Peak Act. Because arbitration is an alternative to judicial review, the Court concludes that FEMA should not impose the procedures of judicial review upon arbitration and that de novo arbitration is the method of arbitration under the Hermit's Peak Act. The case that FEMA cites in support, Cornelius v. Nutt, 472 U.S. 648 (1985)("Cornelius"), for the proposition that the standard of review for arbitration under the Hermit's Peak Act should be a substantial evidence review, does not apply here. In Cornelius, the Supreme Court determines that arbitration under the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 et seq., must apply the same harmful-error standard of review that the Merit Systems Protection Board must use in review of the agency's decision upon appeal of the agency's decision. See 472 U.S. at 650, 660. The Supreme Court's decision rests upon the fact that the statute makes explicit that the harmful-error standard applies to the arbitration provision: "Section 7701(c)(1)

- 42 -

incorporates by reference the provisions of subsection (c)(2), including the harmful-error rule. Thus, the statutory scheme mandates that the harmful-error rule is to apply whether the employee challenges the agency action through the Board or through binding arbitration." Cornelius, 472 U.S. at 652. The Hermit's Peak Act, by contrast, contains no language indicating that the standard of review in the judicial review provision of the statute cross-applies to the arbitration provision. See HPA §§ 104(h)(3), 104(i). Accordingly, Cornelius does not counsel the conclusion that the arbitration provision in the Hermit's Peak Act must apply the same standard of review as the judicial review provision.

FEMA also attempts to contrast the Hermit's Peak Act's arbitration provision with arbitrations under the Randolph-Shepard Act, 20 U.S.C. § 107 et seq., and Stafford Act, 42 U.S.C. § 5121 et seq., wherein arbitrations under the Randolph-Sheppard Act and the Stafford Act "represent a final agency action," and therefore the arbitrators must find facts and interpret the law independently on behalf of the Executive Branch. Response at 37-38 (citing Wisconsin v. U.S. Dep't of Education, 980 F.3d 558, 567 (7th Cir. 2020); Metro Gov't of Nashville v. FEMA, 2024 U.S. Dist. LEXIS 56260, at * 58 (M.D. Tenn. March 28, 2024)). FEMA argues that, because the Hermit's Peak Act arbitration does not represent FEMA's final decision, and the arbitration is not acting on the agency's behalf, the arbitration necessarily must be like the arbitration under the Civil Service Reform Act in Cornelius, wherein "the standard of review mirror[s] that as is used in judicial review . . . ." Response at 38. The Court disagrees, however, that, just because arbitration does not represent FEMA's final decision arbitration necessarily must be the standard of review that the Court uses in judicial review under the Hermit's Peak Act. Arbitration is not a reviewal process; instead, the process allows claimants to remove their claims from FEMA's process and have a neutral arbitrator settle them. In making such an independent decision, it is logical that

whatever conclusions FEMA has already reached not bind the arbitrator under the substantial evidence standard of review. Accordingly, the cases which FEMA cites do not run counter to the conclusion that Congress intends arbitration under the Hermit's Peak Act to mean de novo arbitration and not to track the judicial review requirements.

Finally, Old Wood also argues that, because the Standard of Review Requirement is in FEMA's Policy Guide, instead of a regulation, it runs counter to the Hermit's Peak Act requirement that FEMA establish arbitration procedures by "regulation." Opening Brief at 31 (quoting HPA § 104(h)(3)(A)). FEMA responds that it merely interprets the Hermit's Peak Act and, accordingly, that "it is not required to be published under formal rulemaking procedures." Response at 39. In accordance with the discussion above, the Court concludes that the Standard of Review Requirement is not in the Hermit's Peak Act, and, further, that the Standard of Review Requirement is not in accordance with law; the Court invalidates the Standard of Review Requirement under the APA, regardless whether FEMA enacts it properly. To the extent that FEMA wishes to promulgate further arbitration procedures, the Court agrees with Old Wood that FEMA must establish these procedures by "regulation" as the Hermit's Peak Act requires. HPA § 104(h)(3)(A).

FEMA maintains that the Court's review of its regulations and procedures should be a deferential review for reasonableness, because "once an agency is within the scope of its delegated authority the Agency's rulemaking is reviewed for reasonableness." Surreply at 5 (citing Loper Bright, 603 U.S. at 395 ("[T]he reviewing court fulfills its role 'by . . . fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries.'")). The Court does not disagree, but highlights that the Court -- not FEMA -- still must interpret the meaning of the Hermit's Peak Act to fix the outer boundaries of the delegated statutory authority; if FEMA acts outside that authority, then the Court must invalidate the

regulations.  See Restaurant Law Center v. United States Dep't of Labor, 120 F.4th 163, 174-76 (5th Cir. 2024)(setting aside an administrative rule as arbitrary and capricious, because the rule is "contrary to the statutory scheme enacted by Congress").  In fixing the outer boundaries of FEMA's delegated authority, the Court is guided by the "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." Util. Air Regul. Grp. v. EPA, 573 U.S. 302, 328 (2014).  Congress authorizes FEMA under the Hermit's Peak Act to "establish by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration."  HPA § 104(h)(3)(A).  Congress does not authorize, however, FEMA to re-write arbitration into a proceeding identical to judicial review; Congress intends to provide claimants with two alternative processes to resolving their claims with FEMA, and FEMA denies claimants this choice by erasing the distinction between arbitration and judicial review.  The Court determines that FEMA's regulations are beyond the outer boundaries of FEMA's delegated authority; FEMA has the authority to promulgate procedures for arbitration, but creating an arbitration process is not what FEMA does here.  Accordingly, the Court invalidates FEMA's Record Requirement and Standard of Review Requirement under the APA as not in accordance with law, because they are contrary to the statutory scheme that Congress enacts.

Although the Court determines that the issue of the validity of the Appeal Requirement is moot, the Court notes that, having invalidated the Record Requirement and the Standard of Review Requirement, and determined that the Hermit's Peak Act requires de novo arbitration, it is incongruous to continue to require claimants to comply with the Appeal Requirement and complete FEMA's administrative appeal process before proceeding to arbitration.  FEMA insists that the Appeal Requirement is the best reading of the Hermit's Peak Act, because a claimant must have a "disputed" claim before they can access the arbitration provision of the Hermit's Peak Act, and

FEMA argues that it is impossible to know whether you have a "disputed" claim until the Administrator has made a final decision on a claim. Response at 16. FEMA defines the Administrator's final decision on a claim "as the decision made following an administrative appeal." Response at 16 (citing 44 C.F.R. § 29641(h)). As a result, FEMA argues that a claimant cannot have a disputed claim until a claimant completes FEMA's administrative appeal process. See Response at 16. In response, Old Wood argues that "a claim is disputed when FEMA issues a final letter of determination of the claim which a claimant rejects." Opening Brief at 20. The Court agrees with Old Wood's position. Nothing in the Hermit's Peak Act requires the conclusion that a claimant must complete FEMA's administrative appeal process before proceeding to arbitration.

The Hermit's Peak Act requires only that "a dispute regarding a claim submitted under this Act" exist before a claimant may elect to settle the claim through arbitration. HPA § 104(h)(3). A dispute is "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." Dispute, BLACK'S LAW DICTIONARY (12th ed. 2024). Nothing in this definition requires a "final decision" as FEMA reads into the statute. This omission is especially important given that Congress uses the words "final decision" in the judicial review provision of the Hermit's Peak Act, but chooses not to use this term in the arbitration provision. HPA § 104(i) ("Any claimant aggrieved by a final decision of the Administrator under this Act may . . . bring a civil action in the United States District Court for the District of New Mexico, to modify or set aside the decision, in whole or in part."). Congress knows how to use the term "final decision;" if Congress intends that requirement to be in the arbitration provision, it could state so explicitly. Instead, Congress deliberately chooses to use the word "dispute" in the arbitration provision. "When a document uses a term in one place and a materially different term in another, 'the presumption is that the different term denotes a different idea.'" Stanley v. City of Sanford, Florida, 606 U.S. 46, 53 (2025)(quoting Southwest Airlines Co.

v. Saxon, 596 U.S. 450, 458 (2022)).  The Court accordingly agrees with Old Wood that a dispute

under the arbitration provision does not require a final decision, but instead exists the moment that

a "conflict or controversy" arises concerning FEMA's offer on a claimant's claims, such as when

FEMA issues a final determination letter which the claimant rejects.  At that point, the claimant is

free to choose not to engage with FEMA's claims determination process any longer, and instead

choose to have a neutral third-party settle their claims.

FEMA argues that allowing arbitration to go forward without a "final decision," which

FEMA interprets as requiring completion of the administrative appeals process, will "permit

arbitration to be initiated on any intermediary, partial disagreement."  Response at 20.  As example,

FEMA states that:

> a claimant may receive a partial Letter of Determination containing a
> determination on a subset of the claimant's requests for relief that the claimant
> disputes.  A claimant could also dispute FEMA's requests for information, whether
> a site visit is necessary, whether noneconomic damages are available, whether a
> particular claim has already been submitted elsewhere, property ownership, or the
> nature and extent of an injury.

Response at 20.  FEMA's argument does not fully account, however, for the requirement of the

Hermit's Peak Act that requires the claimant to submit a "disputed claim" for arbitration.  HPA §

104(h)(3).  The dispute, accordingly, must be regarding a claim, and not "whether a site visit is

necessary," "property ownership," or other non-claim related disputes that FEMA suggests.

Secondarily, the dispute must be such that the claim can be settled through arbitration.  See HPA §

104(h)(3) ("An election by an injured person to settle a claim through arbitration . . .").

Accordingly, the language of the Hermit's Peak Act absolves FEMA's concerns with an

interpretation of "dispute" that allows arbitration to occur without the Appeal Requirement, because

the arbitration provision ensures that only disputes regarding claims capable of settling claims may

go forward to arbitration.

FEMA also argues that the Appeal Requirement is a valid exercise of FEMA's authority to establish claim processing and arbitration rules under the Hermit's Peak Act, because it is not unreasonable. See Response at 16-17. FEMA argues that the Appeal Requirement is the best reading of the Hermit's Peak Act, explaining once again that "FEMA's regulations describe arbitration and judicial review as sister dispute-resolution mechanisms available when FEMA and a claimant reach impasse on a claim." Response at 19. The Court explains above and reiterates that FEMA's interpretation of the arbitration provision as a replica of the judicial review provision is unreasonable, and the Court therefore invalidates FEMA's regulations and policies under the APA.

Congress tells FEMA to give claimants "arbitration," but FEMA has not given claimants "arbitration." If Congress says that FEMA must give claimants a duck, FEMA cannot give claimants a chicken, because FEMA thinks chicken is better and cheaper. By creating its arbitration scheme, FEMA is trying to maintain maximum control over arbitrations. FEMA fears that it cannot control arbitrations and that they may award more than FEMA would award. But this freedom is exactly what Congress wants. Congress does not want FEMA to control and micro-manage awards. Congress wants arbitrators -- not FEMA -- to decide awards. Congress has made a conscious decision to trust arbitrators -- not FEMA -- to decide what claimants should get. While the Court should be reluctant to set aside FEMA's regulations and procedures about arbitration if FEMA's arbitration procedures are reasonable, FEMA's conception of arbitration is so far away from what everyone in the legal profession thinks is arbitration that FEMA's arbitration is arbitrary and capricious, and obviously not in accordance with law. Accordingly, the Court concludes that all of FEMA's challenged regulations and procedures -- the Record Requirement, the Standard of Review

Requirement, and the Appeal Requirement – are invalid under the APA.

**IT IS ORDERED** that: (i) the requests in Plaintiff Old Wood LLC's Opening Brief, filed July 31, 2025 (Doc. 38), are granted in part and denied in part; (ii) the Court grants Old Wood's APA challenge to FEMA's Record Requirement -- restricting arbitration to a review of the record of and issues raised and decided on administrative appeal -- and Standard of Review Requirement -- limiting arbitration to a search for substantial evidence supporting FEMA's decision -- and invalidates these requirements; (ii) the Court denies Old Wood's APA challenge to the Appeal Requirement -- requiring that a claimant complete FEMA's administrative appeal process before entering into arbitration -- as moot; (iv) the Defendants' Motion to Lodge a Supplement to the Administrative Record, filed November 12, 2025 (Doc. 67), is granted for the limited purpose of establishing standing and mootness; and (v) Old Wood LLC's Response to FEMA's Motion to Supplement Record/Conditional Cross Motion to Supplement Administrative Record, filed December 9, 2025 (Doc. 72) is granted for the limited purpose of establishing standing and mootness.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hope A. Bauman
Mark Dow
Maureen S. Moore
Bauman & Dow Law Offices, P.C.
Albuquerque, New Mexico

--and--

Thomas L. Tosdal, I
Tosdal Law Firm
Solana Beach, California

    *Attorneys for the Plaintiff*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Nicholas Sydow
Rafael Go
Carrie Yang
  Assistant United States Attorneys
United States Attorney's Office, United States Department of Justice
Albuquerque, New Mexico

    *Attorneys for the Defendants*