**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

OLD WOOD, LLC

Plaintiff,

vs. No. CIV 24-1142 JB/JFR

FEDERAL EMERGENCY MANAGEMENT AGENCY, DEANNE CRISWELL, and JAY MITCHELL,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Federal Emergency Management Agency's Suggestion of Recusal and Motion to Vacate Judgment, filed July 16, 2026 (Doc. 106)("Motion to Recuse"). The primary issues are: (i) whether the Court should, pursuant to 28 U.S.C. § 455(a), recuse itself from the current case because of the Court's contract with Judicial Arbitration and Mediation Services, Inc. ("JAMS") for post-retirement work; and (ii) if the Court recuses, whether the Court should vacate the Memorandum Opinion and Order, filed April 21, 2026 (Doc. 94)("MOO"), and the Final Judgment, filed June 18, 2026 (Doc. 98)("FJ"), that the Court entered in this case. The Court concludes that: (i) the Court does not recuse itself, pursuant to 28 U.S.C. § 455(a), from the current case, because the Court's contract with JAMS for post-retirement work does not cause a reasonable person to question the Court's impartiality; and (ii) the Court does not vacate either the MOO or the FJ entered in this case, because the Court does not recuse itself.

**FACTUAL BACKGROUND**

The issue before the Court in the MOO is whether the Court must set aside, under 5 U.S.C. §§ 706(2)(A), (C), as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, Defendant Federal Emergency Management Agency's regulations and policies relating

to arbitration under the Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104, 136 Stat. 2114, 2168 (2022)("Hermit's Peak Act") that (a) require a claimant to exhaust an administrative appeal before proceeding to arbitration on a disputed claim, (b) restrict arbitration to a review of the record of and issues raised and decided on an administrative appeal, and (c) limit arbitration to a search for substantial evidence supporting FEMA's decision on administrative appeal. See MOO at 1.

On May 22, 2025, the Court held an off the record conversation with counsel from all the FEMA cases in the district -- approximately 30 at the time -- to try and figure out a way to manage efficiently the FEMA cases. Thomas Tosdal, counsel for many claimants, including Old Wood in this case, said that he wanted to arbitrate and that FEMA had a bunch of great arbitrators from JAMS whom he was eager to use. There was no indication that JAMS was exclusive or even had a contract with FEMA. No mention was made that there was a three-hour limit on arbitrations or that there was a three-hour limit was insufficient if Old Wood won its case. Tosdal urged the Court to decide the issues in Old Wood as soon as possible.

The Court holds a hearing on the issues that the Court decides in the MOO on December 18, 2025. See Clerk's Minutes at 1, filed December 18, 2025 (Doc. 78). At this hearing, Old Wood discloses to the Court that "FEMA has contracted with the Judicial Arbitration and Mediation Service, which has dedicated 25 arbitrators to this endeavor. There is a three-hour pay cap for each arbitration; FEMA will pay three hours." Transcript of MOO Hearing at 80:9-14 (taken December 18, 2025)(Tosdal)("Tr."), filed January 5, 2026 (Doc. 80). While it should have clicked for the Court that "Judicial Arbitration and Mediation Service" is JAMS, it did not; also, the three-hour cap just did not sink in. While all the dots were there, the Court did not connect them, because they were not important to the Court's decision. At this hearing, the Court indicates what it believes its

ruling on the issues presented will be:

> Let me comment on the merits here. I am concerned about the mootness, so I'm going to have to work through that. And I don't have a real feel for it today, but I think it's a serious issue. On the merits, I do think what I outlined in Gallegos is the 180-day rule is still going to apply here. Mr. Tosdal has conceded -- I haven't thought whether it's correct or not -- but he's conceded that FEMA gets 180 days to come up with a final determination. But if they do not make an offer, whatever, in 180 days, I think that is a disputed claim that then can be submitted to arbitration.
>
> I think arbitration should be given its common meaning, and it should not say arbitration review. It doesn't say -- it says judicial review, it's not arbitration review. And I think that FEMA is trying to make the arbitration a review. And even Mr. Sydow used that word in his arguments today. And I think that's wrong. I think that it is arbitration. And it's unlike what I did in the Gallegos case, which is a review, an appeal. And I had to be limited to the record. I don't think the arbitrator is. I think Congress is trying to set up something that's different than the judicial review. And so to equate judicial review and just put an arbitrator in instead of me, I don't think that's what Congress had in mind. I think it meant arbitration. So I don't think that they're limited to the record that's been banging around for 180 days. They go to arbitration.
>
> And I don't think that the arbitrator is bound to substantial review of the record. He develops the record, he or she develops the record, and makes a ruling. And so I think the regs have gotten far afield from what Congress intended arbitration to be. So if I reach the merits, at least I'm leaving the bench today thinking that what FEMA has done with the arbitration is to sort of try to define it in a way that's different from what we think of as arbitration.

Tr. at 136:8-137:23 (Court).

Attached to Old Wood's Reply Brief for the MOO, Old Wood files several appendices, including Appendix 6, which contains an excerpt of JAMS Comprehensive Arbitration Rules & Procedures (2021). See Old Wood LLC's Reply Appendices, filed December 9, 2025 (Doc. 74-1). The arbitration rules included in this excerpt are: (i) Rule 3 -- Amendment of Rules; (ii) Rule 4 -- Conflict with Law; (iii) Rule 5 -- Commencing an Arbitration; (iv) a portion of Rule 6 -- Preliminary and Administrative Matters; (v) a portion of what the Court assumes is Rule 16, although the Court cannot see the title, which regards discovery matters; (vi) Rule 17 -- Exchange of Information; (vii) Rule 18 -- Summary Disposition of a Claim or Issue; (viii) Rule 19 -- Scheduling and Location of

Hearing; and (ix) Rule 20 -- Pre-Hearing Submissions. See generally Old Wood LLC Appendix 6, filed December 9, 2025 (Doc. 74-1). While JAMS is mentioned in the excerpt, there is no mention of the pay scale for JAMS or FEMA's agreement with JAMS regarding how the arbitrations will proceed or how JAMS will be paid or by whom.

The Court has entered into an operative Service Agreement with JAMS, wherein the Court agrees to be an independent contractor for JAMS, starting on September 1, 2026. See Letter from the Court to Counsel of Record at 1, filed on June 18, 2026 (Doc. 13)(Trambley et al. v. FEMA, CIV 26-1824 JB/JFR)("First Letter"). On Monday, March 16, 2026, the Court sent a letter to the Chief Judge and his colleagues in the District of New Mexico indicating his decision to retire from the federal bench on August 28, 2026. In the letter, the Court stated: "I have now decided that I would like to pursue other work such as mediations and arbitrations, and move in a different career, personal, and family path." It is the Court's memory that, later that day, he first reaches out to JAMS; the Court receives "an email from JAMS on March 17, 2026 thanking me for contacting JAMS and stating that a JAMS associate will respond as soon as possible." See Email from JAMS ADR to Judge Browning Re: Thank You for Contacting JAMS (dated March 17, 2026). On March 18, 2026, the Court conducts a zoom call with a JAMS associate to discuss the possibility of the Court joining JAMS. See Letter from the Court to Counsel of Record at 1, filed on June 29, 2026 (Doc. 24)(Trambley et al. v. FEMA, CIV 26-1824 JB/JFR)("Second Letter"). The Court has a second zoom call with a JAMS associate on April 10, 2026. See Second Letter at 1.

The Court files the relevant MOO in this case on April 21, 2026. The Court reaches the same conclusion that it reaches at the December 18, 2025, hearing regarding the issues presented. The Court concludes that Old Wood's challenge to FEMA's regulation requiring that a claimant exhaust an administrative appeal before proceeding to arbitration on a disputed claim is moot and

does not reach this issue. See MOO at 34. The Court concludes that FEMA's other two challenged arbitration rules, the record requirement and the standard of review requirement, are arbitrary and capricious, and vacates them under APA § 706(2)(A). See MOO at 48-49. In so ruling, the Court determines that

> the arbitration which the Hermit's Peak Act contemplates is an alternative method of dispute resolution in which a neutral arbitrator uses his or her independent judgment to make a binding decision valuing a disputed claim following presentation of evidence, examination of witnesses, and argument, without any limitation to the four corners of an administrative appeal.

MOO at 37. The Court states that:

> While the Court should be reluctant to set aside FEMA's regulations and procedures about arbitration if FEMA's arbitration procedures are reasonable, FEMA's conception of arbitration is so far away from what everyone in the legal profession thinks is arbitration that FEMA's arbitration is arbitrary and capricious, and obviously not in accordance with law.

MOO at 48.

The Court has a third call, this time by telephone, with the JAMS associate on May 11, 2026, where the Court orally commits to starting with JAMS on September 1, 2026. See Second Letter at 1. JAMS sends the Court a service agreement with a start date of October 1, 2026. See Email from Rayca Kelemen via Docusign to Judge Browning Re Hon. James Browning: JAMS, Inc. Service Agreement (dated May 13, 2026). The Court signs a Service Agreement with JAMS on May 19, 2026, with a start date of October 1, 2026, but sends it with a transmittal email that reminds JAMS that they had agreed to a start date of September 1, 2026. See Email from Judge Browning to Rayca Kelemen Re Start Date (dated May 19, 2026). The Court signs the operative Service Agreement with JAMS on May 20, 2026, which contains a start date of September 1, 2026.[1] See Second Letter at 1. FEMA uses the word "negotiation," but other than discussion about the

[1] The Court's training with JAMS does not begin until October 19, 2026.

start date, there was no negotiation. The three zoom calls were information meetings, with both sides answering each other's questions. Other than the start date, the Court signed the Service Agreement without any changes or request for changes.

Trambley et al., separate claimants under the Hermit's Peak Act, files a Motion for TRO on June 5, 2026. See Trambley et al. v. FEMA, No. CIV 26-1824 JB/JFR. Plaintiffs' Emergency Motion for Temporary Restraining Order (With Truncated Notice) and Preliminary Injunction (Doc. 2). In the Memorandum of Law In Support of Emergency Motion for TRO and Preliminary Injunction (Doc. 2-1)("TRO Memo."), filed simultaneously with the TRO, Trambley asks the Court to reform FEMA's existing JAMS contract, "[t]o the extent FEMA's existing JAMS contract conflicts with this Court's mandate for de novo review in Old Wood . . . ." TRO Memo. at 4. Realizing that the requested relief of changing JAMS contracts might put the Court in an awkward position, the Court discloses to the parties that the Court plans to join JAMS after retiring from the federal bench. See First Letter at 1 ("I want to bring one matter to your attention. I have, with my law clerks, reviewed the Judicial Code of Conduct and do not believe this matter requires me to recuse myself . . . . I have agreed to start working for JAMS as an independent contractor on September 1, 2026."). The Court does not, as part of its ruling on the TRO Motion, reform FEMA's contract with JAMS. Further, no party files a motion for recusal based on the Court's involvement with JAMS in Trambley.

The Court files the FJ in this case on June 18, 2026. In the FJ, the Court reaffirms that it sets aside and vacates the record requirement, and the standard of review requirement. See FJ at 1. FEMA represents that, as a result of the Court's rulings in Old Wood vacating some of FEMA's arbitration procedures, JAMS loses the existing contract with FEMA for three-hour arbitrations, and the contract is currently being re-bid, with no guarantee that the new contract will be awarded

to JAMS. See Motion to Recuse at 10-11.

> FEMA is in the midst of an expedited rebidding of the HPCC arbitration contract to accommodate these rulings by Judge Browning's in Old Wood. JAMS, then, had a direct interest in Old Wood both because it created a potential for them to lose their current federal contract, and because it permits them now to rebid for an even more valuable arbitration contract.

Motion to Recuse at 10-11.

**ANALYSIS**

Under 28 U.S.C. § 455(a), "Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test in the United States Court of Appeals for the Tenth Circuit is "'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993)(quoting United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992)). "The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question." United States v. Cooley, 1 F.3d at 993 (citations omitted)(emphasis in original). "In applying 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." United States v. Cooley, 1 F.3d at 993. Instead, § 455(a) is an objective test wherein "a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." United States v. Cooley, 1 F.3d at 992. The decision to recuse, however, remains "committed to the sound discretion of the district judge." Hinman v. Rodgers, 831 F.2d 937, 938 (10th Cir. 1987). "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Hinman v. Rodgers,

831 F.2d at 939.

FEMA argues that the Court must recuse itself under § 455(a), because "Judge Browning's negotiation and contract for work with JAMS creates an appearance of partiality in violation of 28 U.S.C. § 455(a) given Old Wood's substantial effects on JAMS' contract for arbitrations with FEMA and potential benefits for JAMS." Motion to Recuse at 9. FEMA maintains that "JAMS' interest in the outcome of the Old Wood litigation 'might reasonably cause an objective observer to question [Judge Browning's] impartiality' given his negotiations and contractual relationship with JAMS." Motion to Recuse at 10. FEMA puts forward two main reasons why the Court's future plans to become an independent contractor for JAMS would cause a reasonable observer to question his impartiality in this case: (i) the ruling in Old Wood affects the length and number of arbitrations, and, accordingly the value of the Hermit's Peak Act arbitration contract; and (ii) Judge Browning's experience presiding over the Hermit's Peak Act cases in federal court means that "Judge Browning would be among the pool of judges available through JAMS for HPCC Arbitrations." Motion to Recuse at 10-11.

With regards to the first reason, the value of the arbitration contracts, FEMA argues that "[a]ny judgment in Old Wood would determine whether there would be longer and more costly arbitrations, and in turn result in greater authority and compensation to the arbitrators -- here, to JAMS." Motion to Recuse at 11. Specifically, FEMA points to the fact that, "by setting aside the Record Requirement and Standard of Review Requirement, JAMS' existing limited, deferential reviews in arbitration -- that are limited to three-hours -- will become unbounded, de novo arbitrations that will become far lengthier and more costly." Motion to Recuse at 10. FEMA also argues that "Judge Browning's dicta in Old Wood that parties should be able to take claims to arbitration without an administrative appeal decision would make thousands more claims

immediately eligible for arbitration, dramatically expanding the number of arbitrations that JAMS may conduct." Motion to Recuse at 10. Finally, with regards to the second reason, the Court's personal interest, FEMA argues that, because "JAMS does not otherwise seem to have a physical presence in New Mexico, yet has a sole contract to provide arbitrations under a federal relief statute compensating victims of the largest wildfire in New Mexico history," the Court is likely to be among the judges who are selected to help arbitrate cases brought under the Hermit's Peak Act. Motion to Recuse at 11.

FEMA relies heavily on Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)("Liljeberg"). Motion to Recuse at 13-14. FEMA characterizes the Liljeberg facts as a discovery "post-judgment that the district judge was a board member of Loyola University, a non-party that was significantly interested in the outcome of the Liljeberg litigation due to Loyola's University's contract negotiations with one of the litigating parties." Motion to Recuse at 13. FEMA argues:

> The district judge in Liljeberg explained that he did not violate 28 U.S.C. § 455(a) because Loyola University was not party to the litigation, that the benefits to Loyola University would not benefit any individual personally, and that the judge had not participated in any of the transactions nor had knowledge of the transactions.

Motion to Recuse at 13. According to FEMA, "the Supreme Court still held that the district judge's relationship with a non-party with significant interest in the outcome of the litigation he was presiding over created an appearance of impropriety and mandated recusal under 28 U.S.C. § 455(a)." Motion to Recuse at 13. Relying on Liljeberg, FEMA argues that, "[l]ike Liljeberg, Judge Browning is reviewing a case in which a non-party organization with which he has a formal relationship with has a significant interest in the outcome of the litigation. There is an appearance of doubt that any decision Judge Browning makes in Old Wood would be impartial given its effects on his future client." Motion to Recuse at 13-14. The Court disagrees with FEMA that Liljeberg

controls here.

The first important fact that the Court highlights as evidence that a reasonable person would not think to question the Court's impartiality based on the Court's future plans with JAMS, is that, at the hearing which the Court holds on the Old Wood APA challenge, on December 18, 2025, see Clerk's Minutes at 1, filed December 18, 2025 (Doc. 78), the Court indicates what it believes the outcome on the merits should be:

> Let me comment on the merits here. I am concerned about the mootness, so I'm going to have to work through that. And I don't have a real feel for it today, but I think it's a serious issue. On the merits, I do think what I outlined in Gallegos is the 180-day rule is still going to apply here. Mr. Tosdal has conceded -- I haven't thought whether it's correct or not -- but he's conceded that FEMA gets 180 days to come up with a final determination. But if they do not make an offer, whatever, in 180 days, I think that is a disputed claim that then can be submitted to arbitration.
>
> I think arbitration should be given its common meaning, and it should not say arbitration review. It doesn't say -- it says judicial review, it's not arbitration review. And I think that FEMA is trying to make the arbitration a review. And even Mr. Sydow used that word in his arguments today. And I think that's wrong. I think that it is arbitration. And it's unlike what I did in the Gallegos case, which is a review, an appeal. And I had to be limited to the record. I don't think the arbitrator is. I think Congress is trying to set up something that's different than the judicial review. And so to equate judicial review and just put an arbitrator in instead of me, I don't think that's what Congress had in mind. I think it meant arbitration. So I don't think that they're limited to the record that's been banging around for 180 days. They go to arbitration.
>
> And I don't think that the arbitrator is bound to substantial review of the record. He develops the record, he or she develops the record, and makes a ruling. And so I think the regs have gotten far afield from what Congress intended arbitration to be. So if I reach the merits, at least I'm leaving the bench today thinking that what FEMA has done with the arbitration is to sort of try to define it in a way that's different from what we think of as arbitration.

Tr. at 136:8-137:23 (Court). Importantly, the Court reaches the same conclusion at the hearing on December 18, 2025, regarding the administrative appeal requirement ("But if they do not make an offer, whatever, in 180 days, I think that is a disputed claim that then can be submitted to arbitration"), the record requirement ("So I don't think that they're limited to the record that's been

banging around for 180 days"), and the standard of review requirement ("And I don't think that the arbitrator is bound to substantial review of the record."), to which FEMA points in the MOO as the questions of law from which a reasonable observer could question the Court's impartiality, as the conclusions regarding these questions of law which the Court writes up in the MOO filed on April 21, 2026. On December 18, 2025, however, the Court has had no contact with JAMS, and would not have contact with JAMS for months. The Court had not, on December 18, 2025, decided that the Court planned to retire on August 28, 2026, thereby making the Court available to undertake employment with JAMS. Accordingly, the Court decides the rulings in the MOO months before the Court's relationship with JAMS begins, and are made months before any reasonable observer could believe there to be an appearance of partiality. That the Court's MOO which is later filed after the hearing corresponds with the rulings which the Court gives on the record at the hearing does not give rise to an appearance of partiality to JAMS, although the Court initiates contact with JAMS about a month before it issues the MOO. Instead, this timeline demonstrates the Court's internal consistency with its initial rulings in 2025.

Further, the Court disagrees that a reasonable observer would believe that the Court's rulings would benefit JAMS such that an appearance of partiality occurs. FEMA relies heavily on the fact that the existing contract between FEMA and JAMS at the time of the MOO limits arbitrations to three hours, and that the Court's rulings in the MOO expanding the scope of arbitrations beyond a review of the existing administrative record and a search for substantial evidence supporting FEMA's awards, makes the arbitrations last longer than three hours, thereby making the arbitrations more valuable for JAMS. See Motion to Recuse at 10. The Court first disagrees that a reasonable observer would necessarily conclude that the rulings which the Court makes in the MOO, mandating that arbitration under the Hermit's Peak Act is normal arbitration

instead of a replica of judicial review, would make it impossible to complete the arbitrations within three hours. FEMA's form of arbitration, which exactly mimics judicial review under the Hermit's Peak Act, requires an arbitrator to study the administrative record, compare the evidence upon which FEMA relies with the evidence upon which the claimants rely, and determine whether substantial evidence supports the awards which FEMA has made. By contrast, normal arbitration requires that both sides present evidence, and that the Court make a determination as to the amount which a claimant is entitled. The Court does not determine that it is readily apparent to a reasonable observer that the second process, normal arbitration, would be significantly longer than the structure of FEMA's arbitration such that the revised arbitration process after the Court files the MOO would take longer than three hours, thereby making the arbitration contract more valuable.

The Court has heard the appeal of 29 claimants in judicial review hearings; the hearing have lasted 16.73 hours. That is 0.58 hours per claimant. The Court has to write up the rulings, but bench time is 0.58 per claimant. The Court actually thinks that substantial review is harder sometimes. The Court has to stare at the same evidence, but cannot weigh it. It sometimes would just be easier to get the evidence and quickly say whose evidence is better. It may be that de novo arbitration may be quicker.

Also, most disputes are just over noneconomic damages. These take very little time. Because only the claimant is putting on evidence and FEMA puts on only argument, these arbitration proceedings should take the same amount of time as judicial review hearings do. It is just setting an amount.

Even if, however, a reasonable observer would determine that the Court's rulings in the MOO make the future contract between FEMA and JAMS more valuable than the existing contract, there is still no reason that a reasonable observer would conclude that the Court's rulings in the

MOO benefit JAMS. JAMS has lost its contract. See Motion to Recuse at 10-11. A reasonable observer, concluding that the rulings make arbitrations incapable of being completed within three hours, likely would understand that the existing contract is no longer capable of being performed; the existing contract is likely to be re-negotiated and possibly re-bid. This termination of the contract is what happened; as a result of the Court's rulings in the MOO, JAMS lost its contract with FEMA regarding the Hermit's Peak arbitrations, and currently must compete in a re-bidding process to secure another contract regarding the Hermit's Peak arbitrations, with no guarantee that JAMS will be awarded this new contract. In fact, the Court's rulings in the MOO harms JAMS, because JAMS potentially loses FEMA's business. FEMA admits this loss:

> FEMA is in the midst of an expedited rebidding of the HPCC arbitration contract to accommodate these rulings by Judge Browning's in Old Wood. JAMS, then, had a direct interest in Old Wood both because it created a potential for them to lose their current federal contract, and because it permits them to now rebid for an even more valuable arbitration contract.

Motion to Recuse at 10-11. FEMA wants to have it both ways, and argue that a reasonable observer would determine there to be an appearance of the Court's partiality to JAMS in its MOO, when the same ruling by the Court has the potential to both hurt and to help JAMS.

Regardless of any speculative benefit or detriment to JAMS from the MOO, the Court's relationship with JAMS does not create an appearance of partiality. FEMA argues that the Court has a personal interest in the rulings in the MOO, both because, by benefiting JAMS the Court will benefit because JAMS is the Court's future "client", and because the presence of the Hermit's Peak arbitrations in New Mexico makes it likely that the Court will be an arbitrator for future JAMS proceedings. See Motion to Recuse at 11 ("Without confirmation that Judge Browning is precluded from working on HPCC Arbitrations, a reasonable person would conclude that Judge Browning would be among the pool of judges available through JAMS for HPCC Arbitrations."); Motion to

Recuse at 14 ("There is an appearance of doubt that any decision Judge Browning makes in Old Wood would be impartial given its effects on his future client.").

FEMA tries to draw parallels between this case and Liljeberg. In Liljeberg, the judge is a trustee of Loyola University, an interested third party to the relevant litigation, wherein the University negotiates with the plaintiff for a sale of property for a hospital site, with the proposed benefits to the University including "not only the proceeds of the real estate itself, amounting to several million dollars, but also a substantial increase in the value to the University of the rezoned adjoining property." Liljeberg, 486 U.S. at 853. The success of the University's negotiations with the plaintiff "depended upon the [district judge's] conclusion that [the plaintiff] controlled the certificate of need." Liljeberg, 486 U.S. at 856. Accordingly, because clear benefits arose to the University, of which the district judge is a trustee, from the district judge's rulings in Liljeberg, the Supreme Court determines that § 455(a) requires the judge's recusal, despite that the judge does not remember the relevant facts giving rise to the conflict during the time period in which he issues his ruling. Liljeberg, 486 U.S. at 861.

There are two major differences between this case and Liljeberg, however, which leads the Court to conclude that Liljeberg does not control. First, the judge in Liljeberg is a trustee of the University, with the University being the interested third party that stands to benefit from the judge's rulings. Although the judge does not have a per se personal interest in the outcome of the Liljeberg litigation, as a trustee of the University, the judge had a personal interest in ensuring that University activities succeeded, especially where "[t]he progress of these negotiations was regularly reported to the University's Board of Trustees by its Real Estate Committee and discussed at Board meetings." Liljeberg, 486 U.S. at 853. From this interest, a reasonable person could conclude that there was an appearance of partiality in the judge's rulings in Liljeberg. The Court does not have,

however, the same relationship with JAMS, and the same investment in JAMS' activities, as the investment the judge has in the University in Liljeberg. Although FEMA classifies JAMS as a future "client" of the Court, the Court has signed a Service Agreement with JAMS to operate as an independent contractor. FEMA's suggestion that JAMS is the Court's client is odd. The word "client" assumes that the Court represents JAMS as an attorney. That is not the reality. The Court is an independent contractor of JAMS, not its attorney. An independent contractor is paid for services rendered, when and if they are rendered, and is not paid a salary or share of the profits. As an independent contractor, the Court will not have a financial stake in JAMS, or owe a fiduciary duty to it. Further, the Court, contrary to FEMA's assertions, does not negotiate with JAMS regarding his future employment; instead, he signs a standard contract with no changes, discussing only his start date. Accordingly, to the extent that there is an argument that the Court has an interest in ruling in JAMS' favor to secure more favorable contractual terms for himself, this scenario is not the case. The Court therefore concludes that, as an independent contractor, the Court does not have the kind of relationship with JAMS that would lead a reasonable observer to conclude that the Court is incentivized to rule in JAMS' favor, whatever that may be, unlike the judge's relationship with Loyola University in Liljeberg. Additionally, again unlike in Liljeberg, where the judge's rulings had a connection to benefits for the University, the Court does not believe that the rulings in the MOO have a benefit to JAMS, or at least any benefit to JAMS is fuzzy and speculative. As discussed above, the Court's rulings in the MOO have the potential to harm JAMS, by losing JAMS the Hermit's Peak arbitration contract, and does not clearly benefit JAMS, because it is not certain that expanding the scope of arbitrations to de novo arbitrations will make the arbitrations longer and more lucrative. Because there is no direct benefit to JAMS stemming from the MOO's rulings, the Court concludes that a reasonable observer would likely not see an appearance of partiality in

this case, and, accordingly, Liljeberg does not control.

Finally, to the extent that FEMA implies that the Court has a personal interest in the case's rulings, because he stands to benefit financially from increasing the value of arbitrations under the Hermit's Peak Act as a future arbitrator for JAMS, the Court disagrees. While it is true that JAMS "does not otherwise seem to have a physical presence in New Mexico, yet has a sole contract to provide arbitrations under a federal relief statute compensating victims of the largest wildfire in New Mexico history," this lack of physical presence does not mean that JAMS will begin to look entirely to the Court for its arbitration needs once his contract with JAMS begins. JAMS conducts many of its mediations and arbitrations virtually, and, JAMS won the original contract to carry out the Hermit's Peak arbitrations before the Court's connection with JAMS, meaning that both FEMA and JAMS acquiesced to JAMS carrying out the arbitration work without a local New Mexico office. In other words, the presence of the Court as an available arbitrator for JAMS beginning on September 1, 2026, is not a necessary presence for JAMS to maintain or win the arbitration contract, and does not result in a windfall of work for the Court. In fact, Mr. Tosdal told the Court in December, 2025, before the Court issued its rulings in Old Wood were issued, that JAMS had already "dedicated 25 arbitrators to this endeavor," making it unlikely that the Court is one of the arbitrators that JAMS will use under the Hermit's Peak Act. Tr. at 80:11-12 (Tosdal).

Finally, it is the Court's understanding that both parties must agree to the selected arbitrator, and if FEMA refused to allow the Court to arbitrate, the Court would not receive any of the Hermit's Peak Act arbitration work. Again, FEMA talks about arbitrations in ways with which the Court is unfamiliar, and does not sound normal or typical. Normally, the parties agree on an arbitrator or arbitrators. On the other hand, in the world of private neutrals, anything is possible. The Court has thought the selection of FEMA exclusively selecting arbitrators and imposing them on the claimants

a bit odd. Nevertheless, the lawyers in Old Wood do not seem to care, thinking these are good arbitrators. This speaks highly of JAMS' arbitrators. It is doubtful that FEMA will ever agree for the Court to serve as an arbitrator. If FEMA questions the Court's partiality, it is doubtful it would impose the Court on claimants. No reasonable observer would think FEMA is going to permit the Court to serve as an arbitrator in the Hermit's Peak cases.

Because the Court has ruled against FEMA on some of the legal issues raised in the Hermit's Peak cases, including on arbitration issues, the Court never has anticipated that FEMA would want the Court being an arbitrator for these cases, and the Court believes that a reasonable observer would agree with that conclusion, particularly given the motion to recuse. Accordingly, the Court concludes that a reasonable observer would not believe that the Court has a personal interest in the MOO's rulings that necessitate a recusal. The Court concludes that its future relationship with JAMS as an independent contractor does not give rise to an appearance of partiality for a reasonable observer, and therefore the future relationship does not require recusal under § 455(a). The Court, therefore, declines to recuse.

FEMA also requests that the Court vacate both the MOO and the FJ in this case, arguing that both the "Old Wood MOO and Final Judgment meet the standards provided in Liljeberg for vacating a judgment due to a violation of 28 U.S.C. § 455." Motion to Recuse at 14. The Court concludes that there is not a § 455 violation, and, accordingly, determines that there is no justification to vacate the MOO and FJ. Even if there were a § 455 violation, however, the Court concludes that vacatur is not the appropriate remedy.

"Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." Liljeberg, 486 U.S. ay 862.

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

Liljeberg, 486 U.S. at 864. "Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all § 455(a) violations." Liljeberg, 486 U.S. at 864.

FEMA argues first that vacating the MOO and FJ will not provide injustice in other cases, because "'to the contrary, the . . . willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.'" Motion to Recuse at 14 (quoting Liljeberg, 486 U.S. at 868). FEMA also argues that vacatur provides little risk of prejudice to either FEMA or Old Wood, because the motion is made within the time limits for both a rule 59(e) and a rule 60 motion, and there is "limited reliance on a judgment that has only been recently entered, and for which a notice of appeal has been filed." Motion to Recuse at 14. FEMA argues that there is "greater risk of unfairness in leaving the judgment in place rather than allowing a new judge to take a fresh look at the issue." Motion to Recuse at 15. The Court disagrees with FEMA's argument.

The Court first concludes that there will be more prejudice to the parties by vacating the MOO and the FJ than by leaving the judgment in place. First, failing to vacate the judgment will present no prejudice to FEMA. FEMA's job is to administer the Hermit's Peak Act claims process in accordance with the terms of the Hermit's Peak Act; requiring FEMA to administer arbitration according to the Court's Hermit's Peak Act interpretation does not present any harm to FEMA. To the Court's knowledge, since the Hermit's Peak Act was signed into law on September 30, 2022, FEMA has not engaged in an arbitration of any claim. Vacating the MOO, will, however, present

prejudice to both Old Wood and all other parties interested in arbitration under the Hermit's Peak Act. Congress has provided a capped fund to compensate the Hermit's Peak Fire victims, and although Congress has refilled this fund before, there is no guarantee that Congress will continue to do so in the future. The fund continues to shrink as time passes, and a delay in the resolution of arbitration can prejudice the parties depending on arbitration for a payout under the Hermit's Peak Act. The parties have already waited a significant amount of time for the Court's ruling in Old Wood; to send these same issues to another judge can present another long delay before these parties are able to move forward with arbitration, especially if another new briefing schedule is established with another judge. Further, it seems unnecessary to send these issues to another judge to be decided, because another judge already has considered these issues, and reaches the same conclusions as the conclusions the Court reaches in the MOO.

> For the reasons below, the Court sets aside under 5 U.S.C. § 706(2)(A), (C) of the Administrative Procedure Act ("APA") Defendant Federal Emergency Management Agency's ("FEMA") regulations and policies: (1) requiring a claimant to exhaust an administrative appeal process before proceeding to arbitration on a disputed claim; (2) restricting the scope of review in arbitration to the record of and issues raised and decided on administrative appeal; and (3) limiting the scope of arbitration to whether FEMA's decision on administrative appeal is supported by substantial evidence.

Arellano et al v. FEMA et al, CIV No. 26-0221 KG/JFR, at 1, filed July 16, 2026 (Doc. 49)("Arellano"). Accordingly, there is no need for "a new judge to take a fresh look at the issue" as FEMA asserts, because another judge has already looked at the MOO's issues. Motion to Recuse at 15. The Court acknowledges that a portion of Arellano relies on the reasoning in Old Wood; this reliance does not mean, however, that the court in Arellano did not consider independently the reasoning in Old Wood and would not reach this same conclusion if the Court vacates Old Wood. See Arellano, CIV No. 26-0221 at 6 ("This Court agrees with Old Wood's reasoning and -- in the absence of argument from the parties -- adopts it in its entirety.").

That another judge has already reached the same conclusion as the Court reaches in Old Wood also supports the conclusion that leaving the decision in the MOO and FJ standing will not undermine the public's confidence in the judicial process. That two judges both reach the same conclusion, one whom cannot in any way be suspected of having a motivation behind his ruling, demonstrates to the public that the Court's ruling in the MOO is the product of unbiased judicial thinking and not an interest-driven result. This conclusion also finds support in the fact that the Court reaches the same conclusion regarding the legal issues in the MOO at the December, 2025, hearing, months before the Court has decided to retire, and begin talking to JAMS, as the Court reaches in the MOO, filed after the Court begins conversation with JAMS. The consistency between the Court's announced ruling in the case before the Court begins talking to JAMS with the Court's ruling in the MOO after the Court beings talking to JAMS demonstrates as well that the Court's ruling is not the product of any interested thinking. Accordingly, the Court believes that vacating the MOO and FJ is not necessary to maintain public confidence in the judicial process.

The Court declines to vacate the MOO and FJ, because the Court concludes that there is not a violation of § 455(a) such that the Court must recuse itself from this case. Even if, however, there were circumstances that require the Court to recuse itself, the Court concludes that the three Liljeberg factors for determining when vacatur is the appropriate remedy do not counsel vacatur here. Accordingly, were the question before the Court, the Court would decline to exercise this remedy which should be applied only in extraordinary circumstances. See Liljeberg, 486 U.S. at 864.

If the Court were to grant the motion for recusal, it likely that another judge, not the Court, should decide the motion to vacate. See, e.g., Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC, 111 F.4th 337 (4th Cir. 2024), cert. denied, 146 S. Ct. 1485, 223 L. Ed. 2d 503 (2026)("For

good reasons, especially for the appearance of impartiality, we have held that once a judge is recused, the judge is 'out of service insofar as that case is concerned' and that he 'should take no action which would possible affect the outcome of [the] case.'" (quoting Arnold v. Eastern Air Lines, Inc., 712 F.2d 899, 904-05 (4th Cir. 1983)); United States v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997)("Once a judge recuses himself from a case, the judge may take no action other than the ministerial acts necessary to transfer the case to another judge, even when recusal is improvidently decided."); In re Woide, 730 F. App'x 731, 737 (11th Cir. 2018)("Generally, once a judge is recused, he or she may not issue any further substantive decisions in the case."). The Court would just recuse and let another judge decide whether to vacate anything. Because Chief Judge Gonzales is likely to get all of these FEMA cases, and because Chief Judge Gonzales has already decided that he agrees with the Court's MOO in Old Wood, Chief Judge Gonzales should be the one to decide whether to vacate the judgment in this case or let it go on to the Tenth Circuit.

**IT IS ORDERED** that Federal Emergency Management Agency's Suggestion of Recusal and Motion to Vacate Judgment, filed July 16, 2026 (Doc. 106)("Motion to Recuse"), is denied.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Hope A. Bauman
Mark Dow
Maureen S. Moore
Bauman & Dow Law Offices, P.C.
Albuquerque, New Mexico

--and--

Thomas L. Tosdal, I
Tosdal Law Firm
Solana Beach, California

*Attorneys for the Plaintiff*

Todd Blanche
Acting United States Attorney General
Ryan Ellison
First Assistant United States Attorney
Nicholas Sydow
Carrie Yang
Assistant United States Attorneys
United States Attorney's Office, United States Department of Justice
Albuquerque, New Mexico

*Attorneys for the Defendants*